# EXHIBIT 4

NATIONAL RAILROAD PASSENGER CORPORATION
1 Massachusetts Avenue, NW, Washington, DC 20001



VIA FEDEX OVERNIGHT

December 29, 2017

Amtrak Trust HS-EDC-1
c/o Wilmington Trust Company, as Owner Trustee
Rodney Square North
1100 North Market Street
Wilmington, DE 19890-0001
Attention: Jacqueline Solone

Re:   Lease of Railroad Equipment, dated as of November 6, 2000 (as amended and supplemented, the "**Lease**") between National Railroad Passenger Corporation ("**Amtrak**") and Amtrak Trust HS-EDC-1 ("**Lessor**")

Ladies and Gentlemen:

I am responding to your Notice of Lease Event of Default, dated December 15, 2017 (the "**December 15 Default Notice**") relating to the above-referenced Lease. Capitalized terms herein not otherwise defined are used as defined in the Lease.

In the December 15 Default Notice you allege that a Lease Event of Default has occurred and is continuing due to (i) "the failure of Amtrak to pay Casualty Value within 5 Business Days of the respective Casualty Value Determination Dates for each of the Locomotives that [Amtrak] has retired from service" and (ii) "the failure of Amtrak to cure the Lease Defaults identified in the Notice of Lease Default" from you to Amtrak, dated September 7, 2017 (the "**September 7 Default Notice**"), "within 30 days of Amtrak's receipt".

We are also in receipt of a copy of the Demand, dated December 15, 2017 (the "**Demand**"), under the Guaranty Agreement, dated as of November 6, 2000, between HNB Investment Corp. ("**HNB**") and Export Development Corporation, pursuant to which HNB demands $92,947,365 based on the claim that such alleged Lease Events of Default have occurred and are continuing.

Please be advised that (i) Amtrak rejects the specific allegations referenced above, (ii) HNB is well aware that no Lease Event of Default has occurred or is continuing, and (iii) Amtrak will vigorously assert its contractual and legal rights in respect of any action taken by you or HNB that adversely affects Amtrak.

I address the specific allegations below:

> 1. *That a Casualty Occurrence has occurred with respect to the Locomotives and Amtrak has failed to pay Casualty Value.*

This allegation was not raised in the September 7 Default Notice; however, HNB, in a letter to Amtrak dated November 21, 2016, asserted that Amtrak's decision to "retire" the Locomotives "constitutes a Casualty Occurrence", and further threatened Amtrak that it would instruct you to

NATIONAL RAILROAD PASSENGER CORPORATION
1 Massachusetts Avenue, NW, Washington, DC 20001



send a formal notice of Lease Event of Default. Now, more than a year later, in the December 15 Default Notice, you assert that Amtrak's decision to remove the Locomotives from active service constituted a determination by Amtrak that the Locomotives were "unfit to provide intercity rail service" and that "[o]nce the Locomotives are rendered unfit for commercial use from any cause whatsoever during the Lease Term such event is considered a Casualty Occurrence…".

**Amtrak rejects this allegation.**

By letter to HNB dated November 29, 2016, Amtrak explained that the decision to remove the Locomotives from active service and place them in reserve was due to Amtrak's purchase of new Siemens ACS-64 locomotives. Nothing in the ensuing 13 months changes Amtrak's response, and all current facts contradict the default allegation. Specifically, (i) Amtrak has made no determination that the Locomotives are unfit for commercial use or that a Casualty Occurrence has occurred, (ii) Amtrak has not taken any action that has rendered the Locomotives permanently unfit or unavailable for service or that otherwise constitutes a Casualty Occurrence, (iii) quite to the contrary, Amtrak has undertaken and is continuing a course of diligent maintenance of the Locomotives consistent with its obligations under Section 12.1 of the Lease, and (iv) locomotives of this type continue to be used by MARC in its commuter operations (disproving any allegation that such locomotives as a type are unfit for commercial service).

2. *That the Lease Defaults alleged in the September 7 Default Notice are uncured and continuing.*

The September 7 Default Notice alleges three Lease Defaults based on Amtrak's decision to remove the Locomotives from active service – specifically, that:

(i) Amtrak is using the Locomotives in a manner not consistent with their design and intended use, in breach of Section 12.1(i) of the Lease;

(ii) By reason of Section 12.1(ii) of the Lease, Amtrak may only remove the Locomotives from service "while awaiting repair"; and

(iii) for some period following the removal from service in 2014, Amtrak maintained the Locomotives "with less care or scheduled for maintenance on a basis less frequent" than employed by Amtrak with respect to other rolling stock in breach of Section 12.1(ii).

**Amtrak rejects these allegations.**

The first two allegations can be summarized as follows: that Amtrak does not have the contractual right to remove the Locomotives from active service for reasons other than for maintenance or repair. As explained in Amtrak's letter of September 14, 2017, this allegation misstates Amtrak's rights under the Lease.

NATIONAL RAILROAD PASSENGER CORPORATION
1 Massachusetts Avenue, NW, Washington, DC 20001



The Lease does not require that Amtrak keep the Locomotives "in-service" nor does the Lease prohibit taking the Locomotives out of service. Amtrak is continuing to use the Equipment in a "manner consistent with the design and intended use of the Equipment" as it is required to do under Section 12.1(i) of the Lease.

Section 12.1(ii) of the Lease, which you rely upon, does not prohibit Amtrak from making an operational decision to remove its rolling stock from active service for any reason other than maintenance or repair. Rather, Section 12.1(ii) is merely intended to address the specific circumstance in which a locomotive or passenger car is pulled from service for required repair, and, as a result, must be parked, pending active maintenance, which must be scheduled based on several factors, including, but not limited to, shop availability, the procurement of replacement parts and the batching of work.

Moreover, Section 12.1(ii) does not purport to address, nor does any other provision in the Lease limit, Amtrak's right to make decisions, including but not limited to equipment utilization, based on its operational requirements, equipment availability and suitability and other economic and non-economic considerations. In this regard, Amtrak has the wholly unrestricted right, as it deems appropriate, to deploy or hold idle any of its rolling stock in the scheduling of trains in service. Amtrak rejects any allegation to the contrary.

With respect to the third allegation, regardless of what happened years ago, the on-the-ground facts in 2017 refute any allegation that there is a *continuing* Lease Default, let alone a *continuing* Lease Event of Default. Section 12.1(i) requires Amtrak to maintain the Locomotives, regardless of whether the Locomotive is in active service or held in reserve. Section 13.1(v) of the Lease provides that, even assuming there were a failure to perform certain material covenants of the Lease (which is not the case), Amtrak has the right to cure any such default that is curable within 30 days, and if it is not capable of being cured within 30 days, it may be cured within 90 days of when Amtrak received written notice of default. Additionally, in the case of a default involving two locomotives or one Trainset, it may be cured within 365 days of the notice, so long as during the applicable period Amtrak has been diligently attempting to cure any such alleged default. As HNB should be aware, having conducted two inspections since this June, Amtrak is diligently maintaining all eight Locomotives in accordance with the Lease. Within 90 days of receipt of the September 7 Default Notice six Locomotives were – and they continue to be -- fully operational, and the remaining two Locomotives are undergoing ordinary course maintenance and service. In sum, Amtrak is doing what is required by the Lease. There has never been any Lease Default, but even assuming there ever were one, it has been timely cured.

NATIONAL RAILROAD PASSENGER CORPORATION
1 Massachusetts Avenue, NW, Washington, DC 20001



As stated above, Amtrak reserves all of its rights, powers and remedies under the Lease and applicable law, and nothing herein shall constitute a waiver thereof, with respect to any false or misleading statement by you in the December 15 Default Notice, the September 7 Default Notice, the Demand or in any other communication, or any action taken by you or HNB that adversely affects Amtrak's rights under the Lease.

Sincerely,

Swati Sharma
Vice President and Treasurer

**NATIONAL RAILROAD PASSENGER CORPORATION**
1 Massachusetts Avenue, NW, Washington, DC 20001



cc:   HNB Investment Corp., as Owner Participant
c/o Philip Morris Capital Corporation
225 High Ridge Road, Suite 300 West
Stamford, CT 06905
Attn: Alex Russo, Vice President

Manufacturers and Traders Trust Company, as Indenture Trustee
c/o Wilmington Trust Company (formerly Allfirst Bank)
Rodney Square North
100 North Market Street
Wilmington, DE 19890-0001
Attn: Corporate Trust Administration
    Lynette Hilgar, Relationship Manager

Export Development Corporation, as Note Holder and Equity Guarantor
151 O'Connor Street
Ottawa, Canada K1A 1K3
Attn: Loan Operations
    Danyelle Plunkett, Loan Services Officer

Export Development Corporation, as Note Holder and Equity Guarantor
151 O'Connor Street
Ottawa, Canada K1A 1K3
Attn: Sean Mitchell, Account Executive

National Railroad Passenger Corporation
Attn: William Feidt, Chief Financial Officer
Attn: Jill M. Himmer, Senior Associate General Counsel