# EXHIBIT 10

## TRUST INDENTURE AND SECURITY AGREEMENT

(Amtrak Trust HS-EDC-1)

Dated as of November 6, 2000

between

**AMTRAK TRUST HS-EDC-1,**

and

**ALLFIRST BANK,**
Indenture Trustee

Eight (8) Dual Cab, High-Horsepower Electric Locomotives and
Ten (10) High-Speed Trainsets

A Memorandum of Trust Indenture and Security Agreement with respect to the Equipment has been filed with the Surface Transportation Board pursuant to 49 U.S.C. §11301 on November 15, 2000 at 11:17 a.m. Recordation Number 23229-A, and deposited in the office of the Registrar General of Canada pursuant to §105 of the Canada Transportation Act on November 15, 2000 at 11:41 a.m.

# TABLE OF CONTENTS

Page

ARTICLE I DEFINITIONS ...................................................................................... 5

    SECTION 1.01. Special Definitions .................................................................. 5
    SECTION 1.02. Reference to Other Documents ............................................ 9

ARTICLE II THE SECURED NOTES ...................................................................... 9

    SECTION 2.01. Form of Secured Notes .......................................................... 9
    SECTION 2.02. Terms of Secured Notes ........................................................ 9
    SECTION 2.03. Limitations on Prepayments; Indemnities; Currency ........... 10
    SECTION 2.04. Taxes; Withholding ............................................................... 10
    SECTION 2.05. Payments from Trust Indenture Estate Only ....................... 12
    SECTION 2.06. Method of Payment ............................................................... 12
    SECTION 2.07. Application of Payments ........................................................ 13
    SECTION 2.08. Termination of Interest in Trust Indenture Estate ............... 13
    SECTION 2.09. Registration, Transfer and Exchange of Secured Notes ...... 13
    SECTION 2.10. Mutilated, Destroyed, Lost or Stolen Secured Notes ........... 14
    SECTION 2.11. Payment of Expenses on Transfer ....................................... 15
    SECTION 2.12. Optional Prepayment ............................................................ 15
    SECTION 2.13. Purchase Upon Event of Default .......................................... 15
    SECTION 2.14. Mandatory Prepayment ........................................................ 16
    SECTION 2.15. Secured Notes in Respect of Replacement Equipment ......... 18

ARTICLE III RECEIPT, DISTRIBUTION AND APPLICATION     OF
             INCOME FROM THE TRUST ESTATE ....................................... 19

    SECTION 3.01. Certain Rent Distributions ................................................... 19
    SECTION 3.02. Casualty Occurrence and Replacement; Lease
                Termination; Refinancing ..................................................... 19
    SECTION 3.03. Payment After Event of Default, etc ................................... 20
    SECTION 3.04. Certain Payments .................................................................. 22
    SECTION 3.05. Other Payments ..................................................................... 22
    SECTION 3.06. Payments to Owner Trustee .................................................. 22
    SECTION 3.07. Investment of Amounts Held by Indenture Trustee ............. 23

ARTICLE IV COVENANTS OF OWNER TRUSTEE; EVENTS OF DEFAULT;
             REMEDIES OF INDENTURE TRUSTEE ....................................... 23

    SECTION 4.01. Covenants of Owner Trustee ................................................ 23
    SECTION 4.02. Event of Default .................................................................... 24
    SECTION 4.03. Certain Rights ....................................................................... 26
    SECTION 4.04. Remedies ............................................................................... 27
    SECTION 4.05. Return of Equipment, etc ..................................................... 29
    SECTION 4.06. Remedies Cumulative ........................................................... 30
    SECTION 4.07. Discontinuance of Proceedings ............................................ 30

# TABLE OF CONTENTS
(continued)

Page

SECTION 4.08. Waiver of Past Defaults ........................................................ 31
SECTION 4.09. Suspension of Remedial Action ............................................. 31

ARTICLE V DUTIES OF INDENTURE TRUSTEE ................................................. 31

SECTION 5.01. Notice of Event of Default ................................................... 31
SECTION 5.02. Action Upon Instructions ..................................................... 32
SECTION 5.03. Indemnification ................................................................... 33
SECTION 5.04. No Duties Except as Specified in Indenture or
Instructions ......................................................................... 33
SECTION 5.05. No Action Except Under Lease, Indenture or Instructions .... 34
SECTION 5.06. Replacement Unit(s) ............................................................ 34
SECTION 5.07. Effect of Replacement ......................................................... 34
SECTION 5.08. Notices; etc ......................................................................... 34

ARTICLE VI OWNER TRUSTEE AND INDENTURE TRUSTEE ............................. 34

SECTION 6.01. Acceptance of Trusts and Duties .......................................... 34
SECTION 6.02. Absence of Duties ............................................................... 35
SECTION 6.03. No Representations or Warranties as to Equipment or
Documents ........................................................................... 35
SECTION 6.04. No Segregation of Moneys; No Interest ............................... 35
SECTION 6.05. Reliance; Agents; Advice of Counsel ................................... 36
SECTION 6.06. Capacity in Which Acting ................................................... 36
SECTION 6.07. Compensation ..................................................................... 36
SECTION 6.08. May Become Note Holder ................................................... 36
SECTION 6.09. Further Assurances; Financing Statements ........................... 36
SECTION 6.10. Certain Rights of Owner Trustee, Owner Participant, and
Indenture Trustee ................................................................. 37

ARTICLE VII INDEMNIFICATION OF INDENTURE TRUSTEE BY OWNER
TRUSTEE ................................................................................................. 38

SECTION 7.01. Scope of Indemnification ................................................... 38

ARTICLE VIII SUCCESSOR TRUSTEES AND SEPARATE TRUSTEES ................... 39

SECTION 8.01. Notice of Successor Owner Trustee ...................................... 39
SECTION 8.02. Resignation of Indenture Trustee; Appointment of
Successor ............................................................................. 39
SECTION 8.03. Appointment of Additional and Separate Trustees ............... 40

# TABLE OF CONTENTS
(continued)

Page

ARTICLE IX SUPPLEMENTS AND AMENDMENTS TO THIS INDENTURE
AND OTHER DOCUMENTS ........................................................................ 42

SECTION 9.01. Instructions of Majority; Limitations ................................... 42
SECTION 9.02. Trustees Protected ............................................................. 43
SECTION 9.03. Documents Mailed to Holders ............................................. 43
SECTION 9.04. No Request Necessary for Lease Supplements, Indenture
Supplement, etc .............................................................. 43

ARTICLE X MISCELLANEOUS ............................................................................ 44

SECTION 10.01. Termination of Indenture ................................................... 44
SECTION 10.02. No Legal Title to Trust Indenture Estate in Holders ............ 44
SECTION 10.03. Sale of Equipment by Indenture Trustee is Binding ............. 44
SECTION 10.04. Indenture for Benefit of Owner Trustee, Indenture
Trustee, Owner Participant and Note Holders .................... 45
SECTION 10.05. No Action Contrary to Lessee's Rights Under the Lease ....... 45
SECTION 10.06. Notices ............................................................................ 45
SECTION 10.07. Severability ...................................................................... 45
SECTION 10.08. No Oral Modifications or Continuing Waivers .................... 45
SECTION 10.09. Successors and Assigns ..................................................... 46
SECTION 10.10. Headings .......................................................................... 46
SECTION 10.11. Normal Commercial Relations ........................................... 46
SECTION 10.12. Governing Law; Counterpart Form ................................... 46
SECTION 10.13. Liability of Trust Company and Owner Trustee ................... 46

Exhibit A    Form of Indenture Supplement
Exhibit B    Form of Tax Certificate
Exhibit C    Form of Secured Note

## TRUST INDENTURE AND SECURITY AGREEMENT
## (AMTRAK TRUST HS-EDC-1)

THIS TRUST INDENTURE AND SECURITY AGREEMENT (Amtrak Trust HS-EDC-1) dated as of November 6, 2000, is between AMTRAK TRUST HS-EDC-1, a Delaware business trust (the "*Trust*"), all of the activities of which shall be conducted by Wilmington Trust Company, a Delaware banking corporation, not in its individual capacity, but solely as trustee for the Trust (the "*Owner Trustee*", which term, unless the context shall otherwise require, shall include the Trust), and ALLFIRST BANK, a Maryland banking corporation, as indenture trustee hereunder (together with any successor indenture trustee, the "*Indenture Trustee*").

WHEREAS, all capitalized terms used herein shall have the respective meanings set forth or referred to in Article I hereof;

WHEREAS, Owner Participant and Wilmington Trust Company have entered into a Trust Agreement (Amtrak Trust HS-EDC-1) dated as of November 6, 2000 (as amended or otherwise modified from time to time in accordance with the provisions thereof and of the Participation Agreement, the "*Trust Agreement*"), whereby, among other things, Owner Trustee is authorized and directed to execute and deliver this Indenture;

WHEREAS, Owner Trustee has entered or will enter into each Assignment (Cession), each Amtrak Delegation and each Amtrak Bill of Sale whereby Owner Trustee acquires or will acquire the French Leasehold Interests;

WHEREAS, Owner Trustee desires by this Indenture, among other things (i) to provide for the issuance by Owner Trustee to Loan Participant of Secured Notes evidencing the repayment obligations of Owner Trustee to Loan Participant in respect of the loan made by it as its participation in the payment of Lessor's Cost for the Equipment, all as provided in the Participation Agreement, and (ii) to provide for the assignment, mortgage and pledge by Owner Trustee to Indenture Trustee, as part of the Trust Indenture Estate hereunder, among other things, of certain of Owner Trustee's estate, right, title and interest in and to the Equipment and the Indenture Documents and all payments and other amounts received hereunder or thereunder in accordance with the terms hereof, as security for, among other things, Owner Trustee's obligations to Loan Participant and Note Holders and for the benefit and security of Loan Participant and such holders;

WHEREAS, all things have been done to make the Secured Notes, when executed by Owner Trustee and authenticated, issued and delivered hereunder, the legal, valid and binding obligations of Owner Trustee; and

WHEREAS, all things necessary to make this Indenture the legal, valid and binding obligation of Owner Trustee, for the uses and purposes herein set forth, in accordance with its terms, have been done and performed and have happened;

## GRANTING CLAUSE

NOW, THEREFORE, THIS TRUST INDENTURE AND SECURITY AGREEMENT WITNESSETH that, to secure the prompt payment of the principal of, Make Whole Premium Amount, if any, and interest on, and all other amounts due with respect to, all Secured Notes from time to time outstanding hereunder and the performance and observance by Owner Trustee of all the agreements, covenants and provisions herein, in the Participation Agreement and in the other Operative Documents other than the Equity Guarantee Agreement for the benefit of Note Holders and Loan Participant and in the Secured Notes contained, and the prompt payment of all amounts from time to time owing under the Participation Agreement and the other Operative Documents other than the Equity Guarantee Agreement by Owner Trustee, Owner Participant or Lessee, in each case, to Loan Participant and/or Note Holders, and for the uses and purposes and subject to the terms and provisions hereof, and in consideration of the premises and of the covenants herein contained, and of the acceptance of the Secured Notes by the holders thereof, and of the sum of $1 paid to Owner Trustee by Indenture Trustee at or before the delivery hereof, the receipt whereof is hereby acknowledged, Owner Trustee has granted, bargained, sold, assigned, transferred, conveyed, mortgaged, pledged and confirmed, and does hereby grant, bargain, sell, assign, transfer, convey, mortgage, pledge and confirm, unto Indenture Trustee, its successors and assigns, for the security and benefit of Loan Participant and Note Holders from time to time, a security interest in and mortgage Lien on all estate, right, title and interest and all powers and privileges of Owner Trustee in, to and under the following described property, rights, interests and privileges whether tangible or intangible, wherever located or situated, whether now owned or held or hereafter acquired, other than Excepted Payments and Excepted Rights (which collectively, excluding Excepted Payments and Excepted Rights but otherwise including all property hereafter specifically subjected to the Lien of this Indenture by the Indenture Supplements or any mortgage supplemental hereto, are included within the Trust Indenture Estate), to wit:

(1)     the Equipment and all replacements thereof and substitutions therefor in which Owner Trustee shall from time to time acquire an interest as provided herein and in the Lease, all as more particularly described in the Indenture Supplements executed and delivered with respect to the Equipment or any such replacements or substitutions therefor, as provided in this Indenture, and the interest of Owner Trustee in all records, logs and other documents at any time maintained by Lessee with respect to the foregoing property;

(2)     the French Leasehold Interests, each French Lease, each Assignment (Cession), each Consent to Assignment (Cession), each Lessor Security Agreement, each Escrow Agreement, each Amtrak Delegation and each Amtrak Bill of Sale, including, without limitation, all rights of Owner Trustee to exercise any election or option (including the election to give notice pursuant to Sections 4.1, 4.2.1 and 4.3 of each French Lease) or to make any decision or determination or to give or receive any notice, consent, waiver or approval or to take any other action under or in respect of any such document or to accept, surrender or redelivery of the Equipment or any part thereof, as well as all the rights, powers and remedies on the part of Owner Trustee, whether acting under any such document or by statute or at law or in equity or otherwise, arising out of any Lease Event of Default or otherwise;

(3)     the Lease and all Rent thereunder, including, without limitation, all amounts of Base Rent, Supplemental Rent, and payments of any kind thereunder or in respect thereof, the Purchase Agreement (to the extent assigned by each Assignment of Warranties), each Assignment of Warranties, and each Consent, including without limitation, in the case of each such Operative Document (other than with respect to all Excepted Payments and Excepted Rights), (x) all amounts or other payments of any kind paid or payable by the obligor(s) thereunder or in respect thereof to Owner Trustee whether in its capacity as Lessor or otherwise as well as all rights of Owner Trustee to enforce payment of any such amounts or payments, (y) all rights of Owner Trustee to exercise any election or option or to make any decision or determination or to give or receive any notice, consent, waiver or approval or to take any other action under or in respect of any such document or to accept surrender or redelivery of the Equipment or any part thereof, as well as all the rights, powers and remedies on the part of Owner Trustee, whether acting under any such document or by statute or at law or in equity, or otherwise, arising out of any Lease Event of Default or otherwise, and (z) any right to restitution from Lessee in respect of any determination of invalidity of any such document;

(4)     all rents, issues, profits, revenues and other income of the property subjected or required to be subjected to the Lien of this Indenture;

(5)     all insurance and requisition proceeds with respect to the Equipment or any part thereof including but not limited to the insurance required under Section 8 of the Lease;

(6)     all moneys and securities now or hereafter paid or deposited or required to be paid or deposited to or with Indenture Trustee by or for the account of Owner Trustee pursuant to any term of any Operative Document and held or required to be held by Indenture Trustee hereunder; and

(7)     all proceeds of the foregoing;

BUT EXCLUDING from the foregoing and from the Trust Indenture Estate all Excepted Payments and Excepted Rights, and the rights to enforce, collect, settle or compromise the same, and SUBJECT TO the rights of Owner Trustee and Owner Participant under Section 6.10 hereof.

Concurrently with the delivery hereof, Owner Trustee is delivering to Indenture Trustee the executed counterpart of the Lease (including each Lease Supplement delivered on the first Closing Date) identified for Uniform Commercial Code purposes as the sole chattel paper original of the Lease (to which a chattel paper receipt is attached), together with executed copies of the Indenture Documents.  On each subsequent Closing Date, Owner Trustee shall deliver to Indenture Trustee the executed counterpart of the Lease Supplement with respect to the Units delivered on such Closing Date identified for Uniform Commercial Code purposes as the sole chattel paper original of the Lease Supplement (to which a chattel paper receipt shall be attached).

Notwithstanding the foregoing provisions, the obligations with respect to the Secured Notes issued on a particular Closing Date are secured only by a security interest in, and an assignment of Owner Trustee's rights under the Lease, the other Indenture Documents and any related part of the Trust Indenture Estate with regard to, the  Equipment financed on such

Closing Date, replacements therefor, substitutions thereof, accessions thereto, requisition proceeds with respect thereto, and all monies, securities and other proceeds with respect thereto and not secured by a security interest in, or an assignment of Owner Trustee's rights under the Lease, the other Indenture Documents and any related part of the Trust Indenture Estate with respect to, the Equipment financed on any other Closing Date or any replacements therefor, substitutions thereof, accessions thereto, requisition proceeds with respect thereto, and all monies, securities and other proceeds with respect thereto.

## HABENDUM CLAUSE

TO HAVE AND TO HOLD all and singular the aforesaid property unto Indenture Trustee, its successors and assigns, in trust for the benefit and security of Loan Participant and Note Holders from time to time, without any priority of any one Secured Note over any other Secured Note issued on the same Closing Date, and for the uses and purposes and subject to the terms and provisions set forth in this Indenture.

It is expressly agreed that anything contained in the Granting Clause notwithstanding, Owner Trustee shall remain liable under the Indenture Documents to perform all of the obligations assumed by it thereunder, all in accordance with and pursuant to the terms and provisions thereof, and Indenture Trustee, Loan Participant and Note Holders shall have no obligation or liability under any thereof by reason of or arising out of the assignment hereunder, nor shall Indenture Trustee, Loan Participant or Note Holders be required or obligated in any manner to perform or fulfill any obligations of Owner Trustee under or pursuant to any of the Indenture Documents, except as herein expressly provided, to make any payment, or to make any inquiry as to the nature or sufficiency of any payment received by it, or present or file any claim, or take any action to collect or enforce the payment of any amounts which may have been assigned to it or to which it may be entitled at any time or times.

Owner Trustee does hereby constitute Indenture Trustee the true and lawful attorney of Owner Trustee, irrevocably, with full power (in the name of Owner Trustee or otherwise) to ask, require, demand and receive any and all moneys and claims for moneys (in each case including insurance and requisition proceeds but excluding Excepted Rights and Excepted Payments) due and to become due under or arising out of the Indenture Documents and all other property which now or hereafter constitutes part of the Trust Indenture Estate, to endorse any checks or other instruments or orders in connection therewith and to file any claims or to take any action or to institute any proceedings which Indenture Trustee may deem to be necessary or advisable in the premises including, without limitation, the express power to execute and deliver a bill of sale conveying title to the Equipment to Indenture Trustee on and subject to the terms and conditions of Article IV of this Indenture. Under the Lease, Lessee is directed to make all payments of Rent (other than Excepted Rights and Excepted Payments) and all other amounts which are required to be paid to or deposited with Owner Trustee pursuant to the Lease (other than Excepted Rights and Excepted Payments) directly to Indenture Trustee at such address or addresses as Indenture Trustee shall specify, for application as provided in this Indenture. Further, Owner Trustee agrees that promptly on receipt thereof, it will transfer to Indenture Trustee any and all monies from time to time received by it constituting part of the Trust Indenture Estate, whether or not expressly referred to in the immediately preceding sentence, but including, without limitation, any thereof constituting a payment under the Lease

for distribution by Indenture Trustee pursuant to this Indenture, except that Owner Trustee shall accept for distribution pursuant to the Trust Agreement any amounts distributed to it by Indenture Trustee under this Indenture.

Owner Trustee agrees that at any time and from time to time, upon the written request of Indenture Trustee, Owner Trustee will promptly and duly execute and deliver or cause to be duly executed and delivered any and all such further instruments and documents as Indenture Trustee may reasonably deem desirable in obtaining the full benefits of the assignment hereunder and of the rights and powers herein granted.

Owner Trustee does hereby warrant and represent that it has not assigned or pledged, and hereby covenants that it will not assign or pledge, so long as this Indenture shall remain in effect and the Lien hereof shall not have been released pursuant to Section 10.01 hereof, any of its estate, right, title or interest hereby assigned, to anyone other than Indenture Trustee, and that, with respect to such estate, right, title and interest hereby assigned, it will not, except as provided in this Indenture and except as to Excepted Payments and Excepted Rights, (i) accept any payment from Lessee or French Lessor, enter into any agreement amending, modifying or supplementing any of the Indenture Documents or execute any waiver or modification of, or consent under, the terms of any of the Indenture Documents, (ii) settle or compromise any claim (other than those relating to Excepted Rights and Excepted Payments) arising under any of the Indenture Documents, or (iii) submit or consent to the submission of any dispute, difference or other matter (other than those relating to Excepted Rights and Excepted Payments) arising under or in respect of any of the Indenture Documents to arbitration thereunder.

IT IS HEREBY COVENANTED AND AGREED by and between the parties hereto as follows:

**ARTICLE I**

**<u>DEFINITIONS</u>**

SECTION 1.01. <u>Special Definitions</u>.   For all purposes of this Indenture the following terms shall have the following meanings (such definitions to be equally applicable to both the singular and plural forms of the terms defined):

"*Assumption Agreement*" shall mean any agreement entered into in accordance with Section 10.1(i)(b) of the Participation Agreement.

"*Corporate Trust Administration*" shall mean the Corporate Trust Administration of Owner Trustee located at Wilmington Trust Company, Rodney Square North, 1100 North Market Street, Wilmington, Delaware 19890-0001, Attention: Corporate Trust Administration, or such other office at which Owner Trustee's corporate trust business shall be administered which Owner Trustee shall have specified by notice in writing to Lessee, Indenture Trustee, Owner Participant, Loan Participant and Note Holders.

"*Corporate Trust Office*" shall mean the principal office of Indenture Trustee located at Allfirst Bank, 25 South Charles Street, Mail Code 101-591, Baltimore, Maryland

21201, Attention: Corporate Trust Administration, or such other office at which Indenture Trustee's corporate trust business shall be administered which Indenture Trustee shall have specified by notice in writing to Lessee, Owner Trustee, Loan Participant and each Note Holder.

"*Debt*" shall mean any liability for borrowed money, or any liability for the payment of money in connection with any letter of credit transaction, or other liabilities evidenced or to be evidenced by bonds, debentures, notes or other similar instruments.

"*Default*" shall mean an event which with notice or lapse of time or both would become an Event of Default.

"*Event of Default*" shall have the meaning specified in Section 4.02 hereof.

"*Excepted Payments*" means

(i)    indemnity or other payments (and interest thereon to the extent provided in the Operative Documents) paid or payable by Lessee in respect of Owner Participant, Trust Company or any of their respective affiliates, successors, permitted assigns, directors, officers, employees, servants and agents, pursuant to Sections 6.1, 6.2 and 7.3 of the Participation Agreement and any payments of costs and expenses of Owner Trustee and Owner Participant payable by Lessee pursuant to the Operative Documents,

(ii)    proceeds of any public liability insurance policies (or government indemnities in lieu thereof) in respect of the Equipment payable as a result of insurance claims paid for the benefit of, or losses suffered by, Owner Trustee, Trust Company or Owner Participant,

(iii)    proceeds of property insurance maintained with respect to the Equipment for the benefit of Owner Participant (whether directly or through Owner Trustee) and not required to be maintained under Section 8 of the Lease except to the extent that the maintenance thereof reduces the coverage of any amount payable under any insurance required to be maintained under Section 8 of the Lease,

(iv)    payments of Supplemental Rent by Lessee in respect of any amounts payable under the Tax Indemnity Agreement,

(v)    fees payable to Owner Trustee or Indenture Trustee pursuant to the last sentence of Section 7.2 of the Participation Agreement,

(vi)    all right, title and interest of Owner Trustee and/or Owner Participant in and to the Equity Guarantee Agreement and any payment paid or payable thereunder,

(vii)    any interest that pursuant to the Operative Documents may from time to time accrue in respect of any of the amounts described in clauses (i) through (vi) above,

(viii)    any right to exercise any election or option or make any decision or determination, or to give or receive any notice, consent, waiver or approval, or to take any other action in respect of, but in each case only to the extent relating to, any Excepted Payments,

(ix)    any right to restitution from Lessee in respect of, but only to the extent relating to, any Excepted Payment resulting from a determination of invalidity of such Excepted Payment,

(x)    any right of Owner Trustee or Trust Company to indemnity from Owner Participant pursuant to the Trust Agreement,

(xi)    any right to demand, collect or otherwise receive and enforce the payment of any amount described in clauses (i) through (x) above, or to enforce the Equity Guarantee Agreement, and

(xii)    all proceeds of the foregoing.

"*Excepted Rights*" shall mean the rights of Owner Participant or Owner Trustee set forth in Section 6.10 hereof.

"*Indenture Documents*" shall mean the Participation Agreement, the Lease, the Purchase Agreement (to the extent assigned by each Assignment of Warranties), each Assignment of Warranties, each Consent, each French Lease, each Assignment (Cession), each Consent to Assignment (Cession), each Lessor Security Agreement, each Escrow Agreement, each Amtrak Delegation and each Amtrak Bill of Sale.

"*Indenture Supplement*" shall mean each supplement to this Indenture, in substantially the form of Exhibit A hereto, which shall particularly describe the Equipment and any Replacement Unit included in the property of Owner Trustee covered by the Trust Agreement and in the case of each such supplement delivered on a Closing Date, setting forth the Debt Rate, maturity and principal amount of Secured Notes issued hereunder on such Closing Date.

"*Indentured Property*" shall mean all property included in the Trust Indenture Estate.

"*Majority in Interest of Note Holders*" as of a particular day of determination shall mean the holders of at least 66-2/3% in aggregate unpaid principal amount of all Secured Notes outstanding as of such date (excluding any Secured Notes held by Owner Trustee or Owner Participant or any interests of Owner Participant therein by reason of subrogation pursuant to Section 4.03 hereof (unless all Secured Notes then outstanding shall be held by Owner Trustee or Owner Participant) or Lessee or any Affiliate of any thereof).

"*Make Whole Premium Amount*" shall mean, with respect to any Secured Note, an amount equal to the excess, if any, of (a) the present value, as of the date of the relevant payment of such Secured Note, of the respective installments of principal of and interest on such Secured Note that, but for such payment, would have been payable on Installment Payment Dates after such payment over (b) the outstanding principal amount of such Secured Note then being paid. Such present value shall be determined by discounting the amounts of such installments from their respective Installment Payment Dates to the date of such prepayment, purchase or acceleration at a rate equal to the Treasury Rate plus 0.70%. If the sum of the then Treasury Rate plus 0.70% as so provided in the preceding sentence is equal to or higher than the Debt Rate

for such Secured Note, the Make Whole Premium Amount for such Secured Note is zero.  The Make Whole Premium Amount shall be determined solely by EDC or the Primary Loan Participant, as the case may be.

"*Note Holder*" shall mean any holder from time to time of one or more Secured Notes in its capacity as such.

"*Note Register*" shall have the meaning specified in Section 2.09 hereof.

"*Permitted Loan Participant*" shall mean any Person who, at the time it acquires its interest in a Secured Note, is entitled to complete exemption from the withholding and deduction of United States Federal Taxes on interest received by it on any Secured Notes held by it by reason of being:

(i) a United States Person within the meaning of section 7701(a)(30) of the Code who is described in Treasury Regulation Section 1.6049-4(c)(1)(ii),

(ii) a Non-U.S. Person whose ownership of its interest in such Secured Note is effectively connected (within the meaning of section 864(c) of the Code) with the conduct of a trade or business within the United States through a permanent establishment, or

(iii) a resident of a Qualifying Jurisdiction (other than the United States) who is entitled to claim the benefits of the income tax treaty between its country of residence (as the case may be) and the United States, as then in effect.

"*Primary Loan Participant*" shall have the meaning given to such term in the definition of "Treasury Rate" in this Section 1.

"*Qualifying Jurisdiction*" shall mean Austria, Canada, France, Germany, the Republic of Ireland, Luxembourg, the Netherlands, Switzerland, the United Kingdom, Japan or the United States.

"*Related Notes*" shall mean with respect to a Unit delivered on any Closing Date (or in substitution of any such Unit pursuant to Section 7.2 of the Lease and Section 5.06 hereof), the Secured Notes of the series issued hereunder on such Closing Date.

"*Secured Note*" or "*Note*" means each of the promissory notes of Owner Trustee, substantially in the form thereof specified in Exhibit C to this Indenture, and shall include any Secured Note issued in exchange therefor or replacement thereof pursuant to Section 2.09, 2.10 or 2.16 of this Indenture.

"*Treasury Rate*" shall, in respect of any determination of Make Whole Premium Amount for any Secured Note,  mean, as of any date, the weighted average yield to maturity of United States Treasury Notes (determined by interpolation) with an average life equal to the average life of such Secured Note on display on Dow Jones Market Service 7677 (or such other display screen as may replace Dow Jones Market Service 7677); such weighted average yield of United States Treasury Notes to be calculated by EDC (or if EDC is no longer a Loan

Participant, the Loan Participant (the "*Primary Loan Participant*") holding Secured Notes at such time in an aggregate outstanding principal amount greater than the aggregate principal amount of Secured Notes held by any other single Loan Participant).

"*Trust Indenture Estate*" shall mean all estate, right, title and interest of Indenture Trustee in and to any of the properties, rights, interests and privileges granted to Indenture Trustee pursuant to the Granting Clause of this Indenture, excluding, however, Excepted Payments and Excepted Rights.

SECTION 1.02. Reference to Other Documents.   For all purposes of this Indenture capitalized terms used but not defined herein are used as defined in Annex A to the Lease and the rules of interpretation set forth in Annex A to the Lease shall also apply to this Indenture, and by this reference are incorporated herein.

## ARTICLE II

## THE SECURED NOTES

SECTION 2.01. Form of Secured Notes.   The Secured Notes and Indenture Trustee's form of certificate of authentication to appear on the Secured Notes shall each be substantially in the form of Exhibit C hereto.

SECTION 2.02. Terms of Secured Notes.   (a)  Secured Notes shall be issued in one or more series in an aggregate principal amount not to exceed the Loan Participant's Maximum Commitment, with each such series corresponding to a Closing Date and designated with a letter for the series and a number for the number of the Secured Note in such series (e.g., "A-1").  Secured Notes issued on a Closing Date shall be in an aggregate principal amount equal to Loan Participant's Commitment for such Closing Date, and shall have a stated maturity on the Installment Payment Date occurring in the month and year, in each case determined as provided in Section 2.6 of the Participation Agreement and specified in the Indenture Supplement dated the Closing Date on which such Secured Notes are issued.  On such Closing Date, Secured Notes shall be issued to and registered in the name of EDC (and/or its transferees in accordance with the Operative Documents) in a principal amount equal to the Loan Participant's Commitment for the Units to be delivered on such Closing Date.

(b)  The aggregate principal amount of the Secured Notes shall be due and payable in semi-annual installments, payable on Installment Payment Dates, in amounts as set forth in Annex A to the Secured Notes (provided, however, that the final principal payment for each Secured Note shall in any and all events equal the then outstanding principal balance thereof).

(c)  Secured Notes of each series shall bear interest at the applicable Debt Rate for such series on the unpaid principal amount thereof from time to time outstanding from and including the date thereof until such principal is paid in full.  Accrued interest on each Secured Note shall be payable in arrears on each Installment Payment Date and on the date such Secured Note is paid in full.  Notwithstanding the foregoing, each Secured Note shall bear interest at the Overdue Rate for such series of Secured Notes on any principal thereof and, to the extent

permitted by Applicable Law, on any interest or other amounts due thereunder, not paid when due (whether at stated maturity, by acceleration or otherwise), payable on demand by Note Holder thereof.

(d)   EDC (or if EDC is no longer a Loan Participant, the Primary Loan Participant), shall determine the Overdue Rates from time to time in effect on the Secured Notes, all in accordance with the definition of Overdue Rate, and promptly after each such determination shall give Owner Trustee, Indenture Trustee, Lessee and each relevant Note Holder notice of the interest rates so determined.  Any such determination shall be conclusive absent manifest error.

(e)   Secured Notes shall be executed on behalf of Owner Trustee by one of its authorized officers.  Secured Notes bearing the signatures of individuals who were at any time the proper officers of Owner Trustee shall bind Owner Trustee, notwithstanding that such individuals or any of them have ceased to hold such offices prior to the authentication and delivery of such Secured Notes or did not hold such offices at the respective dates of such Secured Notes.  Owner Trustee may from time to time execute and deliver Secured Notes (not, however, exceeding in aggregate original principal amount the amount specified in and as provided in Section 2.02(a)) hereof to Indenture Trustee for authentication upon original issue and such Secured Notes shall thereupon be authenticated and delivered by Indenture Trustee upon the written request of Owner Trustee signed by an authorized officer, provided that each such request shall specify the aggregate original principal amount of all Secured Notes to be authenticated hereunder on original issue.  Each Secured Note issued hereunder on any Closing Date shall be dated the date of its issuance and be of the appropriate series.  No Secured Note shall be secured by or entitled to any benefit under this Indenture or be valid or obligatory for any purpose unless there appears on such Secured Note a certificate of authentication in the form provided for herein executed by Indenture Trustee by the manual signature of one of its authorized officers, and such certificate upon any Secured Note shall be conclusive evidence, and the only evidence, that such Secured Note has been duly authenticated and delivered hereunder.

SECTION 2.03.  Limitations    on    Prepayments;    Indemnities;    Currency. (a) Secured Notes shall not be subject to prepayment except as provided in Sections 2.12 and 2.14 hereof.

(b)   Owner Trustee agrees to pay over to Indenture Trustee for distribution in accordance with Section 3.04(b) hereof any and all amounts received by Owner Trustee in respect of indemnity amounts paid by Lessee in respect of Note Holders pursuant to Sections 6.1 and 6.2 of the Participation Agreement.

(c)   The obligations of Owner Trustee payable hereunder or under the Secured Notes are payable in Dollars.

SECTION 2.04.  Taxes; Withholding.   Indenture Trustee agrees, to the extent required by Applicable Law, to withhold from each payment due hereunder or under any Secured Note United States withholding taxes at the appropriate rate, and, on a timely basis, to deposit such amounts with an authorized depository and make such reports, filings and other

reports in connection therewith, and in the manner required under Applicable Law. Upon any such withholding, Indenture Trustee shall forthwith notify the affected Note Holder, Owner Trustee and Lessee of such withholding. Indenture Trustee shall promptly furnish to each Note Holder (but in no event later than the date 30 days after the due date thereof) a U.S. Treasury Form 1042S (or similar forms as at any relevant time in effect), if applicable, indicating payment in full of any Taxes withheld from any payments by Indenture Trustee to such Persons together with all such other information and documents reasonably requested by Note Holder and necessary or appropriate to enable each Note Holder to substantiate a claim for credit or deduction with respect thereto for income tax purposes in any jurisdiction with respect to which such Note Holder is required to file a tax return. In the case of a Note Holder that is a Non-U.S. Person, Indenture Trustee agrees to furnish such Note Holder with such forms and other documentation as may be necessary or desirable to enable such Note Holder to claim an exemption from, or reduced rate of, such taxes, and provided that such Note Holder has furnished Indenture Trustee with the requested forms and other documentation and has not notified Indenture Trustee of the withdrawal or inaccuracy of such form prior to the date of each interest payment, only the reduced amount (if any) required by Applicable Law or treaty shall be withheld from payments under the Secured Notes held by such Note Holder in respect of United States federal income tax. In the case of a Note Holder that is a Non-U.S. Person and has furnished to Indenture Trustee (A) two complete and effective original signed copies of Internal Revenue Service Form 4224 evidencing such Note Holder's qualification for a complete exemption from U.S. federal income tax on all payments made under this Indenture and its Secured Notes, (B) two complete and effective original signed copies of Internal Revenue Service Form 1001 evidencing such Note Holder's qualification for a complete exemption from U.S. federal income tax on all payments of interest and fees made under this Indenture and its Secured Notes on the basis of a treaty between the United States and the country of residence of such Note Holder, (C) two complete and effective original signed copies of United States Treasury Form W-9 and a certificate substantially in the form of Exhibit B or (D) such other or successor forms or certificates as may be appropriate evidencing such Note Holder's complete exemption from the withholding of U.S. federal income taxes on all payments of interest made under this Indenture and its Secured Notes, in each case during the calendar year in which the payment is made, or in either of the two preceding calendar years, no amount shall be withheld from payments under the Secured Notes held by such Note Holder in respect of United States federal income tax. If any Note Holder has notified Indenture Trustee that any of the foregoing Forms or certificates is withdrawn or inaccurate, or if the Internal Revenue Code or the regulations thereunder or the administrative interpretation thereof are at any time after the date hereof amended to require such withholding of United States federal income taxes from payments under the Secured Notes held by such Note Holder, or if such withholding is otherwise required, Indenture Trustee agrees to withhold from each payment due to the relevant Note Holder withholding taxes at the appropriate rate under Applicable Law, and will, as more fully provided above, on a timely basis, deposit such amounts with an authorized depository and make such reports, filings and other reports in connection therewith, and in the manner required under Applicable Law.

If a Note Holder shall make a claim to Lessee for indemnification under Section 6.1 of the Participation Agreement in respect of U.S. withholding taxes (for purposes hereof a "*U.S. Withholding Tax Claim*") imposed on or in respect of any Secured Note, and Owner Trustee (on the written direction of Lessee) provides within 60 days thereof a Permitted

Loan Participant ready, willing and able to purchase at the purchase price specified below such Secured Note and assume such Note Holder's rights and obligations under the Operative Documents with respect thereto, then such Note Holder shall (unless it shall waive any claim for any future indemnity thereunder for such U.S. Withholding Tax) sell, assign, transfer and convey to such Permitted Loan Participant (without recourse, representation or warranty of any kind except the absence of any Lien thereon arising by reason of its own acts) all its right, title and interest in and to such Secured Note and the Operative Documents with respect thereto (excluding all right, title and interest under any of the foregoing to the extent such right, title or interest is with respect to any action or inaction or state of affairs or event occurring prior to such sale) under an instrument of assignment acceptable to such Note Holder and such Permitted Loan Participant, for a purchase price equal to the outstanding principal amount of such Secured Note, accrued interest thereon to but excluding the date of assignment, and all other amounts owing under or in respect of such Secured Note.

SECTION 2.05.  Payments from Trust Indenture Estate Only.  All payments to be made by Owner Trustee under this Indenture shall be made only from the income and the proceeds from the Trust Estate to the extent included in the Trust Indenture Estate and only to the extent that Owner Trustee shall have sufficient income or proceeds from the Trust Indenture Estate to enable Indenture Trustee to make payments in accordance with the terms hereof.  Each Note Holder, by its acceptance of such Secured Note, agrees that it will look solely to the income and proceeds from the Trust Indenture Estate to the extent available for distribution to it as herein provided and that none of Owner Trustee, Owner Participant, the Trust Company nor Indenture Trustee is personally liable to it for any amounts payable under this Indenture or such Secured Note or for any liability under this Indenture, except as expressly provided herein (in the case of Owner Trustee, Trust Company and Indenture Trustee) or in the Participation Agreement (in the case of Owner Participant, Owner Trustee, the Trust Company and Indenture Trustee).

SECTION 2.06.  Method of Payment.  Principal, Make Whole Premium Amount, if any, and interest and other amounts due hereunder or under the Secured Notes shall be payable in Dollars in immediately available funds on the due date thereof, to Indenture Trustee at Allfirst Bank, 25 South Charles Street, Mail Code 101-591, Baltimore, Maryland 21201, ABA No. 052000113, Credit Trust Receipts Account No. 090-0276-4, Reference: Amtrak Trust-EDC-1 Attention: Robert D. Brown, Corporate Trust Administration (or such other account at such other financial institution in New York City or Baltimore, Maryland as Indenture Trustee may so specify from time to time to Owner Trustee and Lessee) and Indenture Trustee shall remit all such amounts so received by it to such address and in such manner (by wire transfer of immediately available funds if not otherwise specified) (a) in the case of EDC, to the accounts specified for EDC in Schedule I to the Participation Agreement (or as EDC shall at any time otherwise specify in writing to Indenture Trustee), (b) in the case of any other Note Holder as such Note Holder shall have designated to Indenture Trustee in writing, and (c) in the case of Owner Trustee, to its account at Wilmington Trust Company, Rodney Square North, 1100 North Market Street, Wilmington, Delaware 19890-0001, ABA 021000089, Credit Account No. 52997-0, Reference: Amtrak Trust HS-EDC-1, Attention: Roseline Maney, Corporate Trust Administration.  If the payment was received prior to 1:00 a.m. New York time by Indenture Trustee on any Business Day, Indenture Trustee shall make such payment by 3:00 p.m. New York time on such Business Day; otherwise, Indenture Trustee shall make payment promptly, but not later than 11:00 a.m. New York time on the next succeeding Business Day.  In the event

Indenture Trustee shall fail to make any such payment as provided in the immediately foregoing sentence after its receipt of funds at the place and by the time specified above, Indenture Trustee, in its individual capacity and not as Trustee, agrees to compensate Note Holders and Owner Trustee at an interest rate equal to the Prime Rate for the period from the date such amount is due to, but excluding the date such amount is paid in full. If any sum payable hereunder to any Note Holder falls due on a day which is not a Business Day, then such sum shall be payable on the next succeeding Business Day and no interest or penalty shall accrue on the amount of such payment if such payment is made on such next succeeding Business Day. Prior to the due presentment for registration of transfer of any Secured Note, Owner Trustee, Indenture Trustee and Lessee may deem and treat the Person in whose name any Secured Note is registered on the Note Register as the absolute owner and holder of such Secured Note for the purpose of receiving payment of all amounts payable with respect to such Secured Note and for all other purposes, and neither Owner Trustee nor Indenture Trustee nor Lessee shall be affected by any notice to the contrary.

SECTION 2.07. <u>Application of Payments</u>. Subject to Sections 3.02 and 3.03 hereof, each payment of principal and interest or other amounts due on each Secured Note shall be applied, <u>first</u>, to the payment of interest on such Secured Note due and payable to the date of such payment, as in such Secured Note provided, as well as any interest on overdue principal or, to the extent permitted by law, interest and other amounts thereunder, <u>second</u>, to the payment of any other amount (other than the principal of such Secured Note) due under such Secured Note, <u>third</u>, to the payment of the principal of such Secured Note then due thereunder and <u>fourth</u>, the balance, if any, remaining thereafter, to the payment of the principal of such Secured Note remaining unpaid (provided that such Secured Note shall not be subject to prepayment without the consent of the holder thereof except as permitted by Sections 2.12 and 2.14 hereof). The amounts paid pursuant to clause "<u>fourth</u>" above shall be applied to the installments of principal of such Note in inverse order of maturity, except as provided in Section 2.14.

SECTION 2.08. <u>Termination of Interest in Trust Indenture Estate</u>. A Note Holder shall not, as such, have any further interest in, or other right with respect to, the Trust Indenture Estate when and if the principal amount of and premium, if any, and interest on and other amounts due under all Secured Notes held by such holder and all other sums payable to such holder hereunder and under the other Operative Documents by Owner Trustee or Lessee shall have been paid in full.

SECTION 2.09. <u>Registration, Transfer and Exchange of Secured Notes</u>. Indenture Trustee agrees with Owner Trustee that Indenture Trustee shall keep a register (herein sometimes referred to as the "*Note Register*") in which provisions shall be made for the registration of Secured Notes and the registration of transfers of Secured Notes. The Note Register shall be kept at the Corporate Trust Office, and Indenture Trustee is hereby appointed "Secured Note Registrar" for the purpose of registering Secured Notes and transfers of Secured Notes as herein provided. Upon surrender for registration of transfer of any Secured Note at the Corporate Trust Office, Owner Trustee shall execute, and Indenture Trustee shall authenticate and deliver, in the name of the designated transferee or transferees, one or more new Secured Notes of the same series and of a like aggregate principal amount; <u>provided</u> that as a condition to any such transfer, Indenture Trustee may require evidence satisfactory to it of the compliance of such transfer with the Securities Act of 1933, as amended, including, without limitation, a legal

opinion from counsel acceptable to Indenture Trustee as to such compliance.  At the option of any Note Holder, Secured Notes held by such holder may be exchanged for other Secured Notes of the same series of any authorized denominations, of like aggregate principal amount, upon surrender of the Secured Notes to be exchanged at the Corporate Trust Office.  Each new Secured Note issued upon transfer or exchange shall be in a principal amount of at least $1,000,000 (or such lesser amount as shall equal the entire outstanding principal amount of all Secured Notes of the relevant series held by any Note Holder) and dated the date of the surrendered Secured Note.  Whenever any Secured Notes are so surrendered for exchange, Owner Trustee shall execute, and Indenture Trustee shall authenticate and deliver, the Secured Notes of the relevant series which Note Holder making the exchange is entitled to receive.  All Secured Notes delivered pursuant to this Section 2.09 upon any registration of transfer or exchange of Secured Notes shall be the valid obligations of Owner Trustee evidencing the same respective obligations, and entitled to the same security and benefits under this Indenture, as the Secured Notes surrendered upon such registration of transfer or exchange.  Every Secured Note presented or surrendered for registration of transfer or exchange, shall (if so required by Indenture Trustee) be duly endorsed, or be accompanied by a written instrument of transfer in form satisfactory to Indenture Trustee duly executed by the holder thereof or his attorney duly authorized in writing.  Indenture Trustee shall make a notation on each new Secured Note of the amount of all payments of principal previously made on the old Secured Note or Secured Notes with respect to which such new Secured Note is delivered pursuant to this Section 2.09 and the date to which interest on such old Secured Note or Secured Notes has been paid.  Neither Indenture Trustee nor Owner Trustee shall be required to issue, transfer or exchange any Note during a period beginning at the opening of business 10 Business Days before any date on which interest or principal is to be paid through such date on which interest or principal is to be paid. Owner Trustee shall not be required to exchange any surrendered Secured Notes as above provided during the 7 calendar day period preceding the due date of any payment on such Secured Note.  Indenture Trustee shall not register a transfer of any Secured Note unless it shall have received a certificate of the transferor certifying that such transferor has complied with the provisions of Section 10.2 of the Participation Agreement in respect of such transfer or that such Section is inapplicable to such transfer.  By its acceptance thereof, each holder of a Secured Note agrees to be bound by and comply with the provisions of the Participation Agreement and this Indenture applicable to a Loan Participant or a Note Holder.  Any assignment or other transfer of all or any portion of any Secured Note may be effected only in accordance with the provisions of this Section 2.09.  Owner Trustee and Indenture Trustee may treat the registered owner of any Secured Note as the owner thereof for all purposes notwithstanding any notice to the contrary.

SECTION 2.10.  <u>Mutilated, Destroyed, Lost or Stolen Secured Notes</u>.  If any Secured Note shall become mutilated, destroyed, lost or stolen, Owner Trustee shall, upon the written request of the affected Note Holder, execute and Indenture Trustee shall authenticate and deliver, in replacement thereof, a new Secured Note of the same series in the same principal amount, dated the date of the Secured Note being replaced and issued under this Indenture.  If the Secured Note being replaced has become mutilated, such Secured Note shall be surrendered to Indenture Trustee and a photocopy thereof shall be furnished to Owner Trustee by Indenture Trustee.  If the Secured Note being replaced has been destroyed, lost or stolen, the affected Note Holder shall furnish to Owner Trustee and Indenture Trustee such security or indemnity as may be required by them to save Owner Trustee and Indenture Trustee harmless and evidence satisfactory to Owner Trustee and Indenture Trustee of the destruction, loss or theft of such

Secured Note and of the ownership thereof; provided, that if the affected Note Holder is EDC or an Institutional Investor with a tangible net worth in excess of $25,000,000, the written notice of such destruction, loss or theft and the written undertaking of such holder delivered to Owner Trustee and Indenture Trustee shall be sufficient evidence, security and indemnity.

SECTION 2.11. Payment of Expenses on Transfer.   Upon the execution and delivery of a new Secured Note or Secured Notes pursuant to Section 2.09 or 2.10 hereof, Owner Trustee and/or Indenture Trustee may require from the party requesting such new Secured Note or Secured Notes, without any right of reimbursement under any Operative Document, payment of a sum to reimburse Owner Trustee and/or Indenture Trustee for, or to provide funds for, the payment of any tax or other governmental charge in connection therewith or any charges and expenses connected with such tax or other governmental charge paid or payable by Owner Trustee or Indenture Trustee.

SECTION 2.12. Optional Prepayment.   (a) Owner Trustee may prepay the Secured Notes in whole but not in part on any Business Day in connection with a refinancing of the Secured Notes as provided in Section 14.8 of the Participation Agreement at their respective outstanding principal amounts, plus interest accrued thereon to the date of prepayment, plus the Make Whole Premium Amount payable in respect thereof and all other amounts then owing to Note Holders under the Operative Documents.

(b) Irrevocable notice of prepayment pursuant to Section 2.12(a) shall be given by Owner Trustee in the manner specified in Section 10.06 hereof at least 30 days prior to the date fixed for prepayment and shall specify (x) that it is a notice of prepayment made pursuant to Section 2.12 hereof and (y) the date fixed for prepayment. Upon the giving of any such notice there shall become due and payable on the date specified the outstanding principal amount of each Secured Note together with interest accrued thereon until the date of payment plus the Make Whole Premium Amount, if any, payable in respect thereof and all other amounts owing to Note Holders under the Operative Documents; provided however that, if the refinancing contemplated by Section 14.8 of the Participation Agreement is not consummated, then the principal amount of the Secured Notes shall not be deemed to have been due and no Make Whole Premium Amount, if any, shall be payable as a result thereof.

(c) Concurrently with any prepayment made pursuant to Section 2.12(a) hereof or Section 2.14 hereof, Owner Trustee, Lessee, and Indenture Trustee shall be furnished a certificate setting forth computations in reasonable detail showing the manner of calculation of any Make Whole Premium Amount payable in connection with any such prepayment or purchase. EDC (or the Primary Loan Participant, as the case may be), shall furnish any such certificate relating to the calculation of a Make Whole Premium Amount.   Any such determination shall be conclusive absent manifest error.

SECTION 2.13. Purchase Upon Event of Default.

(a) If no Event of Default other than a Lease Event of Default shall have occurred and upon the occurrence of (x) any Lease Event of Default, or (y) the Secured Notes shall have become due and payable as provided in Article IV hereof, Owner Participant or Owner Trustee may within 90 days thereafter elect to purchase all, but not less than all, Secured Notes then

outstanding in accordance with the provisions of this Section 2.13. To exercise such election Owner Participant or Owner Trustee shall give written notice thereof to each Note Holder and Indenture Trustee and upon receipt of any such notice by Indenture Trustee duly given in accordance with the provisions of this Section 2.13, Indenture Trustee shall not, so long as no Event of Default which does not result from a Lease Event of Default shall have occurred and be continuing, proceed to foreclose the Lien of this Indenture on or prior to such designated date of purchase. Such notice to Note Holders shall designate a date not more than 14 calendar days thereafter as the payment date. Upon payment to it in the manner provided for in Section 2.06 hereof from Owner Participant or Owner Trustee of an amount equal to the aggregate unpaid principal amount of all Secured Notes then held by such Note Holder, together with accrued and unpaid interest thereon to the date of payment (but without any Make Whole Premium Amount), and all other sums then due and payable to such Note Holder hereunder or under the other Operative Documents, such Note Holder shall forthwith sell, assign, transfer and convey to Owner Participant (without recourse, representation or warranty of any kind except for its own acts) all of the estate, right, title and interest of such Note Holder in and to the Trust Indenture Estate, this Indenture and all Secured Notes held by such Note Holder (excluding all estate, right, title and interest under the Operative Documents to the extent such right, title or interest is with respect to an obligation not then due and payable and not satisfied by Owner Participant, with respect to any action or inaction or state of affairs occurring prior to such sale).

(b) Owner Participant shall assume all of such Note Holder's obligations under the Participation Agreement and this Indenture arising subsequent to such sale. If Owner Participant shall so request, such Note Holder will comply with all the provisions of Section 2.09 hereof to enable new Secured Notes of the same series to be issued to Owner Participant in such denominations as Owner Participant shall request. All charges and expenses required pursuant to Section 2.11 hereof in connection with the issuance of any such new Secured Note pursuant to this Section in connection with the failure to consummate a purchase shall be borne by Owner Participant. Any election to purchase the Secured Notes under this Section 2.13 shall be irrevocable, provided that if on the specified payment date the Lease Event of Default giving rise to such election shall no longer be continuing, such election shall be deemed to be automatically withdrawn.

SECTION 2.14. _Mandatory Prepayment_. The Secured Notes of the series issued on the Closing Date for any Unit shall be prepaid in full or in part, as provided below, and, in connection therewith, immediately available funds in Dollars shall be deposited by or on behalf of Owner Trustee in the account of Indenture Trustee at the place and by the time and otherwise in the manner provided in Section 2.06 hereof, as follows:

(a) upon the occurrence of a Casualty Occurrence in respect of any Unit or Units (unless pursuant to Section 7 of the Lease and Section 5.06 hereof a Replacement Unit shall have been substituted for the Unit subject to such Casualty Occurrence), on the date specified for payment of Casualty Value with respect to such Casualty Occurrence in Section 7 of the Lease, the Related Notes shall be prepaid in full or (if the fraction in the following clause (i) is less than 1) in part (equal to the principal amount determined by such clause (i)), at a price equal to the sum of (i) as to principal thereof, an amount equal to the product obtained by multiplying the aggregate unpaid principal amount of such Related Notes as at the date of such prepayment for such Unit or Units (after deducting therefrom the principal installment, if any, due on such date)

by a fraction, the numerator of which shall be the Lessor's Cost of such Unit or Units and the denominator of which shall be the aggregate Lessor's Cost of all Units that were delivered on the same Closing Date as such Unit or Units (or in substitution for any Unit or Units delivered on such Closing Date pursuant to Section 7.2 of the Lease and 5.06 hereof) and were included in the Trust Indenture Estate immediately prior to the date of such determination, plus (ii) as to interest, the aggregate amount of interest accrued and unpaid in respect of the principal amount to be prepaid pursuant to clause (i) above to but not including the date of prepayment after giving effect to the application of any Base Rent paid on or prior to the date of such prepayment, but without the payment of any Make Whole Premium Amount, plus (iii) all such other sums then due and payable hereunder and thereunder by Lessee or Owner Trustee to Note Holders;

(b) at any time, upon Lessee's or Lessor's election to terminate the Lease with respect to any Unit or Units as provided in Section 26 of the Lease (unless such election shall have been revoked pursuant to Section 26.3 of the Lease), on the Termination Date, the Related Notes shall be prepaid in full or (if the fraction in the following clause (i) is less than 1) in part (equal to the principal amount determined by such clause (i)), at a price equal to the sum of (i) as to principal thereof, an amount equal to the product obtained by multiplying the aggregate unpaid principal amount of such Related Notes as at the date of such prepayment for such Unit or Units (after deducting therefrom the principal installment, if any, due on such date) by a fraction, the numerator of which shall be the Lessor's Cost of such Unit or Units and the denominator of which shall be the aggregate Lessor's Cost of all Units that were delivered on the same Closing Date as such Unit or Units (or in substitution for any Unit or Units delivered on such Closing Date pursuant to Section 7.2 of the Lease and 5.06 hereof) and were included in the Trust Indenture Estate immediately prior to the date of such prepayment and (ii) as to interest, the aggregate amount of interest accrued and unpaid in respect of the principal amount to be prepaid pursuant to clause (i) above to but not including the date of prepayment after giving effect to the application of any Base Rent paid on or prior to the date of such prepayment, (iii) an amount equal to the Make Whole Premium Amount, if any, in respect of the principal amount to be prepaid pursuant to clause (i) above and (iv) all such other sums then due and payable hereunder and thereunder by Lessee or Owner Trustee to Note Holders, provided however, that if the voluntary termination contemplated by Section 26 of the Lease is not consummated for any reason, or Lessee has not provided the required funds to effect such voluntary termination, then the principal amount of the Secured Notes shall not be deemed to have been due and no Make Whole Premium Amount shall be payable as a result thereof;

(c) at any time, upon Lessee's election to purchase any Unit or Units as provided in Section 16.1 of the Lease, on the date of such purchase, the Related Notes (unless assumed as provided therein and in Section 18 of the Participation Agreement) shall be prepaid in full or (if the fraction in the following clause (i) is less than 1) in part (equal to the principal amount determined by such clause (i)), at a price equal to the sum of (i) as to principal thereof, an amount equal to the product obtained by multiplying the aggregate unpaid principal amount of such Related Notes as at the date of such prepayment for such Unit or Units (after deducting therefrom the principal installment, if any, due on such date) by a fraction, the numerator of which shall be the Lessor's Cost of such Unit or Units and the denominator of which shall be the aggregate Lessor's Cost of all Units that were delivered on the same Closing Date as such Unit or Units (or in substitution for any Unit or Units delivered on such Closing Date pursuant to Section 7.2 of the Lease and 5.06 hereof) and were included in the Trust Indenture Estate

immediately prior to the date of such prepayment plus, (ii) as to interest, the aggregate amount of interest accrued and unpaid in respect of the principal amount to be prepaid pursuant to clause (i) above to but not including the date of prepayment after giving effect to the application of any Base Rent paid on or prior to the date of such prepayment plus, (iii) an amount equal to the Make Whole Premium Amount, if any, in respect of the principal amount to be prepaid pursuant to clause (i) above, plus, (iv) all such other sums then due and payable hereunder and thereunder by Lessee or Owner Trustee to Note Holders provided however, that if the purchase option contemplated by Section 16.1 of the Lease is not consummated for any reason, or Lessee has not provided the required funds to effect such purchase option, the principal amount of the Secured Notes shall not be deemed to have been due and no Make Whole Premium Amount shall be payable or prepayable as a result thereof; and

 (d) if, upon the occurrence of a Special Event, EDC requires that Amtrak refund the Secured Notes pursuant to Section 19 of the Participation Agreement, the Secured Notes shall be prepaid in full at a price equal to the sum of (i) as to principal thereof, an amount equal to the aggregate unpaid principal amount of the Secured Notes as at the date of such prepayment, plus (ii) as to interest, the aggregate amount of interest accrued and unpaid in respect of the principal amount to be prepaid pursuant to clause (i) above to but not including the date of prepayment after giving effect to the application of any Base Rent paid on or prior to the date of such prepayment, but without the payment of any Make Whole Premium Amount, plus (iii) all such other sums then due and payable hereunder and thereunder.

In the event of any prepayment of less than the entire principal amount of any series then outstanding pursuant to clause (a), (b) or (c) of this Section 2.14, (i) Owner Trustee will allocate the principal amount so to be prepaid among all outstanding Secured Notes of such series pro rata according to the respective unpaid principal amounts of the Secured Notes of such series and (ii) the amount required to be paid pursuant to Section 2.02(b) hereof in respect of the Secured Notes of such series shall be reduced on each Installment Payment Date for such series subsequent to the date of such prepayment by an amount equal to the product of (A) the principal amount of Secured Notes of such series which would be due and payable on each Installment Payment Date had such prepayment not been made and (B) a fraction, the numerator of which shall be the aggregate principal amount of the Secured Notes of such series so prepaid and the denominator of which shall be the entire principal amount of the Secured Notes of such series outstanding immediately prior to such prepayment.

 SECTION 2.15. <u>Secured Notes in Respect of Replacement Equipment</u>. Upon the execution and delivery of an Indenture Supplement covering a Replacement Unit, as provided in Section 5.06 hereof, each Related Note shall be deemed to have been issued in connection with such Replacement Unit and any other Units then in the Trust Indenture Estate, and each Related Note issued thereafter upon a transfer or exchange of, or as a replacement for, a Related Note, shall be designated as having been issued in connection with such Replacement Unit and any other Units then in the Trust Indenture Estate, but without any other change therein except as provided for in this Article II.

## ARTICLE III

## RECEIPT, DISTRIBUTION AND APPLICATION
## OF INCOME FROM THE TRUST ESTATE

SECTION 3.01. Certain Rent Distributions.  Except as otherwise provided in Section 3.03 hereof, each installment of Base Rent paid with respect to Equipment purchased on a specific Closing Date as well as any related payment of interest on overdue installments of Base Rent and any payment received by Indenture Trustee as contemplated by the first sentence of Section 4.03 hereof shall be promptly distributed in the following order of priority: first, so much of such installment or payment as shall be required to pay in full the aggregate amount of the payment or payments of principal and interest and other amounts (as well as any interest on overdue principal and, to the extent permitted by law, on interest and other amounts) then due under all Secured Notes issued on such Closing Date shall be distributed to Note Holders ratably, without priority of one Secured Note issued on such Closing Date over the other, in the proportion that the amount of such payment or payments then due under each such Secured Note issued on such Closing Date bears to the aggregate amount of the payments then due under all such Secured Notes issued on such Closing Date; and, second, the balance, if any, of such installment remaining thereafter shall be distributed to Owner Trustee for distribution pursuant to the Trust Agreement; provided, however, that if a Specified Default or an Event of Default shall have occurred and be continuing, then such balance as shall not constitute Excepted Payments shall not be distributed as provided in this clause "second" but shall be held by Indenture Trustee as part of the Trust Indenture Estate until whichever of the following shall first occur:  (i) all Specified Defaults and Events of Default shall have been cured, in which event such balance shall be distributed as provided in this clause "second", (ii) Section 3.03 hereof shall be applicable, in which event such balance shall be distributed in accordance with the provisions of said Section 3.03 or (iii) the 180th day after the receipt of such payment, in which event such balance shall be distributed as provided in this clause "second".

SECTION 3.02. Casualty Occurrence and Replacement; Lease Termination; Refinancing.  (a) Except as otherwise provided in Sections 3.02(d) and 3.03 hereof, any payment received by Indenture Trustee with respect to (i) any optional prepayment of the Secured Notes pursuant to Section 2.12 hereof, (ii) any termination of the Lease pursuant to Section 26 thereof or (iii) any purchase of any Unit by Lessee pursuant to Section 16.1 of the Lease shall be applied to the prepayment of the Secured Notes and to all other amounts payable hereunder as provided in Sections 2.12(a), 2.14(b) or 2.14(c) hereof, respectively, as the case may be, by applying such funds first, to reimburse Indenture Trustee for any reasonable out-of-pocket costs or expenses incurred in connection with such Casualty Occurrence termination or purchase, second, as provided in clause "second" of Section 3.03 hereof, third, as provided in clause "third" of Section 3.03 hereof, fourth, as provided in clause "fourth" of Section 3.03 hereof (as respects the Secured Notes being prepaid as aforesaid) plus payment of any Make Whole Premium Amount related thereto, fifth, as provided in clause "fifth" of Section 3.03 hereof (as respects the Secured Notes being prepaid as provided in said Sections), and sixth, as provided in clause "sixth" of Section 3.03; provided, that if a Replacement Unit or Units are to be substituted for any Unit or Units subject to such Casualty Occurrence as provided in Section 7 of the Lease and Section 5.06 hereof, any proceeds which result from such Casualty Occurrence and are paid to Indenture Trustee shall be held by Indenture Trustee as part of the Trust Indenture Estate and, so long as no Lease Default has occurred and is continuing or unless otherwise applied pursuant to Section 3.03 hereof after application to Lessee's obligations under

the Lease in accordance with the provisions thereof, such proceeds shall be released to Lessee upon the release of such Unit or Units the subject of such Casualty Occurrence and the replacement thereof as provided in such Sections.

(b)   Except as otherwise provided in Section 3.02(a), 3.02(d) or 3.03 hereof, any amounts received directly or indirectly from any Governmental Authority or insurer or other party not as a result of a Casualty Occurrence and pursuant to any provision of Section 7 or 8 of the Lease shall be applied in the applicable provisions of the Lease and, if and to the extent that any portion of such amounts held for account of Lessee are not at the time required to be paid to Lessee pursuant to the applicable provisions of Section 7 or 8 of the Lease, shall be held by Indenture Trustee as security for the obligations of Lessee under the Lease and shall be invested in accordance with the terms of Section 3.07 hereof and at such time as the conditions specified in the Lease for payment of such amounts to Lessee shall be fulfilled, such portion, and the net proceeds of any investment thereof, shall be paid to Lessee to the extent provided in the Lease, unless such net proceeds have theretofore been applied to Lessee's obligation under the Lease in accordance with the provisions thereof or the Secured Notes shall have theretofore become due and payable pursuant to Article IV hereof, in which event such portion shall be distributed forthwith in accordance with the provisions of Section 3.03 hereof.

(c)   Except as otherwise provided in Section 3.02(d) or 3.03 hereof, any payment received by Indenture Trustee with respect to the refinancing of the Secured Notes pursuant to Section 19 of the Participation Agreement or with respect to a Casualty Occurrence in respect of one or more Units shall be applied to a prepayment of the relevant Secured Notes and to all other amounts payable hereunder as provided in Section 2.14(a) and 2.14(d), respectively, by applying such funds first, to reimburse Indenture Trustee for any reasonable out-of-pocket costs and expenses incurred in connection with such prepayment, second, as provided in clause "second" of Section 3.03 hereof, third, as provided in clause "third" of Section 3.03 hereof, fourth, as provided in clause "fourth" of Section 3.03 hereof (as respects the Secured Notes being prepaid as provided in said Sections), fifth, as provided in clause "fifth" of Section 3.03 hereof (as respects the Secured Notes being prepaid as provided in said Sections), and sixth, as provided in clause "sixth" of Section 3.03.

(d)   Notwithstanding Section 3.03 or any reference to Section 3.03 hereof contained in paragraph (a), (b) or (c) of this Section 3.02, any amounts held by Indenture Trustee, including, without limitation, pursuant to Section 7 or 8 of the Lease, which are payable to Lessee pursuant to the terms of the Lease or held by Indenture Trustee in accordance with Section 7.4 or 8.2 of the Lease shall be so paid to Lessee or held by Indenture Trustee as security for the obligations of Lessee in each case in accordance with the applicable provisions of the Lease.

SECTION 3.03.  Payment After Event of Default, etc.   Except as otherwise provided in Sections 3.02(d) and 6.07 hereof, all payments received and amounts held or realized by Indenture Trustee constituting part of the Trust Indenture Estate (i) after an Event of Default shall have occurred and so long as such Event of Default shall be continuing and Indenture Trustee has declared the Lease to be in default or has otherwise received a request in accordance with the first sentence of Section 5.02(b) hereof to pursue remedies in respect thereof or (ii) after the Secured Notes shall have become due and payable as provided herein (and such acceleration

shall not have been, or deemed to have been, rescinded), as well as all payments or amounts then held by Indenture Trustee as part of the Trust Indenture Estate, shall be promptly distributed by Indenture Trustee in the following order of priority:

first, so much of such payments or amounts as shall be required to reimburse Indenture Trustee for any related tax, expense, charge or other loss (including, without limitation, all amounts to be expended at the expense of, or charged upon the tolls, rents, revenues, issues, products and profits of, the Indentured Property pursuant to Section 4.05(b) hereof) incurred by Indenture Trustee (to the extent not previously reimbursed) (including, without limitation, the expenses of any sale, taking or other proceeding, reasonable attorneys' fees and expenses, court costs, and any other expenditures incurred or expenditures or advances made by Indenture Trustee in the protection, exercise or enforcement of any right, power or remedy or any damages sustained by Indenture Trustee, liquidated or otherwise, upon such Event of Default) shall be applied by Indenture Trustee in reimbursement of such expenses;

second, so much of such payments or amounts remaining as shall be required to reimburse Note Holders for payments made pursuant to Section 5.03 hereof (to the extent not previously reimbursed) shall be distributed to Note Holders, and if the aggregate amount remaining shall be insufficient to reimburse all such payments in full, it shall be distributed ratably, without priority of one over any other, in the proportion that the aggregate amount of unreimbursed payments made by each such Note Holder pursuant to said Section 5.03 bears to the aggregate amount of the unreimbursed payments made by all Note Holders pursuant to said Section 5.03;

third, so much of the payments or amounts remaining as shall be required to pay to each Note Holder all other amounts payable pursuant to the indemnification provisions of Section 6.1 or 6.2 of the Participation Agreement or pursuant to any other provision of this Indenture or any Indenture Document and secured hereunder (other than amounts payable pursuant to clause "second", "fourth" or "fifth" of this Section 3.03) to such Note Holder or to its predecessors and remaining unpaid shall be distributed to such holder for distribution to itself and such predecessors, as their interests may appear, and if the aggregate amount remaining shall be insufficient to pay all such amounts in full, such payment or amount shall be distributed ratably, without priority of any Note Holder over any other Note Holder, in the proportion that the aggregate amount due each such Note Holder under this clause "third" bears to the aggregate amount due all such Note Holders under this clause "third";

fourth, so much of such payments or amounts remaining as shall be required to pay in full all accrued but unpaid interest on the outstanding principal amount of the Secured Notes, shall be distributed to Note Holders, and if the aggregate amount so to be distributed shall be insufficient to pay all such amounts in full, then such payment or amount shall be distributed ratably, without priority of any Note Holder over any other Note Holder, in the proportion that the aggregate amount thereof owed to each Note Holder bears to the aggregate amount thereof owed to all Note Holders;

fifth, so much of such payments or amounts remaining as shall be required to pay in full the aggregate unpaid principal amount of all Secured Notes then due shall be distributed to Note Holders, and if the aggregate amount so to be distributed shall be insufficient to pay all such amounts in full, then, such payment or amount shall be distributed ratably, without priority of any Note Holder over any other Note Holder, in the proportion that the aggregate unpaid principal amount of all Secured Notes held by each such Note Holder bears to the aggregate unpaid principal amount of all Secured Notes; and

sixth, the balance, if any, of such payments or amounts remaining thereafter shall be distributed to Owner Trustee for distribution pursuant to the Trust Agreement.

SECTION 3.04. Certain Payments.  (a) Except as otherwise provided in this Indenture, any payments received by Indenture Trustee for which provision as to the application thereof is made in the Lease or in any other Operative Document shall be applied forthwith to the purpose for which such payment was made in accordance with the terms of the Lease or such other Operative Document.

(b)  Indenture Trustee will distribute promptly upon receipt any indemnity or other payment received by it from Owner Trustee or Lessee in respect of Indenture Trustee in its individual capacity or any Note Holder or Loan Participant pursuant to either Section 6.1 or 6.2 of the Participation Agreement, directly to the Person entitled thereto.

(c)  Any payment of Rent received by Owner Participant or Indenture Trustee pursuant to the fourth sentence of Section 4.03 hereof shall, so long as no Specified Default or Lease Event of Default under the Lease in respect of any payments of Base Rent, Adjusted EBO Price, Termination Value or Casualty Value shall have occurred and be continuing and no Indenture Event of Default which is not a Lease Event of Default shall have occurred and be continuing, and except to the extent applied as provided in Section 3.03 hereof, be retained by, or promptly distributed to, Owner Participant.

(d)  Notwithstanding anything to the contrary contained in this Article III, any payment received by Indenture Trustee which constitutes Excepted Payments shall be distributed promptly upon receipt by Indenture Trustee directly to the Person or Persons entitled thereto.

SECTION 3.05. Other Payments.  Any payments received by Indenture Trustee for which no provision as to the application thereof is made in the Lease or in another Operative Document or elsewhere in this Indenture shall be distributed by Indenture Trustee to Owner Trustee for distribution in accordance with the Trust Agreement to the extent not received or realized at any time prior to the payment in full of all obligations to Note Holders secured by the Lien of this Indenture, in which case such payments will be distributed in the order of priority specified in Section 3.01 hereof.

SECTION 3.06. Payments to Owner Trustee.  Any amounts distributed hereunder by Indenture Trustee to Owner Trustee shall be paid to Owner Trustee by wire transfer of funds of the type received by Indenture Trustee at such office and to such account or accounts of such

entity or entities as shall be designated by notice from Owner Trustee to Indenture Trustee from time to time. Owner Trustee hereby notifies Indenture Trustee that unless and until Indenture Trustee receives notice to the contrary from Owner Trustee, all amounts to be distributed to Owner Trustee from Indenture Trustee (other than amounts payable to the Trust Company) shall be distributed by wire transfer of funds of the type received by Indenture Trustee to Owner Participant.

SECTION 3.07. <u>Investment of Amounts Held by Indenture Trustee</u>. (a) Any amounts held by Indenture Trustee as assignee of Owner Trustee's rights to hold moneys for security pursuant to Section 7.4 or 8.2 of the Lease shall be held in accordance with the terms of such Section; and Indenture Trustee hereby agrees to perform the duties of Owner Trustee under such Section.

(b) Any amounts held by Indenture Trustee pursuant to the <u>proviso</u> to the first sentence of Section 3.01 hereof, pursuant to Section 3.02 hereof, pursuant to the fourth sentence of Section 4.03 hereof or pursuant to Section 7.4 or 8.2 of the Lease shall be invested by Indenture Trustee from time to time in Permitted Investments selected by Owner Trustee (or, to the extent contemplated by said Section 7.4 or 8.2, Lessee) if such investments are reasonably available. Unless otherwise expressly provided in this Indenture, any income realized as a result of any such investment and any payments by Lessee pursuant to the Lease in respect of any losses or expenses, net of Indenture Trustee's reasonable fees and expenses in making such investment, shall be held and applied by Indenture Trustee in the same manner as the principal amount of such investment is to be applied and any losses, net of earnings and such reasonable fees and expenses, shall be charged against the principal amount invested. Indenture Trustee shall not be liable for any loss resulting from any investment required to be made by it under this Indenture other than by reason of its willful misconduct or gross negligence (or simple negligence in connection with the handling of funds).

(c) Unless otherwise confirmed in writing, an account statement delivered by Indenture Trustee to Owner Trustee (with a copy to Lessee) shall be deemed written confirmation by Owner Trustee that the investment transactions identified therein accurately reflect the investment directions given to Indenture Trustee by or on behalf of Owner Trustee, unless Owner Trustee (or Lessee on its behalf) notifies Indenture Trustee in writing to the contrary within 30 days of the date of receipt of such statement.

## ARTICLE IV

## COVENANTS OF OWNER TRUSTEE; EVENTS OF DEFAULT; REMEDIES OF INDENTURE TRUSTEE

SECTION 4.01. <u>Covenants of Owner Trustee</u>. (a) Owner Trustee hereby covenants and agrees that it will not directly or indirectly create, incur, assume or suffer to exist any Lessor's Liens attributable to it with respect to any of the properties or assets of the Trust Indenture Estate.

(b) Owner Trustee hereby covenants and agrees as follows (subject to Section 2.05 hereof):

(i) in the event a Responsible Officer in the Corporate Trust Administration shall have actual knowledge of an Event of Default or Default or a Casualty Occurrence, Owner Trustee will give prompt written notice of such Event of Default or Default or Casualty Occurrence to Indenture Trustee, Lessee, Owner Participant, Equity Guarantor and each Note Holder (with the understanding that Owner Trustee shall be able to conclusively rely on the Note Register maintained by Indenture Trustee pursuant to Section 2.09 hereof and that Owner Trustee shall incur no liability for or in respect of errors or inaccuracy in such Note Register);

(ii) Owner Trustee will furnish to each Note Holder at the time outstanding, Equity Guarantor and to Indenture Trustee, promptly upon receipt thereof, true and correct duplicates or copies of all reports, notices, requests, demands, certificates, financial statements and other instruments furnished to Owner Trustee under the Lease, including, without limitation, a copy of each report or notice received pursuant to Section 8 of the Participation Agreement, to the extent that the same shall not have been or is not required to be furnished to Indenture Trustee pursuant to the Lease and to each Note Holder (with the understanding that Owner Trustee shall be able to conclusively rely on the Note Register maintained by Indenture Trustee pursuant to Section 2.09 hereof and that Owner Trustee shall incur no liability for or in respect of errors or inaccuracy in such Note Register);

(iii) except as contemplated by the Operative Documents or with the consent of Indenture Trustee (acting pursuant to instructions given in accordance with Section 9.01 hereof) Owner Trustee will not contract for, create, incur, assume or suffer to exist any Debt, and will not guarantee (directly or indirectly or by an instrument having the effect of assuring another's payment or performance on any obligation or capability of so doing, or otherwise), endorse or otherwise be or become contingently liable, directly or indirectly, in connection with the Debt of any other person; and

(iv) Owner Trustee will not enter into any business or other activity other than the business of owning the Equipment, the leasing thereof to Lessee and the carrying out of the transactions contemplated hereby, and by the Lease, the Participation Agreement, the Trust Agreement and the other Operative Documents.

SECTION 4.02. Event of Default.  "*Event of Default*" means any of the following events (whatever the reason for such Event of Default and whether such event shall be voluntary or involuntary or come about or be effected by operation of law or pursuant to or in compliance with any judgment, decree or order of any court or any order, rule or regulation of any administrative or governmental body) so long as the same shall be continuing:

(a) any Lease Event of Default (other than in respect of (i) any Excepted Payments or (ii) Section 13.1(xi) of the Lease, unless Owner Participant shall agree in writing to treat such failure as an Event of Default); or

(b) the failure of Owner Trustee to pay when due any payment of principal of or interest on any Loan Certificate or any other amount due hereunder or under the Loan Certificates (in each case not arising out of, or otherwise attributable to, a Lease Default or a

Lease Event of Default under the Lease) and such failure has continued unremedied for 10 Business Days in the case of nonpayment of principal and interest and for 20 days after notice of nonpayment in the case of nonpayment of any other amount; or

(c) any representation or warranty made by Owner Participant, Owner Trustee, or Trust Company, herein or in the Participation Agreement or in any Assumption Agreement or by Owner Participant Guarantor in any Owner Participant Guaranty or in any certificate furnished on any Closing Date by Owner Participant or Owner Trustee to Indenture Trustee or any Note Holder in connection with the transactions contemplated by the Operative Documents shall prove to have been false or incorrect when made in any material respect to Note Holders; and if such misrepresentation is capable of being corrected as of a subsequent date and if such correction is being sought diligently, such misrepresentation shall not have been corrected as of a day within 30 calendar days following written notice thereof being given to Owner Trustee and Owner Participant; or

(d) any failure by Owner Trustee to observe or perform any material covenant or obligation of Owner Trustee contained in this Indenture, the Participation Agreement or any other Operative Document or any failure by Owner Participant to observe or perform any other material covenant or obligation of Owner Participant contained in the Participation Agreement or any other Operative Document (other than the Tax Indemnity Agreement and the Equity Guarantee Agreement), which failure is not remedied within a period of 30 calendar days after written notice thereof has been given to Owner Trustee and Owner Participant by Indenture Trustee provided, however, that, if such failure cannot with reasonable diligence be corrected within such 30-day period, such failure will not constitute an Event of Default so long as Owner Trustee or Owner Participant, as applicable, is diligently attempting to cure such failure and such failure is cured within 60 days from receipt of such notice; or

(e) either the Trust Estate, Owner Trustee, or Owner Participant or any Owner Participant Guarantor shall (i) file, or consent by answer or otherwise to the filing against it of, a petition for relief or reorganization or arrangement or any other petition in bankruptcy, for liquidation or to take advantage of any bankruptcy or insolvency law of any jurisdiction, (ii) make an assignment for the benefit of its creditors, or (iii) consent to the appointment of a custodian, receiver, trustee or other officer with similar powers of itself or any substantial part of its property; or

(f) the commencement of an involuntary case or other proceeding in respect of Owner Participant, any Owner Participant Guarantor, the Trust Estate or Owner Trustee in an involuntary case under the federal bankruptcy laws, now or hereafter constituted, or any other applicable federal or state bankruptcy, insolvency or other similar law in the United States or seeking the appointment of a receiver, liquidator, assignee, custodian, trustee, sequestrator (or similar official) of Owner Participant, any Owner Participant Guarantor, the Trust Estate or Owner Trustee of all or substantially all of its property, or seeking the winding-up or liquidation of its affairs and the continuation of any such case or other proceeding undismissed and unstayed for a period of 90 consecutive days or a court or Governmental Authority of competent jurisdiction shall enter an order appointing, without consent by the Trust Estate or Owner Trustee with respect thereto or Owner Participant or any Owner Participant Guarantor, as the case may be, a custodian, receiver, trustee or other officer with similar powers with respect to it or with

respect to any substantial part of its property, or constituting an order for relief or approving a petition for relief or reorganization or any other petition in bankruptcy or for liquidation or to take advantage of any bankruptcy or insolvency law of any jurisdiction, or ordering the dissolution, winding-up or liquidation of the Trust Estate or Owner Trustee with respect thereto or Owner Participant or any Owner Participant Guarantor, as the case may be, and any such order or petition is not dismissed or stayed within 90 days after the earlier of the entering of any such order or the approval of any such petition; or

(g) any repudiation by any Owner Participant Guarantor of its obligations under any Owner Participant Guaranty.

SECTION 4.03. Certain Rights. In the event of any default by Lessee in the payment of any installment of Base Rent due under the Lease, Owner Participant or Equity Guarantor may, within 10 Business Days after notice to Owner Participant and Equity Guarantor of such default from Indenture Trustee, without the consent or concurrence of any Note Holder, pay, as provided in Section 2.06 hereof, for application in accordance with Section 3.01 hereof a sum equal to the amount of all (but not less than all) of the principal and interest as shall then (without regard to any acceleration pursuant to Section 4.04(b) or (c) hereof) be due and payable on the Secured Notes. In the event of any default by Lessee in any obligation under the Lease other than the payment of Base Rent Owner Participant may, within 10 Business Days after notice to Owner Participant of such default being an Event of Default from Indenture Trustee, without the consent or concurrence of any holder of any Secured Note, instruct Owner Trustee to exercise Owner Trustee's rights under Section 19 of the Lease to perform such obligation on behalf of Lessee. Solely for the purpose of determining whether there exists an Event of Default, (a) any payment by Owner Participant or Equity Guarantor pursuant to, and in compliance with, the first sentence of this Section 4.03 shall be deemed to remedy (but solely for the purposes of this Indenture) any default by Lessee in the payment of installments of Base Rent, theretofore due and payable and to remedy any default by Owner Trustee in the payment of any amount due and payable under the Secured Notes or hereunder, and (b) any performance by Owner Participant of any obligation of Lessee under the Lease pursuant to, and in compliance with, the second sentence of this Section 4.03 shall be deemed to remedy any Lease Event of Default to the same extent that like performance by Lessee itself would have remedied such Lease Event of Default (but any such payment or performance shall not relieve Lessee of its duty to pay all Rent and perform all of its obligations pursuant to the Lease). If, on the basis specified in the preceding sentence, such Lease Event of Default shall have been remedied, then any declaration pursuant to Section 13.2 of the Lease that the Lease is in default, and any declaration pursuant to this Indenture that the Secured Notes are due and payable or that an Event of Default exists hereunder, based upon such Lease Event of Default, shall be deemed to be rescinded, and Owner Participant or Equity Guarantor, as applicable, shall (to the extent of any such payments made by it) be subrogated to the rights of Note Holders hereunder to receive such payment of Base Rent or Supplemental Rent from Indenture Trustee (and the payment of interest on account of such Rent being overdue), and shall be entitled, so long as no other Specified Default or Event of Default shall have occurred or would result therefrom, to receive such payment upon receipt thereof by Indenture Trustee; provided that so long as the Lien hereunder has not been discharged and satisfied in full neither Owner Participant nor Equity Guarantor shall otherwise attempt to recover any such amount paid by it on behalf of Lessee pursuant to this Section 4.03 except by demanding of Lessee payment of such amount, or by commencing an action at law

against Lessee for the payment of such amount or taking appropriate action in a pending action at law against Lessee or obtaining or enforcing a judgment against Lessee for the payment of such amount or filing a proof of claim, pursuing the same and taking other appropriate action in any bankruptcy, insolvency or reorganization proceeding involving Lessee; provided further, however, that at no time while a Specified Default or an Event of Default (other than any that have been so cured pursuant to this Section 4.03) shall have occurred and be continuing shall any such demand be made or shall any such action be commenced (or continued), and any amounts nevertheless received by Owner Participant in respect thereof (other than amounts received from the Equity Guarantor) shall be held in trust for the benefit of, and promptly paid to, Indenture Trustee for distribution as provided in Section 3.03 or 3.04(c) hereof, as the case may be; and further provided, that

(x)    this Section 4.03 shall not apply with respect to any cure of any default in the payment of Base Rent due under the Lease, if such cure shall have been effected with respect to (A) each of the six (6) Rent Payment Dates immediately preceding the date of such default or (B) more than twelve (12) Rent Payment Dates, and

(y)    neither Owner Trustee nor Owner Participant shall (without the prior written consent of the Majority in Interest of Note Holders) have the right to cure any Lease Default or Lease Event of Default except as specified in this Section 4.03.

SECTION 4.04.  Remedies.  (a) If an Event of Default shall have occurred and so long as the same shall be continuing unremedied, then and in every such case Indenture Trustee may, subject to Sections 2.13, 4.03 and 6.10 hereof and to the extent consistent with the third and fourth sentences of this Section 4.04(a), exercise any or all of the rights and powers and pursue any and all of the remedies pursuant to this Article IV and shall have and may exercise all of the rights and remedies of a secured party under the Uniform Commercial Code and, in the event such Event of Default is an Event of Default referred to in paragraph (a) of Section 4.02 hereof, any and all of the remedies pursuant to Section 13.2 of the Lease and under any other Indenture Document and may take possession of all or any part of the properties covered or intended to be covered by the Lien and security interest created hereby or pursuant hereto (but, in the case of the Equipment, only as permitted by Section 13.2 of the Lease) and may exclude Owner Participant, Owner Trustee and Lessee and all persons claiming under any of them wholly or partly therefrom.  Without limiting any of the foregoing, it is understood and agreed that Indenture Trustee may, subject to the remainder of this Section 4.04, exercise any right of sale of the Equipment available to it, even though it shall not have taken possession of the Equipment and shall not have possession thereof at the time of such sale.  It is further agreed and understood that if Indenture Trustee shall proceed to foreclose the Lien of this Indenture, it shall, first accelerate the Secured Notes pursuant to Section 4.04(c) (unless the Secured Notes shall have already been accelerated pursuant to Section 4.04(b), and to the extent Indenture Trustee is then entitled to do so hereunder and under the Lease, and is not then stayed or otherwise prevented from doing so by operation of law, proceed (to the extent it has not already done so) to declare the Lease in default (if not deemed to be in default) and (i) to terminate, cancel or rescind the Lease and be proceeding to exercise one or more of the other repossessory remedies referred to in Section 13.2 of the Lease (as it shall determine in its good faith discretion); provided that, during any period with respect to which Indenture Trustee is stayed or otherwise prevented from exercising the remedies required hereunder, Indenture Trustee shall not foreclose the Lien of this

Indenture, if and so long as such stay or other prohibition shall remain in effect, until the later of (i) 180 days after the commencement of the 60-day period (or such longer period as may then be in effect under Section 1168 of the Bankruptcy Code) in respect of Lessee's bankruptcy as provided in Section 1168 of the Bankruptcy Code (the "*Section 1168 Period*") and (ii) the end of any extension of the Section 1168 Period as may be agreed to between Indenture Trustee (as assignee of Owner Trustee under the Lease) and the bankruptcy trustee or debtor-in-possession pursuant to Section 1168 thereof. For the avoidance of doubt, it is expressly understood and agreed that the limitation on the ability of Indenture Trustee to exercise any right or remedy under the Lease described in the proviso to the immediately preceding sentence of this Section 4.04(a) and the limitation on the ability of Indenture Trustee to foreclose the Lien of the Indenture described in the preceding sentence of this Section 4.04(a) shall not (i) except as otherwise expressly provided in such preceding sentence, prevent Indenture Trustee from exercising all of its rights, powers and remedies under this Indenture, including without limitation this Article IV, nor (ii) be construed so as to restrict Indenture Trustee from declaring the Secured Notes to be due and payable in accordance with the provisions of clauses (b) and/or (c) of this Section 4.04.

(b)   If an Event of Default referred to in clause (g) or (h) of Section 4.02 hereof shall have occurred, or a Lease Event of Default of the type referred to in clause (g) or (h) of said Section 4.02 shall have occurred with respect to Lessee, then and in every such case the unpaid principal of all Secured Notes then outstanding, together with interest accrued but unpaid thereon (but without any Make Whole Premium Amount), and all other amounts due thereunder and hereunder, shall immediately and without further act become due and payable, without presentment, demand, protest or notice, all of which are hereby waived.

(c)   If any other Event of Default shall have occurred and be continuing, then and in every such case Indenture Trustee (i) may, by written notice or notices to Owner Trustee and Owner Participant (with a copy to Lessee), declare all the Secured Notes to be due and payable, whereupon the unpaid principal of all Secured Notes then outstanding, together with accrued but unpaid interest thereon (but without any Make Whole Premium Amount), and other amounts due thereunder, shall immediately become due and payable without presentment, demand, protest or notice, all of which are hereby waived and (ii) shall, upon the request of the Majority in Interest of Note Holders by written notice or notices to Owner Trustee (with a copy to Lessee), declare all the Secured Notes to be due and payable, whereupon the unpaid principal of all Secured Notes then outstanding, together with accrued but unpaid interest thereon (but without any Make Whole Premium Amount), and other amounts due thereunder, shall immediately become due and payable without presentment, demand, protest or notice, all of which are hereby waived.

(d)   Note Holders shall be entitled, at any sale pursuant to Section 13.2 of the Lease, to credit against any purchase price bid at such sale by such Note Holder all or any part of the unpaid obligations owing to such Note Holder and secured by the Lien of this Indenture.

(e)   All payments received and amounts held or realized by Indenture Trustee as a result of the exercise of its rights and powers pursuant to this Section 4.04 shall be applied by Indenture Trustee pursuant to Section 3.03.

(f)  Notwithstanding anything to the contrary herein, in respect of the Indenture Trustee's exercise of any of its rights and powers to pursue any of its remedies under this Article IV or under Section 13.2 of the Lease, the Indenture Trustee and the Note Holders agree that if an Event of Default, other than an Event of Default under clauses 13.1(i), (vi), (vii), (viii), (ix) and (x) of the Lease, shall have occurred and be continuing at any time during the period from and including the first Closing Date to and excluding October 1, 2002 (the "*Window Period*"), the Indenture Trustee agrees that it shall not foreclose the Lien of this Indenture either during or after the expiration of such Window Period solely as a result of such Events of Default.

(g)  If Lessee shall have become the subject as debtor of a proceeding under the Bankruptcy Code and the bankruptcy trustee, or (to the extent permitted under said Section 1168) debtor in possession, of Lessee's bankruptcy estate shall have agreed, with court approval, to perform all of Lessee's obligations under the Lease, all as provided in Section 1168 of the Bankruptcy Code, then (i) any acceleration of the Secured Notes in connection with such proceedings thereupon automatically shall be deemed to have been rescinded and (ii) if and so long as the trustee of Lessee's bankruptcy estate shall continue to perform the obligations of Lessee in accordance with the terms of the Lease, then no Lease Default or Lease Event of Default shall be deemed to exist solely by reason of the existence or continuance of such bankruptcy proceedings.

SECTION 4.05.  Return of Equipment, etc.  (a)  Subject to Sections 2.13, 4.3, 4.4 and 6.10, if an Event of Default shall have occurred and be continuing and the Secured Notes shall have been declared (or shall have been deemed) due and payable, at the request of Indenture Trustee, Owner Trustee shall promptly execute and deliver to Indenture Trustee such instruments of title and other documents as Indenture Trustee may deem necessary or advisable to enable Indenture Trustee or an agent or representative designated by Indenture Trustee, at such time or times and place or places as Indenture Trustee may specify, to obtain possession of all or any part of the Indentured Property included in the Trust Indenture Estate to which Indenture Trustee shall at the time be entitled hereunder.  If Owner Trustee shall for any reason fail to execute and deliver such instruments and documents after such request by Indenture Trustee made in accordance with the preceding sentence, Indenture Trustee may (i) obtain a judgment conferring on Indenture Trustee the right to immediate possession and requiring Owner Trustee to execute and deliver such instruments and documents to Indenture Trustee, the entry of which judgment Owner Trustee hereby specifically consents to the fullest extent it may lawfully do so, and (ii) to the extent permitted by law, pursue all or part of such Indentured Property wherever it may be found (but not in violation of the Lease) and may enter any of the premises of Lessee wherever such Indentured Property may be or be supposed to be and search for such Indentured Property and take possession of and remove such Indentured Property (but not in violation of the Lease).  All expenses of obtaining such judgment or of pursuing, searching for and taking such property shall, until paid, be secured by the Lien of this Indenture.

(b)  Upon every such taking of possession, Indenture Trustee may, from time to time, at the expense of the Trust Indenture Estate, make all such expenditures for maintenance, insurance, repairs, replacements, alterations, additions and improvements to and of the Indentured Property, as it may deem proper.  Subject to the provisions of Section 4.04(f) hereof, in each such case, Indenture Trustee shall have the right to maintain, use, operate, store, lease, control or manage the Indentured Property and to carry on the business and to exercise all rights

and powers of Owner Trustee relating to the Indentured Property, as Indenture Trustee shall deem best, including the right to enter into any and all such agreements with respect to the maintenance, insurance, use, operation, storage, leasing, control, management or disposition of the Indentured Property or any part thereof as Indenture Trustee may determine; and Indenture Trustee shall be entitled to collect and receive directly all tolls, rents (including Rent), revenues, issues, income, products and profits of the Indentured Property and every part thereof except Excepted Payments, without prejudice, however, to the right of Indenture Trustee under any provision of this Indenture to collect and receive all cash held by, or required to be deposited with, Indenture Trustee hereunder.  Such tolls, rents (including Rent), revenues, issues, income, products and profits shall be applied to pay the expenses of the use, operation, storage, leasing, control, management or disposition of the Indentured Property and of conducting the business thereof, and of all maintenance, repairs, replacements, alterations, additions and improvements, and to make all payments which Indenture Trustee may be required or may elect to make, if any, for taxes, assessments, insurance or other proper charges upon the Indentured Property or any part thereof (including the employment of engineers and accountants to examine, inspect and make reports upon the properties and books and records of Owner Trustee), and all other payments which Indenture Trustee may be required or authorized to make under any provision of this Indenture, as well as just and reasonable compensation for the services of Indenture Trustee, and of all Persons properly engaged and employed by Indenture Trustee.

(c)  If any Event of Default which is the subject of this Section 4.05 results solely from a Lease Event of Default, Indenture Trustee will consult in good faith with Owner Trustee regarding maintenance of the Equipment.   Indenture Trustee shall give Owner Trustee prior notice of its commencement of any foreclosure.

SECTION 4.06. <u>Remedies Cumulative</u>.  Subject to Sections 2.13, 4.3, 4.4 and 6.10, each and every right, power and remedy given to Indenture Trustee specifically or otherwise in this Indenture shall be cumulative and shall be in addition to every other right, power and remedy herein specifically given or now or hereafter existing at law, in equity or by statute, and each and every right, power and remedy whether specifically herein given or otherwise existing may be exercised from time to time and as often and in such order as may be deemed expedient by Indenture Trustee, and the exercise or the beginning of the exercise of any power or remedy shall not be construed to be a waiver of the right to exercise at the same time or thereafter any other right, power or remedy.  No delay or omission by Indenture Trustee in the exercise of any right, remedy or power or in the pursuance of any remedy shall impair any such right, power or remedy or be construed to be a waiver of any default on the part of Owner Trustee or Lessee or to be an acquiescence therein.

SECTION 4.07. <u>Discontinuance of Proceedings</u>.  In case Indenture Trustee shall have instituted any proceeding to enforce any right, power or remedy under this Indenture by foreclosure, entry or otherwise, and such proceedings shall have been discontinued or abandoned for any reason or shall have been determined adversely to Indenture Trustee, then and in every such case Owner Trustee, Indenture Trustee and Lessee shall, subject to any determination in such proceedings, be restored to their former positions and rights hereunder with respect to the Indentured Property, and all rights, remedies and powers of Indenture Trustee shall continue as if no such proceedings had been instituted.  Without limiting the generality of the foregoing, if all proceedings shall have been permanently discontinued or abandoned and no Event of Default

shall then be continuing, any acceleration of the Secured Notes pursuant to Section 4.04(b) or 4.04(c) hereof shall be deemed to be rescinded or annulled.

SECTION 4.08. Waiver of Past Defaults.   Upon written instructions from a Majority in Interest of Note Holders, Indenture Trustee shall waive any past default hereunder and its consequences and upon any such waiver such default shall cease to exist and any Event of Default (as well as, subject to Section 6.10 hereof, any Lease Event of Default giving rise to such Event of Default) arising therefrom shall be deemed to have been cured for every purpose of this Indenture, but no such waiver shall extend to any subsequent or other default or impair any right consequent thereon; provided, however, that in the absence of written instructions from the holders of all Secured Notes then outstanding, Indenture Trustee shall not, except as otherwise provided in the last sentence of Section 5.01(a) hereof, waive any default (i) in the payment of the principal of, Make Whole Premium Amount, if any, or interest on, or other amounts due under, any Secured Note then outstanding, or (ii) in respect of a covenant or provision hereof which, under Article IX hereof, cannot be modified or amended without the consent of each holder of a Secured Note then outstanding.

SECTION 4.09. Suspension of Remedial Action.   In the event (i) the original Owner Participant shall have irrevocably elected to purchase the Secured Notes pursuant to Section 2.13(a) and shall have committed to pay the purchase price therefore or (ii) the original Owner Participant shall have given Indenture Trustee a notice of its intent to effect a cure of a Lease Event of Default pursuant to Section 4.03, Indenture Trustee shall suspend and refrain from the exercise of any remedial action hereunder until the lapse of (x) the period ending on the date specified for purchase of the Secured Notes, in the case of Section 2.13(a) or (y) the specified cure period, in the case of Section 4.03.

## ARTICLE V

## DUTIES OF INDENTURE TRUSTEE

SECTION 5.01. Notice of Event of Default.   (a)  In the event Indenture Trustee shall have knowledge of an Event of Default, or shall have knowledge of a Default arising from a failure to pay Rent, Indenture Trustee shall give prompt written notice thereof to Owner Trustee, Owner Participant, Equity Guarantor, each Note Holder and Lessee.  Subject to the terms of Sections 2.13, 4.03, 4.04, 4.08, 5.03, 6.10 and 10.05 hereof, Indenture Trustee shall take such action, or refrain from taking such action, with respect to such Event of Default or Default (including with respect to the exercise of any rights or remedies hereunder) as Indenture Trustee shall be instructed in writing by the Majority in Interest of Note Holders.  Subject to the provisions of Section 5.03, if Indenture Trustee shall not have received instructions as above provided within 20 calendar days after mailing notice of such Default or Event of Default to Note Holders, Indenture Trustee may, subject to instructions thereafter received pursuant to the preceding provisions of this Section 5.01, take such action, or refrain from taking such action, but shall be under no duty to take or refrain from taking any action, with respect to such Default or Event of Default as it shall determine advisable in the best interests of Note Holders and shall use the same degree of care and skill in connection therewith as a prudent person would use under the circumstances in the conduct of his or her affairs; provided that Indenture Trustee may not sell the Equipment without the consent of the Majority in Interest of Note Holders.  In the

event Indenture Trustee shall at any time declare the Lease to be in default pursuant to Section 13.2 thereof or shall elect to foreclose or otherwise enforce this Indenture, Indenture Trustee in its discretion may, or upon receipt of written demand therefor from a Majority in Interest of Note Holders shall, declare the unpaid principal amount of all Secured Notes then outstanding with the accrued interest thereon, and other amounts due thereunder to be immediately due and payable, upon which declaration such principal amount and such accrued interest, and other amounts due thereunder shall immediately become due and payable without further act or notice of any kind.  In the event Indenture Trustee shall at any time declare the Lease to be in default pursuant to Section 13.2 thereof or shall elect to foreclose or otherwise enforce this Indenture, Indenture Trustee shall notify Owner Participant, Note Holders, Owner Trustee, Equity Guarantor and Lessee.  For all purposes of this Indenture, in the absence of actual knowledge on the part of an officer in the Corporate Trust Office, in the case of Indenture Trustee, or its Corporate Trust Administration, in the case of Owner Trustee, Indenture Trustee or Owner Trustee, as the case may be, shall not be deemed to have knowledge of an Event of Default (except, in the case of Indenture Trustee, the failure of Lessee to pay any installment of Base Rent as the same shall become due, if any portion of such installment was then required to be paid to Indenture Trustee, which failure shall constitute knowledge of a Default for purposes of the first sentence of this Section 5.01) unless notified in writing by Lessee, Owner Trustee or one or more holders of Secured Notes.  This Section 5.01, however, is subject to the condition that, if at any time after the principal of the Secured Notes shall have become so due and payable, and before any judgment or decree for the payment of the money so due, or any thereof, shall be entered, all overdue payments of interest upon the Secured Notes and all other amounts payable under the Secured Notes (except the principal of the Secured Notes which by such declaration shall have become payable) shall have been duly paid, and every other Default and Event of Default with respect to any covenant or provision of this Indenture shall have been cured, then and in every such case a Majority in Interest of Note Holders may (but shall not be obligated to), by written instrument filed with Indenture Trustee, rescind and annul Indenture Trustee's declaration and its consequences; but no such rescission or annulment shall extend to or affect any subsequent default or Event of Default or impair any right consequent thereon.

(b) <u>Other Notices</u>.  Indenture Trustee will furnish to each Note Holder at the time outstanding promptly upon receipt thereof, duplicates or copies of all reports, notices, requests, demands, certificates, financial statements and other instruments furnished to Indenture Trustee under any Operative Document or received from Owner Trustee pursuant to Section 4.01(b)(iv) hereof to the extent the same shall not have been otherwise directly distributed to such Note Holders pursuant to the express provision of any other Operative Document.

SECTION 5.02.  <u>Action Upon Instructions</u>.  (a)  Subject to the terms of Sections 2.13, 4.03, 4.04, 4.08, 5.01, 5.03, 6.10 and 10.05 hereof and Article IX hereof, upon the written instructions at any time and from time to time of a Majority in Interest of Note Holders, Indenture Trustee shall take such of the following actions as may be specified in such instructions:  (i) exercise such election or option, or make such decision or determination, or give such notice, consent, waiver or approval or exercise such right, remedy or power or take such other action hereunder or under any other Indenture Document or in respect of any part or all of the Trust Indenture Estate as shall be specified in such instructions; (ii) take such action with respect to, or to preserve or protect, the Trust Indenture Estate (including the discharge of Liens) as shall be specified in such instructions and as are consistent with this Indenture; and (iii) take

such other action in respect of the subject matter of this Indenture as is consistent with the terms hereof and the other Indenture Documents. Indenture Trustee will execute and file or cause to be filed such continuation statements with respect to financing statements relating to the security interest created hereunder in the Trust Indenture Estate (A) as may be delivered to Indenture Trustee by Lessee pursuant to Section 18 of the Lease and (B) as may be specified from time to time in written instructions of a Majority in Interest of Note Holders (which instructions may, by their terms, be operative only at a future date and which shall be accompanied by the execution form of such continuation statement so to be filed).

(b)   If any Lease Event of Default shall have occurred and be continuing and Owner Participant shall have failed to cure or to utilize its rights to cure such Lease Event of Default under or in accordance with Sections 2.13, 4.03 and 6.10 hereof, on request of a Majority in Interest of Note Holders and subject to Section 4.04(a) hereof, Indenture Trustee shall exercise such remedies under Section 13.2 of the Lease as shall be specified in such request. Indenture Trustee agrees to provide to Note Holders, Owner Trustee, Equity Guarantor and Owner Participant concurrently with such exercise by Indenture Trustee, notice of such exercise by Indenture Trustee; provided, that the failure to give any such notice to such Note Holders, Owner Trustee, Equity Guarantor or Owner Participant does not affect the validity of such action.

SECTION 5.03.   Indemnification.   Indenture Trustee shall not be required to take any action or refrain from taking any action under Section 5.01 (other than the first sentence thereof) or 5.02 or Article IV hereof unless Indenture Trustee shall have been indemnified against any liability, cost or expense (including counsel fees and expenses) which may be incurred in connection therewith by Note Holders or Lessee. Indenture Trustee shall not be under any obligation to take any action under this Indenture and nothing in this Indenture contained shall require Indenture Trustee to expend or risk its own funds or otherwise incur any financial liability in the performance of any of its duties hereunder or in the exercise of any of its rights or powers if it shall have reasonable grounds for believing that repayment of such funds or adequate indemnity against such risk or liability is not reasonably assured to it. Indenture Trustee shall not be required to take any action under Section 5.01 (other than the first sentence thereof) or 5.02 or Article IV hereof, nor shall any other provision of this Indenture be deemed to impose a duty on Indenture Trustee to take any action, if Indenture Trustee shall have been advised by counsel that such action is contrary to the terms hereof or is otherwise contrary to law.

SECTION 5.04.   No Duties Except as Specified in Indenture or Instructions. Indenture Trustee shall not have any duty or obligation to use, operate, store, lease, control, manage, sell, dispose of or otherwise deal with the Equipment or any other part of the Trust Indenture Estate, or to otherwise take or refrain from taking any action under, or in connection with, this Indenture or any part of the Trust Indenture Estate, except as expressly provided by the terms of this Indenture or as expressly provided in written instructions from Note Holders as provided in this Indenture; and no implied duties or obligations shall be read into this Indenture against Indenture Trustee. Indenture Trustee agrees that it will, in its individual capacity and at its own cost and expense (but without any right of indemnity in respect of any such cost or expense under Article VII hereof) promptly take such action as may be necessary to duly discharge all Liens on any part of the Trust Indenture Estate which result from claims against it in its individual capacity not related to the Equipment or the administration of the Trust

Indenture Estate or any other transaction pursuant to this Indenture or any document included in the Trust Indenture Estate.

SECTION 5.05. No Action Except Under Lease, Indenture or Instructions. Owner Trustee and Indenture Trustee agree that they will not use, operate, store, lease, control, manage, sell, dispose of or otherwise deal with the Equipment or any other part of the Trust Indenture Estate except (i) as required or permitted by the terms of the Lease or the Participation Agreement or (ii) in accordance with the powers granted to, or the authority conferred upon, Owner Trustee and Indenture Trustee pursuant to this Indenture, in the Trust Agreement and in accordance with the express terms hereof.

SECTION 5.06. Replacement Unit(s). In the event of a Replacement Unit being substituted as specified in Section 7.2 of the Lease, Owner Trustee and Indenture Trustee agree for the benefit of Note Holders and Lessee, subject to fulfillment of the conditions precedent and compliance by Lessee with its obligations set forth in Section 7.2 of the Lease, as the case may be, to execute and deliver an Indenture Supplement and Lease Supplement as contemplated by such Section(s) of the Lease, promptly upon receipt by Indenture Trustee of a written request specifically describing the Unit(s) to be so released, and promptly to execute and deliver to Lessee an appropriate instrument, in due form for recording, releasing the Unit(s) being replaced from the Lien of this Indenture. Upon a Casualty Occurrence with respect to one or more Units, upon tender by the insurers of the Casualty Value payable with respect thereto pursuant to Section 7 of the Lease, Indenture Trustee agrees for the benefit of Owner Trustee and Lessee that it shall promptly execute and deliver as directed by Owner Trustee an appropriate instrument, in due form for recording, releasing the Unit(s) in respect of which such payment was made from the Lien of this Indenture.

SECTION 5.07. Effect of Replacement. In the event of the substitution of a Replacement Unit as contemplated by Section 7 of the Lease and, in each case, Section 5.06 hereof, all provisions of this Indenture relating to the Unit(s) being replaced shall be applicable to such Replacement Unit(s) with the same force and effect as if such Replacement Unit(s) were the same unit as the Unit being replaced but for the Casualty Occurrence with respect to the Unit(s) being replaced.

SECTION 5.08. Notices; etc. Indenture Trustee shall deliver to each Note Holder, promptly upon receipt thereof, duplicates or copies of all notices, requests, financial statements, opinions and other instruments received by it in connection with the Indentured Property or under or pursuant to any Operative Document, to the extent that the same shall not have been required to be furnished pursuant thereto or hereto to such holders.

## ARTICLE VI

## OWNER TRUSTEE AND INDENTURE TRUSTEE

SECTION 6.01. Acceptance of Trusts and Duties. Indenture Trustee accepts the duties hereby created and applicable to it and agrees to perform the same but only upon the terms of this Indenture and agrees to receive and disburse all moneys constituting part of the Trust Indenture Estate in accordance with the terms hereof. Indenture Trustee shall not be answerable

or accountable under any circumstances, except for its own willful misconduct or gross negligence (or simple negligence in connection with the handling of funds), except as provided in the third sentence of Section 2.06 hereof or in the last sentence of Section 5.04 hereof, or except for liabilities that may result from the inaccuracy of any representation or warranty of Indenture Trustee in Section 4.2(iv) of the Participation Agreement or any other Operative Document. Owner Trustee shall not be deemed a trustee for the holders of the Secured Notes for any purpose.

SECTION 6.02.  Absence of Duties.  In the case of Indenture Trustee, except in accordance with written instructions furnished pursuant to Section 5.01, 5.02 or 9.01 hereof, and except as provided in, and without limiting the generality of, Sections 5.03 and 5.04 hereof and, in the case of Owner Trustee, except as provided in Section 4.01(b) or 9.01 hereof, Owner Trustee and Indenture Trustee shall have no duty (i) to see to any registration of the Equipment or any recording or filing of the Lease or of this Indenture or any other document, or to see to the maintenance of any such registration, recording or filing, (ii) to see to any insurance on the Equipment, whether or not Lessee shall be in default with respect thereto, (iii) to see to the payment or discharge of any Lien of any kind against any part of the Trust Estate or the Trust Indenture Estate, (iv) to confirm, verify or inquire into the failure to receive any financial statements of Lessee or (v) to inspect the Equipment at any time or ascertain or inquire as to the performance or observance of any of Lessee's covenants under the Lease with respect to the Equipment.

SECTION 6.03.  No Representations or Warranties as to Equipment or Documents.  NEITHER INDENTURE TRUSTEE NOR OWNER TRUSTEE MAKES OR SHALL BE DEEMED TO HAVE MADE, AND EACH HEREBY EXPRESSLY DISCLAIMS, ANY REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, AS TO THE TITLE, VALUE, COMPLIANCE WITH SPECIFICATIONS, CONDITION, DESIGN, QUALITY, DURABILITY, OPERATION, MERCHANTABILITY OR FITNESS FOR USE FOR A PARTICULAR PURPOSE OF THE EQUIPMENT, OR ANY PART THEREOF, AS TO ABSENCE OF LATENT OR OTHER DEFECTS, WHETHER OR NOT DISCOVERABLE, AS TO THE ABSENCE OF ANY INFRINGEMENT OF ANY PATENT, TRADEMARK OR COPYRIGHT, AS TO THE ABSENCE OF OBLIGATIONS BASED ON STRICT LIABILITY IN TORT, OR ANY OTHER REPRESENTATION OR WARRANTY WITH RESPECT TO THE EQUIPMENT, OR ANY PART THEREOF WHATSOEVER.  Owner Participant makes no representation or warranty hereunder whatsoever.

SECTION 6.04.  No Segregation of Moneys; No Interest.  Any moneys paid to or retained by Indenture Trustee pursuant to any provision hereof and not then required to be distributed to any Note Holder, Lessee, Owner Trustee or Owner Participant as provided in Article III hereof need not be segregated in any manner except to the extent required by law, and may be deposited under such general conditions as may be prescribed by law, and Indenture Trustee shall not (except as otherwise provided in Section 3.07 hereof) be liable for any interest thereon, provided that any payments received or applied hereunder by Indenture Trustee shall be accounted for by Indenture Trustee so that any portion thereof paid or applied pursuant hereto shall be identifiable as to the source thereof.

SECTION 6.05. Reliance; Agents; Advice of Counsel. Neither Owner Trustee nor Indenture Trustee shall incur any liability to anyone in acting upon any signature, instrument, notice, resolution, request, consent, order, certificate, report, opinion, bond or other document or paper believed by it to be genuine and believed by it to be signed by the proper party or parties. Owner Trustee and Indenture Trustee may accept a copy of a resolution of the Board of Directors of any party to the Participation Agreement, certified by the Secretary or an Assistant Secretary thereof as duly adopted and in full force and effect, as conclusive evidence that such resolution has been duly adopted and that the same is in full force and effect. As to the aggregate unpaid principal amount of Secured Notes outstanding as of any date, Owner Trustee may for all purposes hereof rely on a certificate signed by any Vice President or other authorized corporate trust officer of Indenture Trustee. As to any fact or matter relating to Lessee the manner of ascertainment of which is not specifically described herein, Owner Trustee and Indenture Trustee may for all purposes hereof rely on a certificate, signed by a duly authorized officer of Lessee, as to such fact or matter, and such certificate shall constitute full protection to Owner Trustee and Indenture Trustee for any action taken or omitted to be taken by them in good faith in reliance thereon. Indenture Trustee shall assume, and shall be fully protected in assuming, that Owner Trustee is authorized by the Trust Agreement to enter into this Indenture and to take all action to be taken by it pursuant to the provisions hereof, and shall not inquire into the authorization of Owner Trustee with respect thereto. In the administration of the trusts hereunder, Indenture Trustee may execute any of the trusts or powers hereof and perform its powers and duties hereunder directly or through agents or attorneys and may, at the expense of the Trust Indenture Estate, consult with counsel, accountants and other skilled persons to be selected and retained by it, and Indenture Trustee shall not be liable for anything done, suffered or omitted in good faith by them in accordance with the written advice or written opinion of any such counsel, accountants or other skilled persons.

SECTION 6.06. Capacity in Which Acting. Indenture Trustee acts hereunder solely as trustee as herein provided, and Owner Trustee acts hereunder solely as trustee as in the Trust Agreement provided, and, in each case, not in its individual capacity, except as otherwise expressly provided herein.

SECTION 6.07. Compensation. Indenture Trustee shall be entitled to reasonable compensation, including expenses and disbursements, for all services rendered hereunder, which compensation shall be payable pursuant to Section 7.2 of the Participation Agreement, and shall have a first priority claim on the Trust Indenture Estate for the payment of such compensation, to the extent that such compensation shall not be paid by Lessee, and shall have the right to use or apply any moneys held by it hereunder in the Trust Indenture Estate toward such payments. Indenture Trustee agrees that it shall have no right against any Note Holder or Owner Participant for any fee as compensation for its services as trustee under this Indenture.

SECTION 6.08. May Become Note Holder. Each of the institutions acting as Owner Trustee and Indenture Trustee hereunder may become a Note Holder and have all rights and benefits of a Note Holder to the same extent as if it were not the institution acting as Owner Trustee or Indenture Trustee, as the case may be.

SECTION 6.09. Further Assurances; Financing Statements. At any time and from time to time, upon the request of Indenture Trustee or Lessee or Owner Participant, Owner

Trustee shall, at the expense of Lessee, promptly and duly execute and deliver any and all such further instruments and documents including, without limitation, chattel paper originals of subsequent leases, as may be specified in such request and as are necessary or desirable to perfect, preserve or protect the mortgage, security interests and assignments created or intended to be created hereby, or to obtain for Indenture Trustee the full benefit of the specific rights and powers herein granted, including, without limitation, the execution and delivery of Uniform Commercial Code financing statements and continuation statements with respect thereto, or similar instruments relating to the perfection of the mortgage, security interests or assignments created or intended to be created hereby.

SECTION 6.10. <u>Certain Rights of Owner Trustee, Owner Participant, and Indenture Trustee</u>.  Notwithstanding any other provisions of this Indenture, including the Granting Clause, the following rights shall be reserved to Owner Trustee (as separate and independent rights), to the extent described herein:

(a) at all times Owner Trustee shall have the right, in addition to, and independent of, Indenture Trustee, (i) to receive from Lessee (and to make requests to Lessee for) all notices, certificates, reports, filings, opinions of counsel and other documents and all information which any thereof is permitted or required to give or furnish to Owner Trustee pursuant to any Operative Document; (ii) to exercise inspection rights pursuant to Section 9 of the Lease, (iii) to retain all rights with respect to insurance maintained for its own account as permitted by Section 8.1(vi) of the Lease, (iv) to exercise, to the extent necessary to enable it to exercise its rights under Section 4.03 hereof, the rights of Lessor under Section 19 of the Lease, (v) to exercise all rights of Owner Trustee under Section 7 of the Lease, (vi) to seek specific performance of the covenants of Lessee set forth in Sections 4, 5, 6, 7, 8, 9, 12, 15, 17, 18 and 27 under the Lease, (vii) to give notice of any nonpayment of Rent, any default under the Lease or any other Operative Document, any failure to perform any covenant or to observe any term of any Operative Document or any misrepresentation pursuant to any Operative Document, and (viii) to exercise the rights of Owner Trustee under the French Documents;

(b) until and for so long as Indenture Trustee shall not have received a request in accordance with the first sentence of Section 5.02(b) hereof to commence the exercise of remedies and provided a copy of such request to Owner Participant, or the unpaid principal amount of all Secured Notes shall not have been declared or deemed to have been declared to be immediately due and payable, Owner Trustee shall have the right (1) to the exclusion of Indenture Trustee (i) to exercise all rights of Lessor under Sections 14 and 17 of the Lease, (ii) to exercise all rights of Lessor under Section 16 of the Lease with respect to the retention by Lessor of the Equipment or the exercise by Lessee of Lessee's renewal and purchase options and in respect of the solicitations of bids under Section 26 of the Lease, and (iii) subject to the limitations contained in clause (v) of Section 16 of the Participation Agreement, to exercise the rights, elections and options of Lessor to make any decision or determination and to give any notice, consent, waiver or approval with respect to any adjustments of Rent, Adjusted EBO Price, EBO Date, Termination Value, Casualty Value and Equity SLV Amount Percentages under Section 4.4 of the Lease or Section 16 of the Participation Agreement and (2) together with Indenture Trustee, (i) to exercise all rights of Lessor with respect to Lessee's use and operation, modification or maintenance of the Equipment, (ii) to approve as satisfactory any other accountants, engineers or counsel to render services for or issue opinions to Owner Trustee

pursuant to express provisions of the Operative Documents, (iii) to consent to and approve any assignment pursuant to Section 15.1 of the Lease, and (iv) to grant any consent requested under the Lease or the Participation Agreement;

      (c) Owner Trustee shall have the non-exclusive right, as Lessor (i) to maintain separate insurance with respect to the Equipment pursuant to Section 8.1(vi) of the Lease, and (ii) to request further assurances pursuant to Section 16 of the Lease; and

      (d) at all times, each of Owner Trustee, Trust Company and Owner Participant shall have the right, to the exclusion of Indenture Trustee, (i) to exercise any election or option or make any decision or determination or to give or receive any notice, consent, waiver or approval in respect of any Excepted Payment or (ii) to demand, collect, sue for or otherwise receive and enforce the payment of Excepted Payments due and payable to it.

Indenture Trustee agrees that, notwithstanding the occurrence and continuance of an Event of Default, it shall not enter into any amendment or modification to the Operative Documents included in the Trust Indenture Estate or grant any waiver under such Operative Documents if the same would materially adversely affect Owner Participant or Owner Trustee.

Notwithstanding the foregoing, but subject always to the provisions of Section 10.05 hereof, Indenture Trustee shall at all times have the right, to the exclusion of Owner Trustee and Owner Participant, to (A) declare the Lease to be in default under Section 13.2 thereof except to the extent necessary to enforce the exercise of rights with respect to Excepted Payments and (B) subject only to the provisions of Sections 4.03 and 4.04(a) hereof, exercise the remedies set forth in such Section 13.2 (other than in connection with Excepted Payments) and in Article IV hereof.

Notwithstanding any provision in this Indenture to the contrary, if Lessee acquires all of the Secured Notes in accordance with Section 19 of the Participation Agreement then, for so long as Lessee continues to hold any of the Secured Notes, (i) Owner Trustee shall have the exclusive right to exercise Lessor's rights under the Lease, including the right to declare the Lease in default pursuant to Section 13.2 thereof and exercise any other remedy under the Lease and (ii) the provisions of Section 3.03 hereof shall not be applicable and Indenture Trustee shall not be entitled to exercise any remedies under Sections 4.04 or 4.05 hereof (any acceleration of the Secured Notes or any other remedies under such Sections exercised pursuant to such Sections prior to such acquisition of the Secured Notes by Lessee being deemed hereby to be automatically rescinded).

## ARTICLE VII

## INDEMNIFICATION OF INDENTURE TRUSTEE BY OWNER TRUSTEE

      SECTION 7.01. <u>Scope of Indemnification</u>.   Owner Trustee hereby agrees, whether or not any of the transactions contemplated hereby shall be consummated, to assume liability for, and does hereby indemnify, protect, save and keep harmless Indenture Trustee, in its individual capacity, and its successors, assigns, agents and servants, from and against any and all liabilities, obligations, losses, damages, penalties, taxes (excluding any taxes payable by Indenture Trustee on or measured by and compensation received by Indenture Trustee for its

services under this Indenture), claims, actions, suits, costs, expenses or disbursements (including reasonable legal fees and expenses) of any kind and nature whatsoever which may be imposed on, incurred by or asserted against Indenture Trustee in its individual capacity (whether or not also agreed to be indemnified against by any other person under any other document) in any way relating to or arising out of this Indenture, the Trust Agreement, the Secured Notes, the Indenture Documents or the enforcement of any of the terms of any thereof, or in any way relating to or arising out of the manufacture, purchase, acceptance, non-acceptance, rejection, ownership, delivery, lease, possession, use, operation, condition, sale, return or other disposition of the Equipment (including, without limitation, latent and other defects, whether or not discoverable, and any claim for patent, trademark or copyright infringement), or in any way relating to or arising out of the administration of the Trust Indenture Estate or the action or inaction of Indenture Trustee hereunder, except only (i) in the case of willful misconduct or gross negligence (or simple negligence in connection with the handling of funds) of Indenture Trustee in the performance of its duties hereunder or (ii) as may result from the inaccuracy of any representation or warranty of Indenture Trustee in Section 4.2(iv) of the Participation Agreement or (iii) as otherwise provided in Section 2.06 and the last sentence of Section 5.04 hereof or (iv) as otherwise excluded by the terms of Section 6.1 or Section 6.2 of the Participation Agreement from Lessee's general tax indemnity and general indemnity under said Sections; provided that the indemnification provided under this Section 7.01 shall not extend to any matter (other than any matter relating to or resulting from an act or omission of Owner Participant) not indemnified by Lessee under Section 6.1 or 6.2 of the Participation Agreement and so long as the Lease is in effect, Indenture Trustee, unless otherwise prohibited by law, shall not make any claim under this Section 7.01 for any claim or expense without first making demand on Lessee for payment of such claim or expense pursuant to Section 6.1 or 6.2 of the Participation Agreement, as the case may be. Indenture Trustee in its individual capacity shall be entitled to indemnification from the Trust Indenture Estate for any liability, obligation, loss, damage, penalty, claim, action, suit, cost, expense or disbursement indemnified against pursuant to this Section 7.01 to the extent not reimbursed by Lessee or others, but without releasing any of them from their respective agreements of reimbursement; and to secure the same Indenture Trustee shall have a prior Lien on the Trust Indenture Estate. The indemnities contained in this Section 7.01 shall survive the termination of this Indenture.

## ARTICLE VIII

## SUCCESSOR TRUSTEES AND SEPARATE TRUSTEES

SECTION 8.01. Notice of Successor Owner Trustee. In the case of any appointment of a successor to Owner Trustee pursuant to the Trust Agreement or any merger, conversion, consolidation or sale of substantially all of the corporate trust business of Owner Trustee pursuant to the Trust Agreement, the successor Owner Trustee shall give prompt written notice thereof to Indenture Trustee and to each Note Holder.

SECTION 8.02. Resignation of Indenture Trustee; Appointment of Successor. (a) Indenture Trustee or any successor thereto may resign at any time without cause by giving at least 30 calendar days' prior written notice to Owner Trustee, each Note Holder and Lessee, such resignation to be effective upon the acceptance of the trusteeship by a successor Indenture Trustee. In addition, a Majority in Interest of Note Holders may at any time remove Indenture

Trustee without cause by an instrument in writing delivered to Owner Trustee, Lessee and Indenture Trustee, and Owner Trustee shall promptly notify Owner Participant thereof in writing, such removal to be effective upon the acceptance of the trusteeship by a successor Indenture Trustee. In the case of the resignation or removal of Indenture Trustee, a Majority in Interest of Note Holders may appoint a successor Indenture Trustee by an instrument signed by such Holders, subject to the reasonable approval of Lessee so long as no Default or Event of Default has occurred and is continuing. If a successor Indenture Trustee shall not have been appointed within 30 calendar days after such notice of resignation or removal, Indenture Trustee, Owner Trustee or any Note Holder may apply to any court of competent jurisdiction to appoint a successor Indenture Trustee to act until such time, if any, as a successor shall have been appointed as above provided. The successor Indenture Trustee so appointed by such court shall immediately and without further act be superseded by any successor Indenture Trustee appointed as above provided within one year from the date of the appointment by such court.

(b) Any successor Indenture Trustee, however appointed, shall execute and deliver to Owner Trustee and to the predecessor Indenture Trustee an instrument accepting such appointment, and thereupon such successor Indenture Trustee, without further act, shall become vested with all the estates, properties, rights, powers and duties of the predecessor Indenture Trustee hereunder in the trusts hereunder applicable to it with like effect as if originally named Indenture Trustee herein; but nevertheless upon the written request of such successor Indenture Trustee, such predecessor Indenture Trustee shall execute and deliver an instrument transferring to such successor Indenture Trustee, upon the trusts herein expressed applicable to it, all the estates, properties, rights and powers of such predecessor Indenture Trustee, and such predecessor Indenture Trustee shall duly assign, transfer, deliver and pay over to such successor Indenture Trustee all moneys or other property then held by such predecessor Indenture Trustee hereunder.

(c) Any successor Indenture Trustee, however appointed, shall be a bank or trust company having a combined capital and surplus of at least $100,000,000, if there be such an institution willing, able and legally qualified to perform the duties of Indenture Trustee hereunder upon reasonable or customary terms.

(d) Any corporation into which Indenture Trustee may be merged or converted or with which it may be consolidated, or any corporation resulting from any merger, conversion or consolidation to which Indenture Trustee shall be a party, or any corporation to which substantially all the corporate trust business of Indenture Trustee may be transferred, shall, subject to the terms of paragraph (c) of this Section, be Indenture Trustee under this Indenture without further act.

SECTION 8.03. Appointment of Additional and Separate Trustees. (a) Whenever (i) Indenture Trustee shall deem it necessary or prudent in order to conform to any law of any jurisdiction in which all or any part of the Indentured Property shall be situated or to make any claim or bring any suit with respect to or in connection with the Indentured Property, this Indenture, any other Operative Document, the Secured Notes or any of the transactions contemplated by the Participation Agreement or (ii) Indenture Trustee shall be advised by counsel satisfactory to it that it is so necessary or prudent in the interests of Note Holders, Indenture Trustee and Owner Trustee shall execute and deliver an indenture supplemental hereto

and such other instruments as may from time to time be necessary or advisable either (1) to constitute one or more banks or trust companies or one or more natural persons approved by Indenture Trustee, either to act jointly with Indenture Trustee as additional trustee or trustees of all or any part of the Indentured Property, or to act as separate trustee or trustees of all or any part of the Indentured Property, in each case with such rights, powers, duties and obligations as may be provided in such supplemental indenture or other instruments as Indenture Trustee or a Majority in Interest of Note Holders may deem necessary or advisable, or (2) to clarify, add to or subtract from the rights, powers, duties and obligations theretofore granted any such additional or separate trustee, subject in each case to the remaining provisions of this Section 8.03. If Owner Trustee shall not have taken any action requested of it under this Section 8.03(a) that is permitted or required by its terms within 15 days after the receipt of a written request from Indenture Trustee so to do, or if an Event of Default shall have occurred and be continuing, Indenture Trustee may act under the foregoing provisions of this Section 8.03(a) without the concurrence of Owner Trustee; and Owner Trustee hereby appoints Indenture Trustee its agent and attorney-in-fact to act for it under the foregoing provisions of this Section 8.03(a) in either of such contingencies. Indenture Trustee may, in such capacity, execute, deliver and perform any such supplemental indenture, or any such instrument, as may be required for the appointment of any such additional or separate trustee or for the clarification of, addition to or subtraction from the rights, powers, duties or obligations theretofore granted to any such additional or separate trustee. In case any additional or separate trustee appointed under this Section 8.03(a) shall die, become incapable of acting, resign or be removed, all the assets, property, rights, powers, trusts, duties and obligations of such additional or separate trustee shall revert to Indenture Trustee until a successor additional or separate trustee is appointed as provided in this Section 8.03(a).

(b) No additional or separate trustee shall be entitled to exercise any of the rights, powers, duties and obligations conferred upon Indenture Trustee in respect of the custody, investment and payment of monies and all monies received by any such additional or separate trustee from or constituting part of the Indentured Property or otherwise payable under any Operative Document to Indenture Trustee shall be promptly paid over by it to Indenture Trustee. All other rights, powers, duties and obligations conferred or imposed upon any additional or separate trustee shall be exercised or performed by Indenture Trustee and such additional or separate trustee jointly except to the extent that Applicable Law of any jurisdiction in which any particular act is to be performed renders Indenture Trustee incompetent or unqualified to perform such act, in which event such rights, powers, duties and obligations (including the holding of title to all or part of the Indentured Property in any such jurisdiction) shall be exercised and performed by such additional or separate trustee. No additional or separate trustee shall take any discretionary action except on the instructions of Indenture Trustee or a Majority in Interest of Note Holders. No trustee hereunder shall be personally liable by reason of any act or omission of any other trustee hereunder, except that Indenture Trustee shall be liable for the consequences of its lack of reasonable care in selecting any additional or separate trustee which is a natural person. Each additional or separate trustee appointed pursuant to this Section 8.03 shall be subject to, and shall have the benefit of Articles IV through VIII and Article X hereof insofar as they apply to Indenture Trustee. The powers of any additional or separate trustee appointed pursuant to this Section 8.03 shall not in any case exceed those of Indenture Trustee hereunder.

(c) If at any time Indenture Trustee shall deem it no longer necessary or prudent in order to conform to any such law or take any such action or shall be advised by such counsel

that it is no longer so necessary or prudent in the interest of Note Holders, or in the event that Indenture Trustee shall have been requested to do so in writing by a Majority in Interest of Note Holders, Indenture Trustee and Owner Trustee shall execute and deliver an indenture supplemental hereto and all other instruments and agreements necessary or proper to remove any additional or separate trustee. Indenture Trustee may act on behalf of Owner Trustee under this Section 8.03(c) when and to the extent it could so act under Section 8.03(a).

## ARTICLE IX

## SUPPLEMENTS AND AMENDMENTS TO THIS INDENTURE AND OTHER DOCUMENTS

SECTION 9.01. Instructions of Majority; Limitations. Subject to the provisions of the Participation Agreement, at any time and from time to time, (i) Indenture Trustee (but only on the written request of a Majority in Interest of Note Holders) shall execute a supplement hereto for the purpose of adding provisions to, or changing or eliminating provisions of, this Indenture as specified in such request and (ii) Indenture Trustee (but only on the written request of a Majority in Interest of Note Holders) shall, subject to the provisions of Section 6.10 hereof, enter into such written amendment or supplement to any Indenture Document as may be specified in such request; provided, that, without the consent of each Note Holder, no such amendment of or supplement to any Indenture Document, and no waiver or modification of the terms of any thereof, shall (1) modify any of the provisions of this Section 9.01, the provisions of Section 4.1(ii) of the Lease, the provisions of Section 2.6 of the Participation Agreement, the provisions of the second sentence of Section 16(v) of the Participation Agreement, or the definitions of the terms "*Default*", "*Event of Default*", "*Excepted Payments*", "*Indenture Documents*", "*Lease Default*", "*Lease Event of Default*", "*Lessor's Cost*", "*Majority in Interest of Note Holders*", "*Operative Documents*", "*Permitted Loan Participant*", "*Qualifying Jurisdiction*", "Adjusted *EBO Price*", "*EBO Date*", "*Equity SLV Amount Percentage*", "*Termination Value*" or "*Casualty Value*" contained herein or in any other Indenture Document (except to change default definitions by providing for additional events of default), (2) reduce the amount or extend the time of payment of any amount owing or payable under any Secured Note or reduce the interest payable on any Secured Note (except that only the consent of Note Holder shall be required for any decrease in any amounts of or the rate of interest payable on such Secured Note or any extension for the time of payment of any amount payable under such Secured Note), or alter or modify the provisions of Article III hereof with respect to the order of priorities in which distributions thereunder shall be made as between Note Holders and Owner Trustee or Owner Participant or with respect to the amount or time of payment of any such distribution, (3) reduce, modify or amend any indemnities in favor of Loan Participant or any Note Holder (except as consented to by each Person adversely affected thereby), (4) reduce the amount or extend the time of payment of Rent, Adjusted EBO Price, EBO Date, Equity SLV Amount Percentages, Termination Value or Casualty Value (or other amounts payable therewith) for the Equipment as set forth in the Lease (except that Rent may be adjusted as contemplated by Section 16 of the Participation Agreement), (5) modify, amend or supplement the Lease or consent to any assignment of the Lease, in either case releasing Lessee from its obligations in respect of the payment of Rent (except as above provided), Adjusted EBO Price, EBO Date, Equity SLV Amount Percentages, Termination Value or Casualty Value (or other amounts payable therewith) for the Equipment or altering the absolute and unconditional character of such

obligations as set forth in Section 5 of the Lease or change any of the circumstances under which Adjusted EBO Price, EBO Date, Equity SLV Amount Percentages, Termination Value or Casualty Value (or other amounts payable therewith) is payable or (6) reduce the term of the Lease. This Section 9.01 shall not apply to any indenture or indentures supplemental hereto permitted by, and complying with the terms of, Section 9.04 hereof. Notwithstanding the foregoing, without the consent of each Note Holder, no such supplement to this Indenture, or waiver or modification of the terms hereof or of any other agreement or document, shall permit the creation of any Lien on the Trust Indenture Estate or any part thereof, except as herein expressly permitted, or deprive any Note Holder of the benefit of the Lien of this Indenture on the Trust Indenture Estate, except as provided in Sections 5.01 and 5.02 hereof or in connection with the exercise of remedies under Article IV hereof. Anything to the contrary contained herein notwithstanding, without the consent of any of Note Holders or Indenture Trustee, (i) any indemnities solely in favor of Owner Participant may be modified, amended, or changed in such manner as shall be agreed to by Owner Participant and Lessee, (ii) Owner Trustee and Lessee may enter into amendments of or addenda to the Lease to modify Sections 16, 17 or 26 of the Lease or Section 16(v) (other than the second sentence thereof) of the Participation Agreement, so long as such amendments, modifications and changes do not and would not affect the time of, or reduce the amount of, Rent payments (except with respect to Excepted Payments) so long as the Secured Notes are outstanding or otherwise adversely affect the interests of Note Holders and (iii) Owner Trustee or Owner Participant, as the case may be, and Lessee may enter into any amendment or supplement to (x) the Lease pursuant to Section 16 of the Participation Agreement (including in respect of Section 2.18 hereof) or Section 4.3 of the Lease, or (y) the Tax Indemnity Agreement.

SECTION 9.02. _Trustees Protected_. If, in the opinion of the institution acting as Owner Trustee under the Trust Agreement or the institution acting as Indenture Trustee hereunder, any document required to be executed pursuant to the terms of Section 9.01 hereof materially adversely affects any right, duty, immunity or indemnity with respect to such institution under this Indenture such institution may in its discretion decline to execute such document.

SECTION 9.03. _Documents Mailed to Holders_. Promptly after the execution by Owner Trustee or Indenture Trustee of any document entered into pursuant to Section 9.01 hereof, Owner Trustee shall mail, by certified mail, postage prepaid, a conformed copy thereof to each Note Holder at its address shown on the Note Register maintained by Indenture Trustee, but the failure of Owner Trustee to mail such conformed copies shall not impair or affect the validity of such document.

SECTION 9.04. _No Request Necessary for Lease Supplements, Indenture Supplement, etc_. Notwithstanding anything contained in Section 9.01 hereof, no written request or consent of Indenture Trustee, any Note Holder or Owner Participant pursuant to Section 9.01 hereof shall be required to enable Owner Trustee to enter into any Lease Supplements with Lessee pursuant to the terms of the Lease to subject the Equipment or other property thereto or to execute and deliver an Indenture Supplement in connection therewith, in each case pursuant to the terms hereof.

## ARTICLE X

## MISCELLANEOUS

SECTION 10.01. <u>Termination of Indenture</u>.  Upon (or at any time after) payment in full of the principal of, interest on, Make Whole Premium Amount, if any, and all other amounts due under, all Secured Notes and <u>provided</u> that there shall then be no other amounts due to Note Holders and Indenture Trustee hereunder or under the other Operative Documents or otherwise secured hereby, this Indenture and the trusts and Liens created hereby shall terminate and Owner Trustee may direct Indenture Trustee to execute and deliver to or as directed in writing by Owner Trustee an appropriate instrument evidencing the release of the Equipment from the Lien of this Indenture and releasing the Indenture Documents from the assignment and pledge thereof hereunder, and Indenture Trustee shall execute and deliver such instrument as aforesaid and, at Owner Trustee's expense, will execute and deliver such other instruments or documents as may be reasonably requested by Owner Trustee to give effect to such release; <u>provided</u>, <u>however</u>, that this Indenture and the trusts and Liens created hereby shall earlier terminate and this Indenture shall be of no further force or effect upon any sale or other final disposition by Indenture Trustee of all property part of the Trust Indenture Estate and the final distribution by Indenture Trustee of all moneys or other property or proceeds constituting part of the Trust Indenture Estate in accordance with the terms hereof.  Further, upon the prepayment in full of the Secured Notes pursuant to Section 2.12 or 2.14 hereof, and payment of all other sums due and payable thereunder and under the other Operative Documents in connection therewith, this Indenture and the trusts and Liens created hereby shall terminate and Owner Trustee may direct Indenture Trustee to execute and deliver to or as directed in writing by Owner Trustee an appropriate instrument evidencing the release of the Equipment from the Lien of this Indenture and releasing the Indenture Documents pertaining solely thereto from the assignment and pledge hereunder, and Indenture Trustee shall execute and deliver such instruments as aforesaid.  Except as aforesaid otherwise provided, this Indenture and the trusts created hereby shall continue in full force and effect in accordance with the terms hereof.

SECTION 10.02. <u>No Legal Title to Trust Indenture Estate in Holders</u>.  No Note Holder shall have legal title to any part of the Trust Indenture Estate.  No transfer, by operation of law or otherwise, of any Secured Note or other right, title and interest of any Note Holder in and to the Trust Indenture Estate or hereunder shall operate to terminate this Indenture or entitle such Note Holder or any successor or transferee of such holder to an accounting or to the transfer to it of legal title to any part of the Trust Indenture Estate.

SECTION 10.03. <u>Sale of Equipment by Indenture Trustee is Binding</u>.  Any sale or other conveyance of the Equipment or any interest therein by Indenture Trustee made pursuant to the terms of this Indenture or of the Lease shall bind Note Holders and shall be effective to transfer or convey all right, title and interest of Indenture Trustee, Owner Trustee, Owner Participant and such holders in and to such Equipment.  No purchaser or other grantee shall be required to inquire as to the authorization, necessity, expediency or regularity of such sale or conveyance or as to the application of any sale or other proceeds with respect thereto by Indenture Trustee.

SECTION 10.04. <u>Indenture for Benefit of Owner Trustee, Indenture Trustee, Owner Participant and Note Holders</u>. Nothing in this Indenture, whether express or implied, shall be construed to give to any Person other than Owner Trustee, Indenture Trustee, Owner Participant, Note Holders and (with respect to Sections 2.02, 2.04, 2.12, 2.14, 3.02, 3.05, 3.07, 5.06, 5.07, 9.01, 9.04, 10.01, this 10.04 and 10.05 and any provisions hereof requiring payment to or by Lessee) Lessee, any legal or equitable right, remedy or claim under or in respect of this Indenture.

SECTION 10.05. <u>No Action Contrary to Lessee's Rights Under the Lease</u>. Notwithstanding any of the provisions of this Indenture to the contrary, including, without limitation, Article IV hereof, so long as no Lease Default shall have occurred and be continuing, Indenture Trustee agrees for the benefit of Lessee that it will not take any action contrary to Lessee's rights under or derived pursuant to the Lease, as the case may be, including, without limitation, Lessee's rights to possession and use of the Equipment provided for therein.

SECTION 10.06. <u>Notices</u>. Unless otherwise expressly specified or permitted by the terms hereof, all notices, requests, demands, authorizations, directions, consents, waivers or documents provided or permitted by this Indenture to be made, given, furnished or filed shall be in writing, mailed by certified mail, postage prepaid, and (i) if to Owner Trustee, addressed to it at its office at Wilmington Trust Company, Rodney Square North, 1100 North Market Street, Wilmington, Delaware 19890-0001, Attention: Corporate Trust Administration, (ii) if to Indenture Trustee, addressed to it at its office at 25 South Charles Street, Mail Code 101-591 Baltimore, Maryland, 21201, Attention: Robert Brown, Corporate Trust Administration, or (iii) if to any Participant, Lessee, Equity Guarantor or any Note Holder, addressed to such party at such address as such party shall have furnished by notice to Owner Trustee and Indenture Trustee, or, until an address is so furnished, addressed to the address of such party (if any) set forth on Schedule I to the Participation Agreement. Whenever any notice in writing is required to be given by Owner Trustee or Indenture Trustee or any Note Holder to any of the other of them, such notice shall be deemed and such requirement satisfied when such notice is received. Any party hereto may change the address to which notices to such party will be sent by giving notice of such change to the other parties to this Indenture. Notwithstanding anything in this Indenture to the contrary, no notice or request shall be required to be delivered to Owner Trustee, Trust Company, Owner Participant, any Guarantor or Lessee pursuant to any provision of this Indenture if the Person specified to deliver such notice or request is then stayed or otherwise prohibited by law from delivering such notice or request.

SECTION 10.07. <u>Severability</u>.   Any provision of this Indenture which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.

SECTION 10.08. <u>No Oral Modifications or Continuing Waivers</u>.  No terms or provisions of this Indenture or the Secured Notes may be changed, waived, discharged or terminated orally, but only by an instrument in writing signed by the party or other person against whom enforcement of the change, waiver, discharge or termination is sought; and any

waiver of the terms hereof or of any Secured Note shall be effective only in the specific instance and for the specific purpose given.

SECTION 10.09.  Successors and Assigns.   All covenants and agreements contained herein shall be binding upon, and inure to the benefit of, each of the parties hereto and the successors and permitted assigns of each, all as herein provided.  Any request, notice, direction, consent, waiver or other instrument or action by any Note Holder shall bind the successors and assigns of such Note Holder.  This Indenture and the Trust Indenture Estate shall not be affected by any amendment or supplement to the Trust Agreement or by any other action taken under or in respect of the Trust Agreement, except that each reference in this Indenture to the Trust Agreement shall mean the Trust Agreement as amended and supplemented from time to time to the extent permitted hereby and thereby.

SECTION 10.10.  Headings.  The headings of the various Articles and Sections herein and in the table of contents hereto are for the convenience of reference only and shall not define or limit any of the terms or provisions hereof.

SECTION 10.11.  Normal Commercial Relations.   Anything contained in this Indenture to the contrary notwithstanding, any Participant or any bank or other Affiliate of such Participant may conduct any banking or other financial transactions, and have banking or other commercial relationships, with Lessee fully to the same extent as if this Indenture were not in effect, including without limitation the making of loans or other extensions of credit to Lessee for any purpose whatsoever, whether related to any of the transactions contemplated hereby or otherwise.

SECTION 10.12.  Governing Law; Counterpart Form.   THIS INDENTURE SHALL IN ALL RESPECTS BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAW OF THE STATE OF NEW YORK, INCLUDING ALL MATTERS OF CONSTRUCTION, VALIDITY AND PERFORMANCE WITHOUT REFERENCE TO ANY CONFLICT OF LAW RULES THAT MIGHT LEAD TO APPLICATION OF THE LAWS OF ANY OTHER JURISDICTION.  This Indenture may be executed by the parties hereto in separate counterparts, each of which when so executed and delivered shall be an original, but all such counterparts shall together constitute but one and the same instrument.

SECTION 10.13.  Liability of Trust Company and Owner Trustee.  It is expressly agreed, anything herein to the contrary notwithstanding, that each of the representations, warranties, covenants, undertakings and agreements made herein or in the Secured Notes on the part of Owner Trustee are made and intended not as personal representations, warranties, covenants, undertakings and agreements by Trust Company or for the purpose or with the intention of binding Trust Company personally, but are made solely as the representations, warranties, covenants, undertakings and agreements of the Trust and are intended for the purpose of binding only the Trust Estate, and this Indenture and the Secured Notes are executed and delivered by Trust Company not in its own right but solely in the exercise of the powers expressly conferred upon it as trustee under the Trust Agreement on behalf of the Trust; and no personal liability or personal responsibility, except in the case of willful misconduct or gross negligence of Trust Company (other than with respect to the handling of funds actually received by it, in which case Trust Company shall be accountable for its failure to exercise ordinary care),

it is assumed by or shall at any time be asserted or enforceable against Trust Company on account of this Indenture or the Secured Notes or an account of any representation, warranty, covenant, undertaking or agreement of Owner Trustee, either expressed or implied herein, all such personal liability, if any, being expressly waived and released by Indenture Trustee and Note Holders and by all Persons claiming by, through or under them, and that all recourse against Trust Company or Owner Participant under this Indenture shall be limited to the Trust Estate.

IN WITNESS WHEREOF, the parties hereto have caused this Indenture to be duly executed by their respective officers thereunto duly authorized, as of the day and year first above written, and acknowledge that this Indenture has been made and delivered in the City of New York, this Indenture having become effective only upon such execution and delivery.

AMTRAK TRUST HS-EDC-1

By:    Wilmington Trust Company, not in
its individual capacity but solely
as Owner Trustee

By:    _____
Name:
Title:    **W. CHRIS SPONENBERG**
**ASSISTANT VICE PRESIDENT**

IN WITNESS WHEREOF, the parties hereto have caused this Indenture to be duly executed by their respective officers thereunto duly authorized, as of the day and year first above written, and acknowledge that this Indenture has been made and delivered in the City of New York, this Indenture having become effective only upon such execution and delivery.

ALLFIRST BANK,
    as Indenture Trustee

By: _____
    Name: ROBERT D. BROWN
    Title:  VICE PRESIDENT

Indenture (Amtrak Trust HS-EDC-1)

EXHIBIT A
to Trust Indenture and Security Agreement

## INDENTURE SUPPLEMENT NO. \_\_\_
## (Amtrak Trust HS-EDC-1)

INDENTURE SUPPLEMENT No. \_\_\_\_\_ (Amtrak Trust HS-EDC-1) dated _____, 2000, of AMTRAK TRUST HS-EDC-1, a Delaware business trust (the "*Trust*"), all the activities of which shall be conducted by Wilmington Trust Company, a Delaware banking corporation, not in its individual capacity but solely as trustee for the Trust (together with any successor owner trustee, the "*Owner Trustee*", which term, unless the context otherwise requires, includes the Trust) under the Trust Agreement (Amtrak Trust HS-EDC-1) dated as of November \_\_, 2000 (herein called the "*Trust Agreement*"), between Owner Trustee and Owner Participant named therein.

### W I T N E S S E T H :

WHEREAS, the Trust Agreement provides for the execution and delivery of one or more supplements thereto, which shall particularly describe the Equipment and any Replacement Unit(s) included in the property covered by the Trust Agreement.

WHEREAS, the Trust Indenture and Security Agreement (Amtrak Trust HS-EDC-1) dated as of November \_\_, 2000 (herein called the "*Indenture*"), between Owner Trustee and Allfirst Bank, as Indenture Trustee (herein called the "*Indenture Trustee*"), provides for the execution and delivery of a supplement thereto substantially in the form hereof which shall particularly describe the Equipment (such term and other defined terms in the Indenture being herein used with the same meanings) and any Replacement Unit(s) included in the Trust Indenture Estate, and shall specifically mortgage such Equipment or Replacement Unit(s) to Indenture Trustee.

WHEREAS, the Indenture relates to the Unit(s) described below and a counterpart of the Indenture is attached hereto and made a part hereof.

WHEREAS, a Memorandum of Trust Indenture and Security Agreement (Amtrak Trust HS-EDC-1) has been filed with the Surface Transportation Board pursuant to 49 U.S.C. §11301 on November \_\_, 2000 at \_\_:\_\_ \_.m. Recordation Number \_\_\_\_\_, and deposited in the office of the Registrar General of Canada pursuant to §105 of the Canada Transportation Act on November \_\_, 2000 at \_\_:\_\_ \_.m.

WHEREAS, Owner Trustee has, as provided in the Indenture, heretofore executed and delivered to Indenture Trustee the Indenture Supplement(s) for the purpose of specifically subjecting to the Lien of the Indenture certain one or more unit(s) therein described.

NOW, THEREFORE, This Indenture Supplement Witnesseth that, to secure the prompt payment of the principal of and Make Whole Premium Amount, if any, and interest on, and all other amounts due with respect to, all Secured Notes issued on the date hereof from time

to time outstanding under the Indenture and the performance and observance by Owner Trustee of all the agreements, covenants and provisions in the Indenture and in the Participation Agreement and the other Operative Documents (other than the Equity Guarantee Agreement) for the benefit of Note Holders and Loan Participant and in the Secured Notes contained, and the prompt payment of all amounts from time to time owing under the Participation Agreement and the other Operative Documents (other than the Equity Guarantee Agreement) by Owner Trustee and Lessee, in each case, to Loan Participant and/or Note Holders, and for the uses and purposes and subject to the terms and provisions of the Indenture, and in consideration of the premises and of the covenants contained in the Indenture, and of the acceptance of the Secured Notes by the holders thereof, and of the sum of $1 paid to Owner Trustee by Indenture Trustee at or before the delivery hereof, the receipt whereof is hereby acknowledged, Owner Trustee has granted, bargained, sold, assigned, transferred, conveyed, mortgaged, pledged and confirmed, and does hereby grant, bargain, sell, assign, transfer, convey, mortgage, pledge and confirm, unto Indenture Trustee, its successors and assigns, for the security and benefit of Loan Participant and Note Holders from time to time, in the trust created by the Indenture, a security interest in and mortgage Lien on all estate, right, title and interest of Owner Trustee in, to and under the following described property:

EQUIPMENT

identified as follows:

| Description | Amtrak Equipment Numbers |
|---|---|
| _____ (____) [insert description] | ____ through<br>____, inclusive |

Together with all substitutions, replacements and renewals of the property above described, and all property which shall hereafter become physically attached to or incorporated in the property above described, whether the same are now owned by Owner Trustee or shall hereafter be acquired by it.

As further security for the obligations referred to above and secured by the Indenture and hereby, Owner Trustee has granted, bargained, sold, assigned, transferred, conveyed, mortgaged, pledged and confirmed, and does hereby grant, bargain, sell, assign, transfer, convey, mortgage, pledge and confirm, unto Indenture Trustee, its successors and assigns, for the security and benefit of Loan Participant and Note Holders from time to time, in the trust created by the Indenture, all of the estate, right, title and interest of Owner Trustee in to and under the Lease Supplement of even date herewith (other than Excepted Payments, if any) covering the property described above.

TO HAVE AND TO HOLD all and singular the aforesaid property unto Indenture Trustee, its successors and assigns, for the benefit and security of Loan Participant and Note Holders from time to time of the Secured Notes issued on the date hereof and for the uses and purposes and subject to the terms and provisions set forth in the Indenture.

This Indenture Supplement is being delivered coincident with the issuance of series [A/B/C] Secured Notes under the Indenture in an aggregate principal amount of $_____, maturing on _____, for which the Debt Rate is ____%.

This Indenture Supplement shall be construed as supplemental to the Indenture and to the Trust Agreement and shall form a part of each, and the Trust Agreement and the Indenture are each hereby incorporated by reference herein and each is hereby ratified, approved and confirmed.

This Indenture Supplement is being delivered in the State of New York.

AND, FURTHER, Owner Trustee hereby acknowledges that the Equipment referred to in this Indenture Supplement and the aforesaid Lease Supplement has been delivered to Owner Trustee and is included in the property of Owner Trustee covered by all the terms and conditions of the Trust Agreement, subject to the pledge and mortgage thereof under the Indenture.

IN WITNESS WHEREOF, the undersigned has caused this Indenture Supplement to be duly executed by one of its officers thereunto duly authorized on the day and year first above written.

AMTRAK TRUST HS-EDC-1

By: Wilmington Trust Company,
not in its individual capacity, but solely as Owner Trustee

By: _____
Name:
Title:

STATE OF DELAWARE      )
                                    ) SS.:
COUNTY OF NEW CASTLE   )

On this _____ day of November __, 2000 before me personally appeared _____, to me personally known, who, being by me duly sworn, says that he/she is the _____ of WILMINGTON TRUST COMPANY, that said instrument was signed on behalf of said Wilmington Trust Company, as trustee, on behalf of AMTRAK TRUST HS-EDC-1, by authority of Wilmington Trust Company's Board of Directors, and he/she acknowledges that the execution of the foregoing instrument was the free act and deed of said Wilmington Trust Company.


Notary Public


My Commission Expires: _____

EXHIBIT B
to
**Trust Indenture and Security Agreement**

## TAX CERTIFICATE

Reference is made to the Secured Note(s) held by the undersigned pursuant to the Trust Indenture and Security Agreement (Amtrak Trust HS-EDC-1) dated as of _____, 2000 between AMTRAK TRUST HS-EDC-1, a Delaware business trust (the "*Trust*"), all of the activities of which shall be conducted by Wilmington Trust Company, a Delaware banking corporation, not in its individual capacity, but solely as trustee for the Trust (the "*Lessor*"), and ALLFIRST BANK, as Indenture Trustee.  The undersigned hereby declares under the penalties of perjury that:

(1)    the undersigned is the beneficial owner of the Secured Note(s) registered in its name;

(2)    the income from the Secured Note(s) held by the undersigned is not effectively connected with the conduct of a trade or business within the United States;

(3)    the undersigned is not a bank (as such term is used in I.R.C. Section 881(c)(3)(A));

(4)    the undersigned is not a controlled foreign corporation related (within the meaning of I.R.C. Section 864(d) (4)) to Lessor or Owner Participant;

(5)    the undersigned is not a 10% shareholder (within the meaning of I.R.C. Section 871(h)(3)(B)) of Lessor or Owner Participant;

(6)    the undersigned is a Person other than (i) a citizen or resident of the United States of America, its territories and possessions (including the Commonwealth of Puerto Rico and all other areas subject to its jurisdiction) (for purposes of this definition, the "*United States*"), (ii) a corporation, partnership or other entity created or organized under the laws of the United States or any political subdivision thereof or therein or (iii) an estate or trust that is subject to United States federal income taxation regardless of the source of its income; and

(7)    the undersigned is not a natural person.

By executing this certificate, the undersigned agrees that (1) if the information provided on this certificate changes, the undersigned shall so inform Indenture Trustee in writing within 30 days of such change and (2) the undersigned shall furnish Indenture Trustee a properly completed and currently effective certificate in either the calendar year in which payment is to be made by Indenture Trustee to the undersigned, or in either of the 2 calendar years preceding such payment.

[NAME]

By: _____

    [Address]

Dated:

EXHIBIT C
to
**Trust Indenture and Security Agreement**

[FORM OF SECURED NOTE]

THIS SECURED NOTE HAS NOT BEEN REGISTERED UNDER THE SECURITIES ACT
OF 1933, AND MAY NOT BE TRANSFERRED, SOLD OR OTHERWISE DISPOSED OF
EXCEPT WHILE SUCH A REGISTRATION IS IN EFFECT OR PURSUANT TO AN
EXEMPTION FROM REGISTRATION UNDER SAID ACT

AMTRAK TRUST HS-EDC-1,
a Delaware business trust (the "*Trust*"),
all the activities of which are conducted by and through
Wilmington Trust Company,
a Delaware banking corporation,
not in its individual capacity but solely as
trustee for the Trust (the "*Owner Trustee*") under that certain

TRUST AGREEMENT (Amtrak Trust HS-EDC-1)
DATED AS OF NOVEMBER __, 2000

SECURED NOTE DUE _____, _____

ISSUED IN CONNECTION WITH LEASE FINANCING OF
_____ (__) DUAL CAB, HIGH-HORSEPOWER ELECTRIC LOCOMOTIVES
AND
_____ (__) HIGH-SPEED TRAINSETS

Series [A/B/C]
No. [1/2/3]                                                     New York, New York
$_____                                          _____ __, 2000

        AMTRAK TRUST HS-EDC-1, a Delaware business trust (the "*Trust*"), all of the
activities of which are conducted by and through Wilmington Trust Company, a Delaware
banking corporation, not in its individual capacity but solely as trustee for the Trust (herein in
such capacity called the "*Owner Trustee*", which term, unless the context otherwise requires,
shall include the Trust) under that certain Trust Agreement (Amtrak Trust HS-EDC-1) dated as
of November __, 2000, between Owner Participant named therein and Wilmington Trust

Company (in its individual capacity only as expressly stated in the Trust Agreement and otherwise solely as Owner Trustee under the Trust Agreement) (as such Trust Agreement may be amended or otherwise modified from time to time herein called the "*Trust Agreement*"), hereby promises to pay to Export Development Corporation or its registered assigns, the principal sum of _____ Dollars, in installments on the relevant Installment Payment Dates, and in the amounts as set forth in Annex A hereto, together with interest at ___% (the "*Debt Rate*", calculated on the basis of a 360 day year consisting of twelve 30-day months) on the unpaid principal amount hereof from time to time outstanding from and including the date hereof until such principal amount is paid in full; provided, however, that the final principal payment hereon shall in any and all events equal the then outstanding principal balance hereof. Accrued interest hereon shall be payable in arrears on each Installment Payment Date and on the date this Secured Note is paid in full. Notwithstanding the foregoing, this Secured Note shall bear interest at the applicable Overdue Rate on any principal amount due hereunder and, to the extent permitted by Applicable Law, on any interest or other amounts due hereunder, not paid when due (whether at stated maturity, by acceleration or otherwise) from, and including, the due date thereof to, and excluding, the date payment is made in full, payable on demand by the holder hereof.

All payments to be made to the holder hereof by Owner Trustee hereunder or under the Trust Indenture and Security Agreement (Amtrak Trust HS-EDC-1) dated as of November __, 2000 (herein called the "*Indenture*", the defined terms therein not otherwise defined herein being used herein with the same meanings), between Owner Trustee and Allfirst Bank, as Indenture Trustee thereunder, shall be made only from the income and proceeds from the Trust Estate to the extent included in the Trust Indenture Estate and only to the extent that Owner Trustee shall have sufficient income or proceeds from the Trust Indenture Estate to enable Indenture Trustee to make such payments in accordance with the terms of the Indenture, and each holder hereof, by its acceptance of this Secured Note, agrees that it will look solely to the income and proceeds from the Trust Indenture Estate to the extent available for distribution to the holder hereof as above provided and that none of Owner Participant, Owner Trustee or Indenture Trustee is personally liable to the holder hereof for any amounts payable under this Secured Note or under the Indenture, except as expressly provided in the Indenture (in the case of Owner Trustee and Indenture Trustee) or in the Participation Agreement (in the case of Owner Participant, Owner Trustee and Indenture Trustee).

Owner Trustee agrees to pay over to Indenture Trustee for distribution in accordance with Section 3.04(b) of the Indenture any and all amounts received by Owner Trustee in respect of indemnity amounts paid by Lessee in respect of the holder of this Secured Note pursuant to Sections 6.1 and 6.2 of the Participation Agreement and further agrees that such obligation incurred by it in this paragraph shall be secured by the Indenture.

Principal, Make Whole Premium Amount, if any, and interest and other amounts due hereunder in accordance with the Indenture shall be payable in Dollars in immediately available funds on the due date thereof to Indenture Trustee at the Corporate Trust Office, ABA 052000113, Credit Trust Receipts Account No. 090-0276-4, Reference: Amtrak Trust EDC-HS-1 Attention: Robert D. Brown, Corporate Trust Administration (or such other account at such other financial institution in New York City or Baltimore, Maryland as Indenture Trustee may so specify from time to time to Owner Trustee and Lessee) and Indenture Trustee shall remit all such amounts so received by it to such address and in such manner (by wire transfer of

immediately available funds if not otherwise specified) as the holder hereof shall have designated to Indenture Trustee in writing.  If the payment was received prior to 1:00 a.m. New York time by Indenture Trustee on any Business Day, Indenture Trustee shall make such payment by 3:00 p.m. New York time on such Business Day; otherwise, Indenture Trustee shall make payment promptly, but not later than 11:00 a.m. New York time the next succeeding Business Day.  In the event Indenture Trustee shall fail to make any such payment as provided in the immediately foregoing sentence after its receipt of funds at the place and by the time specified above, Indenture Trustee, in its individual capacity and not as trustee, hereby agrees to compensate the holder of this Secured Note at an interest rate equal to the Prime Rate for the period from the date such amount is due to, but excluding, the date such amount is paid in full.  If any sum payable hereunder falls due on a day which is not a Business Day, then such sum shall be payable on the next succeeding Business Day and no interest shall accrue on the amount of such payment if such payment is made on such next succeeding Business Day.

The obligations of Owner Trustee payable hereunder are payable in Dollars.

Each holder hereof, by its acceptance of this Secured Note, agrees that each payment of principal and interest or other amounts due hereon and received by it hereunder shall be applied, _first_, to the payment of interest on this Secured Note due and payable to the date of such payment as hereinabove provided, as well as any interest on overdue principal or, to the extent permitted by law, interest and other amounts hereunder, _second_, to the payment of any other amount (other than the principal of this Secured Note) including, but not limited to, Make Whole Premium Amount, if any, due hereunder in accordance with the Indenture, _third_, to the payment of the principal of this Secured Note then due hereunder and _fourth_, the balance, if any, remaining thereafter, to the payment of the principal of this Secured Note remaining unpaid, in the manner set forth in the second sentence of Section 2.07 of the Indenture, but subject always to the proviso set forth in the first sentence of said Section 2.07.

This Secured Note is one of the Secured Notes referred to in the Indenture which have been or are to be issued by Owner Trustee pursuant to the terms of the Indenture.  The Trust Indenture Estate is held by Indenture Trustee as security, in part, for the Secured Notes.  The beneficial interest of Owner Participant in and to the properties of Owner Trustee pledged or mortgaged as part of the Trust Indenture Estate is subject and subordinate to the lien and security interest granted to Indenture Trustee to the extent provided in the Indenture.  Reference is hereby made to the Indenture for a statement of the rights and obligations of the holder of, and the nature and extent of the security for, this Secured Note and of the rights and obligations of the holders of, and the nature and extent of the security for, the other Secured Notes, as well as for a statement of the terms and conditions of the trusts created by the Indenture, to all of which terms and conditions in the Indenture each holder hereof agrees by its acceptance of this Secured Note.

There shall be maintained a Note Register for the purpose of registering transfers and exchanges of Secured Notes at the Corporate Trust Office of Indenture Trustee or at the office of any successor indenture trustee in the manner provided in Section 2.09 of the Indenture.  As provided in the Indenture and subject to certain limitations therein set forth, the Secured Notes are exchangeable for a like aggregate principal amount of Secured Notes (of the same series) of a different authorized denomination, as requested by Note Holder surrendering the same.

Prior to the due presentment for registration of transfer of this Secured Note, Owner Trustee and Indenture Trustee may deem and treat the Person in whose name this Secured Note is registered on the Note Register as the absolute owner and holder hereof for the purpose of receiving payment of all amounts payable with respect hereto and for all other purposes, and neither Owner Trustee, Indenture Trustee nor Lessee, shall be affected by any notice to the contrary.

This Secured Note is subject to prepayment only as permitted by Sections 2.12 and 2.14 of the Indenture and to purchase as provided in Sections 2.04 and 2.13 of the Indenture and Section 19 of the Participation Agreement, and the holder hereof, by its acceptance of this Secured Note, agrees to be bound by said provisions and by the other provisions of the Indenture and of the Participation Agreement applicable to a Loan Participant or Note Holder.

THIS SECURED NOTE IS SUBJECT TO CERTAIN ADDITIONAL RESTRICTIONS ON TRANSFER ARISING OUT OF THE EMPLOYEE RETIREMENT INCOME SECURITY ACT OF 1974, AS AMENDED. THESE RESTRICTIONS ARE SET FORTH IN SECTION 4.2(i) OF THE PARTICIPATION AGREEMENT.

This Secured Note shall not be secured by or be entitled to any benefit under the Indenture or be valid or obligatory for any purpose, unless authenticated by Indenture Trustee as evidenced by the manual signature of one of its authorized officers below.

THIS SECURED NOTE SHALL BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAW OF THE STATE OF NEW YORK, INCLUDING ALL MATTERS OF CONSTRUCTION, VALIDITY AND PERFORMANCE.

IN WITNESS WHEREOF, the undersigned has caused this Secured Note to be executed in its corporate name by its officer thereunto duly authorized, as of the date hereof.

AMTRAK TRUST HS-EDC-1

By: Wilmington Trust Company,
not in its individual capacity, but solely as Owner Trustee

By: _____

     Name:
     Title:

This is one of the Secured Notes referred to in the within-mentioned Indenture.

ALLFIRST BANK,
as Indenture Trustee

By: _____
        Name:
        Title:

**ANNEX A**
**to**
**SECURED NOTE**


**SCHEDULE OF PRINCIPAL PAYMENTS**


|                                                    | Percentage of Original |
| Installment Payment Date | Principal Amount to be Paid |