# EXHIBIT 11



# TRUST AGREEMENT

of

## AMTRAK TRUST HS-EDC-1

Dated as of November 6, 2000

between

## HNB INVESTMENT CORP.,
as Owner Participant

and

## WILMINGTON TRUST COMPANY,
in its individual capacity and
as Owner Trustee

Eight (8) Dual Cab, High-Horsepower Electric Locomotives and
Ten (10) High-Speed Trainsets

---

## AMTRAK TRUST HS-EDC-1

# TABLE OF CONTENTS

Page

ARTICLE I. INTERPRETATION ...................................................................1

    SECTION 1.01    Definitions...................................................................1
    SECTION 1.02    Rules of Interpretation. ..............................................1

ARTICLE II. AUTHORITY TO EXECUTE CERTAIN OPERATIVE DOCUMENTS; DECLARATION OF TRUST BY TRUST COMPANY ...................................................................1

    SECTION 2.01    Creation of Trust; Authority to Execute Documents. ...........1
    SECTION 2.02    Declaration of Trust by Trust Company. ...........................2

ARTICLE III. ACCEPTANCE AND DELIVERY OF THE EQUIPMENT...........................2

    SECTION 3.01    Acceptance of the Equipment. ..........................................2
    SECTION 3.02    Conditions Precedent. ....................................................2
    SECTION 3.03    Authority Without Express Instructions. ............................3

ARTICLE IV. PAYMENTS ...................................................................3

    SECTION 4.01    Payments from Trust Estate Only. ...................................3
    SECTION 4.02    Method of Payment........................................................3

ARTICLE V. DISTRIBUTIONS...................................................................3

    SECTION 5.01    Distribution of Payments. ..............................................3

ARTICLE VI. DUTIES OF OWNER TRUSTEE...................................................4

    SECTION 6.01    Notice of Event of Default...............................................4
    SECTION 6.02    Action Upon Instructions................................................5
    SECTION 6.03    Indemnification. ...........................................................5
    SECTION 6.04    No Duties Except as Specified..........................................5
    SECTION 6.05    No Action Except Under Specified Documents or Instructions...................................................................6

ARTICLE VII. ADMINISTRATION OF TRUST...................................................6

# TABLE OF CONTENTS
(continued)

Page

SECTION 7.01    Acceptance of Trust and Duties. ...........................................................6

SECTION 7.02    Absence of Certain Duties; Furnishing of Documents. ......................6

SECTION 7.03    No Representations or Warranties as to the Equipment or
Documents. ...................................................................................7

SECTION 7.04    No Segregation of Monies; No Interest. .............................................8

SECTION 7.05    Reliance; Advice of Counsel. ..............................................................8

SECTION 7.06    Not Acting in Individual Capacity. .....................................................8

SECTION 7.07    Book and Records; Tax Returns. .........................................................9

SECTION 7.08    Fixed Investment Trust. .......................................................................9

ARTICLE VIII. INDEMNIFICATION OF TRUST COMPANY BY OWNER
PARTICIPANT.....................................................................................9

SECTION 8.01    Owner Participant to Indemnify Trust Company...............................9

ARTICLE IX. TERMINATION OF TRUST AGREEMENT ...............................................11

SECTION 9.01    Termination of Trust Agreement. .....................................................11

SECTION 9.02    Termination at Option of Owner Participant. ...................................11

SECTION 9.03    Actions by Owner Trustee upon Termination. ..................................11

ARTICLE X. SUCCESSOR OWNER TRUSTEES, CO-OWNER OWNER
TRUSTEES AND SEPARATE OWNER TRUSTEES ..................12

SECTION 10.01   Resignation or Removal of Owner Trustee; Appointment
of Successor. ...............................................................................12

SECTION 10.02   Co-Owner Trustees and Separate Owner Trustees. ..........................13

ARTICLE XI. SUPPLEMENTS AND AMENDMENTS.......................................................14

SECTION 11.01   Supplements and Amendments...........................................................14

SECTION 11.02   Limitation on Amendments. ...............................................................14

ARTICLE XII. TRANSFER OF INTEREST OF OWNER PARTICIPANT..........................14

SECTION 12.01   Transfer of Interest of Owner Participant. .......................................14

SECTION 12.02   Transferee's Agreement.......................................................................14

## TABLE OF CONTENTS
(continued)

Page

ARTICLE XIII. MISCELLANEOUS ........................................................................15

    SECTION 13.01    No Legal Title to Trust Estate in Owner Participant. ........................15

    SECTION 13.02    Sale of Equipment by Owner Trustee Binding. .................................15

    SECTION 13.03    Limitations on Rights of Others..........................................................15

    SECTION 13.04    Notices. ................................................................................................15

    SECTION 13.05    Severability. ........................................................................................15

    SECTION 13.06    Limitation on Owner Participant's Liability......................................15

    SECTION 13.07    Separate Counterparts. .......................................................................16

    SECTION 13.08    Successors and Assigns.......................................................................16

    SECTION 13.09    Headings. ............................................................................................16

    SECTION 13.10    GOVERNING LAW............................................................................16

    SECTION 13.11    Performance by Owner Participant.....................................................16

    SECTION 13.12    Waivers. ..............................................................................................16

    SECTION 13.13    Administration of Trust.......................................................................16

# TRUST AGREEMENT

## (AMTRAK TRUST HS-EDC-1)

This TRUST AGREEMENT (AMTRAK TRUST HS-EDC-1) (this *"Agreement"*) dated as of November 6, 2000 between HNB INVESTMENT CORP., a Delaware corporation (the *"Owner Participant"*), and WILMINGTON TRUST Company, a Delaware banking corporation ("*Trust Company*", and in its capacity as trustee hereunder, together with its permitted successors and assigns, *"Owner Trustee"*).

## W I T N E S S E T H :

WHEREAS, Owner Participant and Owner Trustee desire to form Amtrak Trust HS-EDC-1, a statutory business trust pursuant to the Delaware Business Trust Act, 12 Del. C. c. 38 (the *"Delaware Act"*), for the purpose of holding legal title to the Trust Estate; and

WHEREAS, Trust Company is willing to act and serve as trustee under this Trust Agreement and accepts the trusts created hereby, subject to the terms and conditions of this Trust Agreement.

NOW, THEREFORE, in consideration of the foregoing premises and the mutual covenants expressed herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

## ARTICLE I.
## INTERPRETATION

**SECTION 1.01   Definitions.**   Capitalized terms and phrases used and not otherwise defined herein shall for all purposes of this Agreement have the respective meanings specified therefor in Annex A to that certain Participation Agreement (Amtrak Trust HS-EDC-1), dated as of the date hereof, among National Railroad Passenger Corporation, a corporation organized under the Rail Passenger Services Act and the laws of the District of Columbia, Owner Participant, Export Development Corporation, as Loan Participant, Allfirst Bank, as Indenture Trustee, Amtrak Trust HS-EDC-1, and the Trust Company.

**SECTION 1.02   Rules of Interpretation.**   The Rules of Interpretation set forth in Annex A to the Participation Agreement apply to this Agreement.

## ARTICLE II.
## AUTHORITY TO EXECUTE CERTAIN OPERATIVE DOCUMENTS;
## DECLARATION OF TRUST BY TRUST COMPANY

**SECTION 2.01   Creation of Trust; Authority to Execute Documents.**   It is the intention of the parties hereto to form a statutory business trust pursuant to the Delaware Act for the purpose of facilitating the transactions contemplated by the Operative Documents and that this Trust Agreement shall constitute the governing instrument of such statutory business

trust.  Upon (i) execution and delivery of this Trust Agreement by the parties hereto, and (ii) the filing of a certificate of trust in the form set forth as Exhibit A attached hereto (the "*Certificate of Trust*") with the Office of the Secretary of State of the State of Delaware (the "*Secretary of State*"), there is hereby created a trust to be known as the "Amtrak Trust HS-EDC-1" (the "*Trust*"), in which name Owner Trustee may conduct the activities of the Trust, make and execute contracts and other instruments on behalf of the Trust and sue and be sued on behalf of the Trust.  Owner Participant hereby authorizes and directs Owner Trustee to execute and to cause to be filed with the Secretary of State the Certificate of Trust, and to execute and to cause to be filed with the Secretary of State such certificates as may, from time to time, be required under the Delaware Act.

(b)     Owner Participant hereby authorizes and directs Owner Trustee (i) to execute and deliver in the name and on behalf of the Operative Documents and any other agreements, instruments, certificates, financing statements, documents and other writings or records necessary, convenient or incidental to, or contemplated by transactions set forth herein or therein to which the Trust is a party, all in the respective forms thereof delivered from time to time by Owner Participant to Owner Trustee for execution and delivery, (ii) subject to the terms hereof, to exercise the rights (upon instructions received from Owner Participant) and perform the duties of the Trust and Owner Trustee under said Operative Documents and all other agreements or instruments, including without limitation, all of the items referred to in clause (i) above in accordance with the terms thereof and (iii) subject to the terms hereof and thereof, to take such other action in connection with the foregoing as Owner Participant may from time to time direct.

**SECTION 2.02   Declaration of Trust by Trust Company.**  Trust Company hereby declares that it will hold in the name of the Trust all estate, right, title and interest of the Trust in and to the Trust Estate upon the trust hereinafter set forth for the use and benefit of Owner Participant.

## ARTICLE III.
## ACCEPTANCE AND DELIVERY OF
## THE EQUIPMENT

**SECTION 3.01   Acceptance of the Equipment.**  Owner Participant hereby authorizes and directs Owner Trustee to, and Owner Trustee agrees that on each Closing Date it will on behalf of the Trust, subject to due compliance with the terms of Section 3.02 hereof, take such actions as are required of Owner Trustee on behalf of the Trust hereunder or under the other Operative Documents.

**SECTION 3.02   Conditions Precedent.**  The right and obligation of Owner Trustee to take the actions required by Section 3.01 hereof on behalf of the Trust on each Closing Date shall be subject to the following conditions precedent:

(a)     The Trust shall have received from Amtrak notice of delivery of the Units to be delivered on such Closing Date (or shall have waived receipt of such notice) in accordance with Section 3.1 of the Participation Agreement; and

(b)     Owner Participant shall have made available to the Trust the full amount of the aggregate Owner Participant's Commitment with respect to the Units to be delivered on such Closing Date, in immediately available funds, in accordance with Section 2 of the Participation Agreement.

SECTION 3.03   **Authority Without Express Instructions.**   Owner Trustee, without necessity of further instructions from Owner Participant, is hereby authorized and directed by Owner Participant to, upon satisfaction of the conditions precedent set forth in Section 3.02 hereof, take on behalf of the Trust all action specified in Section 2 of the Participation Agreement as action to be taken by the Trust.

### ARTICLE IV.
### PAYMENTS

SECTION 4.01   **Payments from Trust Estate Only.**   Except as otherwise permitted herein, all payments to be made by Owner Trustee on behalf of the Trust under this Agreement shall be made only from the income and the proceeds from the Trust Estate and only to the extent that Owner Trustee shall have received income or proceeds from the Trust Estate.

SECTION 4.02   **Method of Payment.**   All amounts payable to Owner Participant by Owner Trustee on behalf of the Trust pursuant to this Agreement or the Indenture shall be paid or caused to be paid by Owner Trustee to Owner Participant or its designee by wire transfer of such amount in immediately available funds to such account or accounts of Owner Participant as Owner Participant may designate from time to time in writing to Owner Trustee and if no such direction shall have been given, by check of Trust Company payable to the order of Owner Participant and mailed to Owner Participant at its address determined pursuant to Section 13.04 hereof.

### ARTICLE V.
### DISTRIBUTIONS

SECTION 5.01   **Distribution of Payments.**

(a)     Payments to Indenture Trustee.   Until the Lien of the Indenture shall have been discharged pursuant to Section 10.01 thereof, all Base Rent, Supplemental Rent, insurance proceeds and requisition or other payments of any kind (other than payments that are Excepted Payments) for or with respect to the Units or otherwise included in the Trust Estate that are payable to the Trust or to Owner Trustee on its behalf shall be payable directly to Indenture Trustee at Allfirst Bank, 25 South Charles Street, Mail Code 101-591, Baltimore, Maryland 21201, ABA No. 052000113, Credit Trust Receipts Account No. 090-02-764, Reference: Amtrak Trust HS-EDC-1, Attn. Robert D. Brown, with a copy of the wire instructions to be provided to Lessor, and Indenture Trustee will acknowledge receipt thereof to Lessor on the date received or at such other address and/or to the attention of such other department as Indenture Trustee shall from time to time designate by notice in writing to the other parties hereto, or if received by Owner Trustee, the Trust or any other party shall forthwith upon receipt be paid over to Indenture Trustee without deduction, set-off or adjustment of any kind for distribution in accordance with the provisions of Article III of the Indenture.

(b)    Payments to Owner Trustee, Other Parties.  (i) After the Indenture shall have been discharged pursuant thereto, any payment of the type referred to in Section 5.01(a) hereof (other than Excepted Payments) received by the Trust or by Owner Trustee on its behalf, (ii) any payments received from Indenture Trustee other than as specified in Section 5.01(c) hereof, and (iii) any other amount received as part of the Trust Estate and for the application or distribution of which no provision is made herein, shall be distributed forthwith upon receipt by Owner Trustee in the following order of priority: first, so much of such payment as shall be required to reimburse Owner Trustee for any expenses not otherwise reimbursed as to which Owner Trustee is entitled to be so reimbursed pursuant to the provisions hereof shall be retained by Owner Trustee; second, so much of the remainder for which provision as to the application thereof is contained in the Lease or any of the other Operative Documents shall be applied and distributed in accordance with the terms of the Lease or such other Operative Document, to the extent such remainder was not previously paid pursuant to the terms of such other Operative Documents; and third, the balance, if any, shall be promptly paid to Owner Participant.

(c)    Excepted Payments.  Any payment that is an Excepted Payment received by the Trust or by Owner Trustee on its behalf shall be paid by Owner Trustee to the Person to whom such payment is payable under the provisions of the Participation Agreement or any other Operative Document.

(d)    Distribution of Insurance Proceeds.  Any proceeds of any insurance for property damage or loss not constituting a Casualty Occurrence with respect to the Units received by the Trust or by Owner Trustee on its behalf shall be applied as provided in Section 8.2 of the Lease.

## ARTICLE VI.
## DUTIES OF OWNER TRUSTEE

SECTION 6.01  Notice of Event of Default.  If Owner Trustee shall have knowledge of a Lease Default, a Lease Event of Default, an Indenture Default or an Indenture Event of Default, Owner Trustee shall give prompt written notice thereof to Owner Participant, Indenture Trustee, Loan Participant, Equity Guarantor, and Amtrak.  Subject to the terms of Section 6.03 hereof, Owner Trustee shall take action or shall refrain from taking such action, not inconsistent with the provisions of the Lease, the Indenture, or the Participation Agreement with respect to a Lease Event of Default or an Indenture Event of Default as Owner Trustee shall be directed in writing by Owner Participant.  If Owner Trustee shall not have received instructions as above provided within 20 days after giving notice of such Lease Event of Default or Indenture Event of Default to Owner Participant, Owner Trustee may, but shall be under no duty to, take or refrain from taking any action, not inconsistent with the provisions of the Lease, the Indenture, and the Participation Agreement, with respect to such Lease Event of Default or Indenture Event of Default, as it shall deem advisable in the best interests of Owner Participant.  For all purposes of this Agreement, the Lease and the other Operative Documents, in the absence of actual knowledge by a Responsible Officer of the Corporate Trust Administration of Owner Trustee in his or her capacity as such, Owner Trustee shall not be deemed to have knowledge of a Lease Event of Default, Lease Default, Indenture Event of Default or Indenture Default unless notified in writing by or on behalf of any Note Holder, Indenture Trustee, Owner Participant or Amtrak.

**SECTION 6.02   Action Upon Instructions.**  Subject to the terms of Sections 6.01 and 6.03 hereof, upon the written instructions of Owner Participant, Owner Trustee shall take or refrain from taking such action or actions, not inconsistent with the provisions of the Lease, the Indenture or the Participation Agreement as may be specified in such instructions. Notwithstanding the foregoing, if Owner Trustee is unsure of the application of any provision of this Agreement or any other agreement relating to the transactions contemplated hereby or by any other Operative Document, Owner Trustee promptly shall request and rely upon instructions of Owner Participant; provided, that, if Owner Trustee shall not have received instructions from Owner Participant pursuant to such a request within 20 days after the date of such a request, or by such later date as may be specified by Owner Participant, Owner Trustee shall not be liable for any act or failure to act, except in the event of its own willful misconduct or gross negligence or with respect to any of the other matters specified in Section 7.01 hereof.

**SECTION 6.03   Indemnification.**  Owner Trustee shall not be required to take or refrain from taking any action under this Agreement or any other Operative Document (other than the actions specified in the first sentence of Section 6.01 hereof or the last sentence of Section 6.04 hereof and other than as expressly provided in any Operative Document) unless Amtrak shall have undertaken to indemnify Owner Trustee as provided for in the Participation Agreement, or if Owner Trustee reasonably believes such indemnity to be inadequate (together with its detailed explanation supporting such determination), by Owner Participant, in a manner and form reasonably satisfactory to Owner Trustee, against any liability or reasonable out-of-pocket fee, cost or expense (including reasonable counsel fees and disbursements) that may be incurred or charged in connection therewith other than such as may result from the willful misconduct or gross negligence of Owner Trustee or Trust Company or are excluded from Owner Participant's indemnity in Section 8.01 hereof; and, if Owner Participant shall have directed Owner Trustee to take or refrain from taking any action under any Operative Document, and Owner Trustee provides Owner Participant with written notice that Owner Trustee reasonably believes Amtrak's indemnity under the Participation Agreement to be inadequate (together with its detailed explanation supporting such determination), Owner Participant agrees to furnish such indemnity as shall be reasonably satisfactory to Owner Trustee (it being understood that the undertaking of indemnification by Owner Participant as set forth in Section 8.01 hereof shall apply to any such direction and shall be satisfactory under this sentence). Owner Trustee shall not be required to take any action under any Operative Document if Owner Trustee shall reasonably determine, or shall have been advised by counsel, that such action is likely to result in personal liability, is contrary to the terms hereof or of any Operative Document, or is contrary to law.

**SECTION 6.04   No Duties Except as Specified.**  Owner Trustee shall not have any duty or obligation to manage, control, use, make any payment in respect of, record, insure, inspect, sell, dispose of or otherwise deal with the Equipment or any other part of the Trust Estate, or to otherwise take or refrain from taking any action under, or in connection with any Operative Document, except as expressly required by the terms of this Agreement or such Operative Document or in written instructions from Owner Participant received pursuant to the terms of Section 6.01 or 6.02 hereof; and no implied duties or obligations shall be read into this Agreement against Owner Trustee.  Notwithstanding anything herein or in any other Operative Document to the contrary, Trust Company nevertheless agrees that it shall, at its own cost and expense, promptly take all action as may be necessary to duly discharge any Liens upon (i) any

part of the Trust Estate or the trust created hereby that result from actions by or claims against Trust Company not related to the transactions contemplated by the Operative Documents and (ii) any properties of Owner Trustee assigned, pledged or mortgaged as part of the Trust Indenture Estate, that result from acts by or claims against Trust Company not related to the transactions contemplated by the Operative Documents.

**SECTION 6.05   No Action Except Under Specified Documents or Instructions.**   Trust Company agrees that it will not either individually or as Owner Trustee manage, control, use, sell, dispose of or otherwise deal with the Equipment or any other part of the Trust Estate except (i) as required by the terms of any Operative Document, (ii) in accordance with the powers granted to, or the authority conferred upon, Trust Company pursuant to this Agreement or (iii) in accordance with the express terms hereof or with written instructions from Owner Participant pursuant to Section 6.01 or 6.02 hereof.

**ARTICLE VII.**
**ADMINISTRATION OF TRUST**

**SECTION 7.01   Acceptance of Trust and Duties.**   Trust Company accepts the trust hereby created and agrees to perform the same upon the terms of this Agreement.   Trust Company also agrees to receive and disburse all monies received by it constituting part of the Trust Estate upon the terms of this Agreement and the other Operative Documents.   Trust Company shall not be answerable or accountable under any circumstances, except (i) for its own willful misconduct or gross negligence, (ii) for the inaccuracy of any representation or warranty of, or breach of any covenant by, it, contained in Section 7.03 hereof, or in any of the other Operative Documents, and made expressly in its individual capacity, (iii) for Trust Company's failure to use ordinary care to disburse funds actually received by it in accordance with the terms of the Trust Agreement, (iv) as arising from the failure by Trust Company to perform obligations expressly undertaken by it in the last sentence of Section 6.04 hereof, in Section 6.05 and the last sentence of 13.03 hereof, (v) for any taxes on, based upon or measured by any fees, commissions or compensation received by Trust Company for acting as Owner Trustee in connection with any of the transactions contemplated by the Operative Documents, (vi) the costs, expenses, taxes and other charges payable in connection with amendments, supplements, waivers or consents relating to the Operative Documents to the extent requested by the Trust Company, (vii) all costs, expenses, taxes and other charges incurred by any Person, to the extent that Trust Company shall have expressly agreed in any Operative Document to bear such expenses, costs, taxes or charges, (viii) for all reasonable costs, expenses, taxes and other charges incurred as a direct result of the resignation without cause or removal for cause (such cause to be based solely on the occurrence of events referred to in clauses (i), (ii), (iii) and (iv) of this Section 7.01) or any merger, conversion or consolidation involving, the Trust Company, or any appointment of a co-trustee or separate trustee at the Trust Company's request and (ix) for any voluntary or involuntary petition in bankruptcy, insolvency, conservatorship, reorganization, liquidation or winding up of the Trust Company.

**SECTION 7.02   Absence of Certain Duties; Furnishing of Documents.**

(a)     Except in accordance with written instructions furnished pursuant to Sections 6.01 and 6.02 hereof and except as provided in, and without limiting the generality of,

the last sentence of Section 6.04 hereof or Section 6.05 and, with respect to any successor Owner Trustee, the last sentence of Section 10.01(b) hereof, Owner Trustee shall have no duty (i) to cause any recording or filing of any Operative Document or any other document or of any supplement to any thereof or to cause the maintenance of any such recording or filing or any other filing of reports with the STB or other governmental agencies, except that Owner Trustee shall, on behalf of the Trust, pursuant to written directions from Amtrak, Owner Participant or Indenture Trustee, to the extent consistent with the terms hereof and of the Operative Documents, and to the extent that such reports in execution form are supplied by such directing party pursuant to any of the Operative Documents, execute and timely submit (and furnish Owner Participant with a copy of) any and all reports relating to the Equipment that may from time to time be required by the AAR, STB or any government or Governmental Authority having jurisdiction, (ii) to see to any insurance on the Equipment or to effect or maintain any such insurance, whether or not Amtrak shall be in default with respect thereto, other than to forward to Owner Participant copies of all reports and other written information which it receives from Amtrak pursuant to Section 8.1 of the Lease or from any other Person regarding the insurance required under the Lease, (iii) to see to the payment or discharge of any tax, assessment or other governmental charge or any Lien or encumbrance of any kind owing with respect to, assessed or levied against any part of the Trust Estate or the Trust Indenture Estate, except for Liens resulting from actions by or claims against Trust Company not related to the transactions contemplated by the Operative Documents, (iv) to confirm, verify or inquire into the failure to receive any financial statements of Amtrak, (v) to inspect Amtrak's books and records with respect to the Equipment or (vi) to execute or file any financing statement, continuation statement or any similar document unless it shall have received written instructions from Owner Participant and such documents are in execution form.

(b)     Owner Trustee will furnish to Owner Participant, promptly upon receipt thereof, duplicates or copies of all reports, notices, requests, demands, certificates, financial statements, opinions and any other instruments furnished to the Trust or Owner Trustee on its behalf hereunder or under the Operative Documents, unless by the express terms of any Operative Document a copy of the same is required to be furnished by some other Person to Owner Participant, and a Responsible Officer in the Corporate Trust Administration of Owner Trustee has determined that a Responsible Officer of Owner Participant has already received such instruments.  Owner Trustee will furnish to Indenture Trustee the notices and other instruments required to be furnished by the Trust pursuant to the Indenture as provided therein.

SECTION 7.03   No Representations or Warranties as to the Equipment or Documents.  NEITHER TRUST COMPANY NOR THE TRUST MAKES OR SHALL BE DEEMED TO HAVE MADE (i) ANY REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, AS TO THE TITLE, VALUE, QUALITY, DURABILITY, COMPLIANCE WITH SPECIFICATIONS, CONDITION, DESIGN, OPERATION, MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR USE OR PURPOSE OF THE EQUIPMENT OR ANY OTHER REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, WITH RESPECT TO ANY UNITS OF EQUIPMENT (except as expressly set forth in the Participation Agreement or the Indenture), except that Trust Company hereby represents and warrants to Owner Participant that the Trust shall have received such title in the Equipment as shall have been conveyed to it by Amtrak and that it will comply with the last sentence of Section 6.04 hereof and (ii) any representation or warranty as to the validity, legality or enforceability of any

Operative Document to which the Trust is a party, or as to the correctness of any statement contained in any such Operative Document, except to the extent that any such statement is expressly made therein as a representation by Trust Company and except that Trust Company hereby represents and warrants that this Agreement has been, and (assuming due authorization, execution and delivery by Owner Participant of this Agreement) the Operative Documents to which the Trust is a party have been (or at the time of execution and delivery of any such instrument by the Trust or Trust Company hereunder or pursuant to the terms of the Participation Agreement that such an instrument will be), duly executed and delivered by one of its officers who is or will be, as the case may be, duly authorized to execute and deliver such instruments on behalf of Trust Company or the Trust, as the case may be.

SECTION 7.04   **No Segregation of Monies; No Interest.**  Except as otherwise provided herein or in the Lease or the Indenture, monies received by the Trust or Owner Trustee on its behalf hereunder need not be segregated in any manner except to the extent required by law, and may be deposited under such general conditions as may be prescribed by law, and neither Trust Company nor Owner Trustee shall be liable for any interest thereon except as expressly provided for in any of the Operative Documents or as may be agreed to by Trust Company or Owner Trustee.

SECTION 7.05   **Reliance; Advice of Counsel.**  Owner Trustee shall incur no liability to anyone in acting in reliance upon any signature, instrument, notice, resolution, request, consent, order, certificate, report, opinion, bond or other document or paper reasonably believed by it to be genuine and reasonably believed by it to be signed by the proper party or parties.  Owner Trustee may accept a certified copy of a resolution of the board of directors or other governing body of any Person as conclusive evidence that such resolution has been duly adopted by such body and that the same is in full force and effect.  As to any fact or matter the manner of ascertainment of which is not specifically described herein, Owner Trustee may for all purposes hereof rely on a certificate signed by the president, any vice-president, the treasurer, an assistant treasurer, the secretary or an assistant secretary of the appropriate Person, as to such fact or matter, and such certificate shall constitute full protection to Owner Trustee for any action taken or omitted to be taken by it in good faith in reliance thereon.  In the administration of the trust hereunder, Owner Trustee may execute the trust or any of the powers hereof and perform its powers and duties hereunder directly or through agents or attorneys and may, at the expense of the Trust Estate, consult with counsel or, upon obtaining the written consent of Owner Participant, accountants and other skilled Persons to be selected and employed by it.  Owner Trustee shall not be liable for anything done, suffered or omitted in good faith by it in accordance with the advice or opinion of any such counsel, accountants or other skilled Persons and Owner Trustee shall not be liable for the negligence of any such agent, attorney, counsel, accountant or other skilled Person appointed by it with due care hereunder.

SECTION 7.06   **Not Acting in Individual Capacity.**  In acting under the Operative Documents, Trust Company acts solely as trustee hereunder and not in its individual capacity except as otherwise expressly provided herein or therein; and, except as provided herein or in any other Operative Document, all Persons having any claim against Trust Company, Owner Trustee or the Trust by reason of the transactions contemplated by the Operative Documents shall look only to the Trust Estate for payment or satisfaction thereof, except as

specifically provided in this Article VII and except to the extent that Trust Company shall have acted in its individual capacity.

      **SECTION 7.07**   <u>Book and Records; Tax Returns</u>.   Owner Trustee shall be responsible for the keeping of all customary books and records relating to the receipt and disbursement of all monies under this Agreement or any agreement contemplated hereby. Owner Trustee shall file an application with the Internal Revenue Service for a taxpayer identification number with respect to the Trust created hereby and prepare or cause to be prepared and sign and/or file at the written instruction of Owner Participant, the federal fiduciary tax return with respect to Taxes due and payable by the Trust created hereby in connection with the transactions contemplated hereby or by any other Operative Document; provided, however, that Owner Trustee shall send a copy of the completed return to Owner Participant not more than 60 nor less than 10 Business Days prior to the due date of the return, assuming that Owner Participant has made a timely request for such return. Owner Participant, upon request by Owner Trustee, shall furnish Owner Trustee with all such information as may be reasonably required from Owner Participant in connection with the preparation of such tax returns. Owner Trustee shall keep copies of all returns delivered to or filed by it. Notwithstanding the foregoing, Trust Company will, at its own expense, prepare or cause to be prepared, executed and filed, all income tax returns required to be filed by Trust Company with respect to taxes upon, based upon or measured by the receipt (actual, imputed or accrued, direct or indirect) by Trust Company of any fees, commission or other compensation paid to Trust Company in connection with any of the transactions contemplated by the Operative Documents. Owner Participant agrees to provide to Trust Company the taxpayer identification number of Owner Participant and, in the case of any transfer by Owner Participant of its interest hereunder, the taxpayer identification number, name and address of the transferee and a specification of the percentage interest being transferred.

      **SECTION 7.08**   <u>Fixed Investment Trust</u>.   Notwithstanding anything herein to the contrary, Owner Trustee shall not be authorized and shall have no power to "vary the investment" of Owner Participant within the meaning of Treasury Regulation Section 301.7701-4(c)(1).

## ARTICLE VIII.
## INDEMNIFICATION OF TRUST COMPANY BY OWNER PARTICIPANT

      **SECTION 8.01**   <u>Owner Participant to Indemnify Trust Company</u>.   Owner Participant agrees to assume liability for, and to indemnify, protect, save and keep harmless Trust Company and its successors, assigns from and against, any and all liabilities, obligations, losses, damages, penalties, taxes (excluding any taxes payable by Trust Company based on or measured by any compensation received by Trust Company for its services hereunder), claims, actions, suits, costs, expenses or disbursements (including reasonable legal fees and expenses), (collectively, "*Expenses*") of any kind and nature whatsoever which may be imposed on, incurred by or asserted against Trust Company (but only if and to the extent Trust Company is not indemnified therefor by Amtrak under the Lease or under any Operative Document or by any other Person within a reasonable time after demand therefor) in any way relating to or arising out of the Trust Estate or any of the properties included therein and the administration of the Trust Estate or the action or inaction of Owner Trustee hereunder or under the Operative Documents, except only that Owner Participant shall not be required to indemnify Trust Company for

Expenses (i) arising or resulting from any of the matters described in the third sentence of Section 7.01 (the provisions of which third sentence, for the purposes of this Section 8.01, will apply to Owner Trustee as well as to the Trust Company), (ii) attributable to acts or events that occur after the termination of this Agreement and the completion of the actions to be taken by Owner Trustee pursuant to Section 9.03 hereof following such termination, (iii) arising out of or resulting from the failure by Trust Company to perform or observe any agreements, covenants or conditions on its part to be performed or observed in any of the Operative Documents or to apply funds in accordance herewith or resulting because any representation or warranty of Trust Company contained in any Operative Document proves to be untrue or inaccurate (iv) otherwise excluded by the terms of Section 6.2(i) of the Participation Agreement from Amtrak's general indemnity obligations to Trust Company (disregarding for purposes of this Section 8.01, clauses (a), (d) (to the extent attributable to Owner Participant), (f) (to the extent attributable to Owner Participant or an Owner Participant's Lien), and (i) (to the extent such amendments, supplements, waivers or consents are attributable to Owner Participant) or otherwise excluded by the terms of Section 6.1(i) of the Participation Agreement from Amtrak's general tax indemnity to Trust Company (disregarding for purposes of this Section 8.01, clauses (c) (to the extent a transfer is requested by Owner Participant) (e) and (m) (to the extent attributable to Owner Participant or an Owner Participant Lien) of Section 6.1(i) of the Participation Agreement), and (v) arising as a result of Taxes based on or measured by compensation requested by Trust Company, for acting as Owner Trustee or for Taxes solely resulting from the gross negligence or willful misconduct of Trust Company or Owner Trustee; provided, however, that no Expenses shall be excluded from indemnification hereunder if such Expense is (a) the result of any breach of Owner Participants' representations, warranties or covenants set forth in any of the Operative Documents or (b) any act or omission of Owner Participant or Owner Trustee in accordance with the specific written directions of Owner Participant, unless, in each case such Expense is the result of any of the circumstances described in clauses (i) and (v) above.  Notwithstanding anything herein or in any other Operative Document to the contrary, Owner Trustee shall not be entitled to make any claim against Owner Participant or the Trust Estate for any Expenses, unless and until (i) Owner Trustee or Trust Company has made written demand therefor to Amtrak or such other Person, as the case may be, in accordance with the applicable terms of the Operative Documents and used its reasonable best efforts to collect all such amounts from such party or beneficiary and (ii) a reasonable period of time after written demand therefor has passed (but no less than 30 days thereafter) without payment to Owner Trustee of such Expenses.  Each of the Expenses shall be evidenced by appropriate bills or invoices and approved by Owner Participant prior to Owner Trustee's incurring the same (if reasonably practicable), and Owner Participant shall have the right to receive and review any substantiation relating to any Expenses as it may reasonably request prior to approving the same for the purposes hereof.  Owner Participant shall be subrogated to any right of the Person indemnified pursuant to this Section 8.01 in respect of the matter as to which such indemnity was paid.  Should Owner Trustee or Trust Company, as the case may be, receive any refund, in whole or in part, with respect to any of the liabilities or obligations constituting Expenses, paid by Owner Participant pursuant to the terms of this Agreement or any other Operative Document, such Indemnitee or payee, as the case may be, promptly shall pay to Owner Participant the full amount of such refund (but not exceeding the amount of Expenses so paid by Owner Trustee), together with any interest actually received with respect to such amount for the period between the date on which such indemnification or other payment was made and the date on which such refund was received.

## ARTICLE IX.
## TERMINATION OF TRUST AGREEMENT

**SECTION 9.01   Termination of Trust Agreement.**  This Agreement and the Trust shall terminate and the Trust Estate shall, subject to the Indenture and Article V hereof, be distributed to Owner Participant, and this Agreement shall be of no further force or effect, upon the earlier to occur of (i) the written request of Owner Participant following the sale or other final disposition by Indenture Trustee or Owner Trustee, as the case may be, of all property constituting any part of the Trust Indenture Estate and the Trust Estate and the final distribution by Indenture Trustee or Owner Trustee, as the case may be, of all monies or other property or proceeds constituting any part of the Trust Indenture Estate and the Trust Estate in accordance with the terms of the Indenture and Article V hereof, if at such time Amtrak shall have fully complied with all the terms of the Lease and the Participation Agreement and (ii) 110 years after the date of the earlier execution of this Agreement by either party hereto, but if this Agreement and the trust created hereby shall be or become valid under Applicable Law for a period subsequent to the 110th anniversary of such execution (or, without limiting the generality of the foregoing, if legislation shall become effective providing for the validity or permitting the effective grant of such rights, privileges and options for a period in gross exceeding the period for which such rights, privileges and options are hereinabove stated to extend and be valid), then such rights, privileges or options shall not terminate as aforesaid but shall extend to and continue in effect, but only if such nontermination and extension shall then be valid under Applicable Law, until such time as the same shall, under Applicable Law, cease to be valid.

**SECTION 9.02   Termination at Option of Owner Participant.**  The provisions of Section 9.01 notwithstanding, this Agreement and the Trust shall terminate and the Trust Estate shall be distributed to Owner Participant, and this Agreement shall be of no further force and effect, upon the election of Owner Participant by notice to Owner Trustee, if such notice shall be accompanied by the written agreement of Owner Participant assuming all further obligations of the Trust under or contemplated by the Operative Documents and all other obligations of Owner Trustee incurred by it as trustee hereunder; provided, however, that no such election shall be effective until the payment and performance of all of the obligations under the Notes and the Indenture and the Lien and security interest of the Indenture on the Trust Indenture Estate shall have been released and the Lease shall have been terminated in accordance with its terms.  Such written agreement shall be reasonably satisfactory in form and substance to Owner Trustee and shall release Owner Trustee from all further obligations of Owner Trustee hereunder and under the Delaware Act, the agreements and other instruments mentioned in the preceding sentence.  Nothing herein entitles the Trust and the winding up of the Trust to be released from any of its obligations under any of the Operative Documents to the extent such obligations arose or existed prior to the effective date of the assumption by Owner Participant provided in this Section 9.02.

**SECTION 9.03   Actions by Owner Trustee upon Termination.**  Upon termination of this Agreement and the Trust pursuant to Section 9.01 or 9.02 and the winding up of the Trust, Owner Trustee shall (i) take such action as may be requested by Owner Participant to transfer the Trust Estate to Owner Participant (or such other party as Owner Participant shall direct in writing), including, without limitation, the execution of instruments of transfer or

assignment with respect to any of the Operative Documents to which the Trust is a party, and (ii) execute and file with the Secretary of State, at the direction of Owner Participant, a certificate of cancellation in the form required by Section 3810(d) of the Delaware Act.

## ARTICLE X.
## SUCCESSOR OWNER TRUSTEES, CO-OWNER
## OWNER TRUSTEES AND SEPARATE OWNER TRUSTEES

SECTION 10.01     Resignation   or   Removal   of   Owner   Trustee; Appointment of Successor.

(a)     Resignation or Removal.  Owner Trustee or any successor Owner Trustee may resign at any time without cause by giving at least 60 days' prior written notice to Owner Participant, with copies thereof to each Note Holder, Indenture Trustee and Amtrak, such resignation to be effective upon the acceptance of appointment by the successor Owner Trustee under Section 10.01(b) hereof.  In addition, Owner Participant may at any time remove Owner Trustee without cause by an instrument in writing delivered to Owner Trustee, with copies thereof to each Note Holder, Indenture Trustee and Amtrak, such removal to be effective upon the acceptance of appointment by the successor Owner Trustee under Section 10.01(b) hereof. In the case of the resignation or removal of Owner Trustee, Owner Participant may appoint a successor Owner Trustee by an instrument signed by Owner Participant.  If a successor Owner Trustee shall not have been appointed within 30 days after the giving of written notice of such resignation or the delivery of the written instrument with respect to such removal, Owner Trustee or Owner Participant may apply to any court of competent jurisdiction to appoint a successor Owner Trustee to act until such time, if any, as a successor shall have been appointed as above provided.  Any successor Owner Trustee so appointed by such court shall immediately and without further act be superseded by any successor Owner Trustee appointed as above provided within one year from the date of the appointment by such court.

(b)     Acceptance of Appointment.  Any successor Owner Trustee, however appointed, shall execute and deliver to the predecessor Owner Trustee, with copies thereof to Owner Participant, Indenture Trustee and Amtrak, an instrument accepting such appointment, and thereupon such successor Owner Trustee, without further act, shall become vested with all the estates, properties, rights, powers, duties and trusts of the predecessor Owner Trustee in the trust hereunder with like effect as if originally named Owner Trustee herein; but nevertheless, upon the written request of such successor Owner Trustee, such predecessor Owner Trustee shall execute and deliver an instrument transferring to such successor Owner Trustee, upon the trust herein expressed, all the estates, properties, rights, powers and trust of such predecessor Owner Trustee, and such predecessor Owner Trustee shall duly assign, transfer, deliver and pay over to such successor Owner Trustee all monies or other property then held by such predecessor Owner Trustee upon the trust herein expressed. Upon any such transfer by a predecessor Owner Trustee, such predecessor Owner Trustee shall provide the successor Owner Trustee and Owner Participant an accounting of the Trust Estate and the trust hereunder.  The successor Owner Trustee shall prepare and file or record in every public office where any of the Operative Documents or evidence thereof shall have been filed and recorded appropriate evidence of such transfer, in the manner and within the time necessary to preserve and protect the interest of

Owner Trustee (and Owner Participant) in the Trust Estate and to preserve, protect and maintain the perfection of the Lien of the Indenture thereon.

(c)    Qualification.  Any successor Owner Trustee, however appointed, shall be a bank or trust company incorporated and doing business within the United States, qualified to act as trustee hereunder pursuant to Section 3807 of the Delaware Act, and having a combined capital and surplus of at least $100,000,000, if there be such an institution willing, able and legally qualified to perform the duties of Owner Trustee hereunder upon reasonable or customary terms.

(d)    Merger; Conversion; Consolidation.  Any corporation into which Trust Company may be merged or converted or with which it may be consolidated, or any corporation resulting from any merger, conversion or consolidation to which Trust Company shall be a party, or any corporation to which substantially all the corporate trust business of Trust Company may be transferred, shall, subject to the terms of Section 10.01(c) hereof, be Owner Trustee hereunder without further act; provided, however, that if Trust Company is not the surviving corporation of such merger, conversion or consolidation operating under the same name, and in the case of any such transfer of all of the corporate trust business of Trust Company, the successor or transferee of Trust Company shall prepare and file or record in every public office where any of the Operative Documents or evidence thereof shall have been filed and recorded appropriate evidence of such succession, name change or transfer, in the manner and within the time necessary to preserve and protect the interest of Owner Trustee (and Owner Participant) in the Trust Estate and to preserve, protect and maintain the perfection of the Lien of the Indenture thereon.

**SECTION 10.02    Co-Owner Trustees and Separate Owner Trustees.** Whenever Owner Trustee or Owner Participant shall deem it necessary or prudent in order either to conform to any law of any jurisdiction in which all or any part of the Trust Estate shall be situated or to make any claim or bring any suit with respect to the Trust Estate or any Operative Document, or shall be advised by counsel satisfactory to it that it is so necessary or prudent, or Owner Trustee shall have been directed to do so by Owner Participant, Owner Trustee and Owner Participant shall execute and deliver an agreement supplemental hereto and all other instruments and agreements, and shall take all other action, necessary or proper to constitute one or more Persons (and Owner Trustee may appoint one or more of its officers) either as co-trustee or co-trustees, jointly with Owner Trustee of all or any part of the Trust Estate, or as separate trustee or separate trustees of all or any part of the Trust Estate, and to vest in such Persons, in such capacity, such title to the Trust Estate or any part thereof, and such rights or duties as may be necessary or desirable, all for such period and under such terms and conditions as are satisfactory to Owner Trustee and Owner Participant.  Notice of any of the foregoing shall be given to Indenture Trustee and Amtrak.  In case any co-trustee or separate trustee shall die, become incapable of acting, resign or be removed, title to the Trust Estate and all rights and duties of such co-trustee or separate trustee shall, so far as permitted by law, vest in and be exercised by Owner Trustee, without the appointment of a successor to such co-trustee or separate trustee.

## ARTICLE XI.
## SUPPLEMENTS AND AMENDMENTS

**SECTION 11.01** <u>**Supplements and Amendments.**</u> At the written request of Owner Participant, but subject to Section 11.02 hereof and Sections 9.3(ii) and 9.7 of the Participation Agreement, this Agreement may be amended, supplemented or otherwise modified by a written instrument signed by Trust Company and Owner Participant, but if in the reasonable opinion of Trust Company any instrument required to be so executed adversely affects any right, duty or liability of, or immunity or indemnity in favor of, Trust Company under this Agreement or any of the documents contemplated hereby to which Trust Company or Owner Trustee is a party, or would cause or result in any conflict with or breach of any terms, conditions or provisions of, or default under, the charter or by-laws of Trust Company or any document contemplated hereby to which Trust Company or Owner Trustee is a party, Trust Company may decline to execute such instrument.

**SECTION 11.02** <u>**Limitation on Amendments.**</u> Notwithstanding Section 11.01 hereof, Trust Company shall not, without the consent of Indenture Trustee, execute any amendment of Article IX or Section 10.01(c) or any other amendment that might result in the Trust being terminated prior to the satisfaction and discharge of the Lien and security interest of the Indenture on the Trust Indenture Estate or prior to the payment in full of the principal of and premium, if any, and interest on the Secured Notes or that would have a material adverse effect on the Trust Indenture Estate or the holders of the Secured Notes.

## ARTICLE XII.
## TRANSFER OF INTEREST OF OWNER PARTICIPANT

**SECTION 12.01** <u>**Transfer of Interest of Owner Participant.**</u> Subject to the provisions of the Operative Documents, Owner Participant may assign, convey or otherwise transfer all or a portion of its right, title and interest in and to the Trust Estate and any other rights of Owner Participant under the Operative Documents by giving written notice to Owner Trustee at least 10 Business Days prior to such proposed transfer specifying (i) the name and address of the proposed Transferee, and (ii) the effective date of the proposed transfer. Upon any assignment, conveyance or transfer of all or a portion of the interest of Owner Participant to a Person satisfying the requirements of Section 10.1(i)(a) of the Participation Agreement, the transferor Owner Participant shall, upon such assignment, conveyance or transfer, be released and discharged without further act or formality whatsoever from the indemnification obligations imposed under Section 8.01 hereof arising after such transfer date. Owner Trustee shall not be on notice of or otherwise be bound by any such assignment, conveyance or transfer until it shall have received either written notice thereof or an executed counterpart of the instrument of such assignment, conveyance or transfer.

**SECTION 12.02** <u>**Transferee's Agreement.**</u> No assignment, conveyance or other transfer pursuant to Section 12.01 hereof shall be effective unless the Transferee shall have executed and delivered to Trust Company an instrument containing the Transferee's agreement to be bound by the terms of this Agreement.

## ARTICLE XIII.
## MISCELLANEOUS

**SECTION 13.01**     **No Legal Title to Trust Estate in Owner Participant.** Owner Participant shall not have legal title to any part of the Trust Estate or any other rights of Owner Trustee or the Trust under the Operative Documents.  No transfer, by operation of law or otherwise, of any right, title and interest of Owner Participant in and to the Trust Estate or any other rights of Owner Trustee under the Operative Documents shall operate to terminate this Agreement or the Trust or entitle any successors or transferee of Owner Participant to an accounting or to the transfer of legal title to any part of the Trust Estate or any other rights of Owner Trustee or the Trust under the Operative Documents.

**SECTION 13.02**     **Sale of Equipment by Owner Trustee Binding.**  Any assignment, sale, transfer or other conveyance of the interest held by the Trust or by Owner Trustee on behalf of the Trust in the Units made pursuant to the terms hereof or of the Lease, the Participation Agreement or any other Operative Document shall bind Owner Participant and shall be effective to transfer or convey all right, title and interest of the Trust and Owner Participant in and to the such Units.  No purchaser or other grantee shall be required to inquire as to the authorization, necessity, expediency or regularity of such assignment, sale, transfer or conveyance or as to the application of any sale or other proceeds with respect thereto by Owner Trustee.

**SECTION 13.03**     **Limitations on Rights of Others.**  Except in respect of Sections 2.01, 2.02, 5.01(a), 7.01, 9.01, 9.02, 10.1(a) and 11.02 hereof, nothing herein, whether expressed or implied, shall be construed to give any Person other than Trust Company and Owner Participant any legal or equitable right, remedy or claim under or in respect of this Agreement, any covenants, conditions or provisions contained herein or the Trust Estate.  It is the intention of the parties hereto that the Trust created by this Trust Agreement constitutes a statutory business trust governed by the Delaware Act, taxable as a grantor trust and not as a corporation or an association taxable as a corporation, and each of the parties hereto covenant and agree that it will not take any action that would result in the Trust being taxed as other than a grantor trust.

**SECTION 13.04**     **Notices.**  Any notice, request or other communication hereunder shall be in writing and, if mailed, shall be deemed to be duly given or made when given or made in accordance with the Participation Agreement.

**SECTION 13.05**     **Severability.**  Any provision hereof that is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability in any jurisdiction shall not invalidate or render unenforceable such provision in any other jurisdiction.

**SECTION 13.06**     **Limitation on Owner Participant's Liability.**  Owner Participant shall not have any liability for the performance of this Agreement except as expressly set forth herein.

**SECTION 13.07** <u>Separate Counterparts</u>. This Agreement may be executed in any number of counterparts and by the different parties hereto on separate counterparts (or upon separate signature pages bound together into one or more counterparts), each of which when so executed and delivered shall be an original, but all such counterparts shall together constitute but one and the same instrument.

**SECTION 13.08** <u>Successors and Assigns</u>. All covenants and agreements contained herein shall be binding upon, and inure to the benefit of, Trust Company, Owner Trustee and its successors and assigns, and Owner Participant, its successors and its assigns, all as herein provided. Any request, notice, direction, consent, waiver or other instrument or action by Owner Participant shall bind its successors and assigns.

**SECTION 13.09** <u>Headings</u>. The headings of the various Articles and Sections herein are for convenience of reference only and shall not define or limit any of the terms or provisions hereof.

**SECTION 13.10** <u>GOVERNING LAW</u>. THIS TRUST AGREEMENT SHALL IN ALL RESPECTS BE GOVERNED BY, AND CONSTRUED IN ACCORDANCE WITH, THE LAWS OF THE STATE OF DELAWARE, INCLUDING ALL MATTERS OF CONSTRUCTION, VALIDITY AND PERFORMANCE.

**SECTION 13.11** <u>Performance by Owner Participant</u>. Any obligation of the Trust hereunder or under the Lease or any other document contemplated herein may be performed by Owner Participant, and any such performance shall not be construed as a revocation of the Trust.

**SECTION 13.12** <u>Waivers</u>. No term or provision hereof may be changed, waived, discharged or terminated orally, but only by an instrument in writing entered into in compliance with the terms hereof; and any waiver of the terms hereof shall be effective only in the specific instance and for the specific purpose given.

**SECTION 13.13** <u>Administration of Trust</u>. The principal place of administration of the trust created by this Agreement shall be in Wilmington, Delaware.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed by their respective officers thereunto duly authorized as of the day and year first above written.

WILMINGTON TRUST COMPANY

By: _____

Name:
Title:

**_W. CHRIS SPONENBERG_**
**_ASSISTANT VICE PRESIDENT_**

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly executed by their respective officers thereunto duly authorized as of the day and year first above written.

HNB INVESTMENT CORP.

By: _Joan D. Woodroof_

Name: Joan D. Woodroof

Title: Authorized Signatory

<u>EXHIBIT A</u>

**CERTIFICATE OF TRUST**

**OF**

**AMTRAK TRUST HS-EDC-1**

THIS CERTIFICATE OF TRUST OF AMTRAK TRUST HS-EDC-1 (the "*Trust*") is being duly executed and filed by the undersigned on behalf of the Trust to create a business trust under the Delaware Business Trust Act (12 Del. <u>Code</u> §3801 <u>et. Seq.</u>) (the "Act").

1. <u>Name</u>.  The name of the business trust being formed hereby is AMTRAK TRUST HS-EDC-1.

2. <u>Trustee</u>.  The name and business address of the trustee of the Trust with its principal place of business in the State of Delaware is as follows:

    Wilmington Trust Company
    Rodney Square North
    1110 North Market Street
    Wilmington, DE  19890-0001
    Attn:  Corporate Trust Administration

IN WITNESS WHEREOF, the undersigned has duly executed this Certificate of Trust in accordance with Section 3811(a) of the Act.

WILMINGTON TRUST COMPANY,
not in its individual capacity but solely as trustee of the Trust

By: _____
    Name:
    Title: