# EXHIBIT 21

STATEMENT OF NEW RAILCAR REPORTING MARKS

August 26, 2015

Wilmington Trust Company
1100 N. Market Street
Wilmington, DE 19890-1605
Attn: Mark Brzoska
Attn: Lynette Hilgar

Manufacturers and Traders Trust Company
25 South Charles Street
Mail Code 101-591
Baltimore, MD  21201
Attn: Mr. Robert D. Brown

Ladies and Gentlemen:

Reference is made to (i) that certain Lease of Railroad Equipment (Amtrak Trust HS-EDC-1) dated as of November 6, 2000 (as amended, restated, extended, supplemented or otherwise modified from time to time, the "**Lease**") between Amtrak Trust HS-EDC-1 (the "**Lessor**") and National Railroad Passenger Corporation (the "**Lessee**") and (ii) that certain Trust Indenture and Security Agreement (Amtrak Trust HS-EDC-1) dated as of November 6, 2000 (as amended, restated, extended, supplemented or otherwise modified from time to time, the "**Indenture**") between the Lessor, as owner trustee, and Manufacturers and Traders Trust Company (as successor in interest to Allfirst Bank), not in its individual capacity, but solely as indenture trustee (the "**Indenture Trustee**"). Capitalized terms used herein and not otherwise defined shall have the meaning ascribed to such terms in the Lease.

Pursuant to Section 6 of the Lease, the Lessee hereby gives notice to the Lessor and the Indenture Trustee that the current reporting marks for each Unit identified in Exhibit A hereto have been changed to the new reporting marks set forth in such Exhibit A with respect to such Unit.  In accordance with Section 6 of the Lease, (i) notices, substantially in the forms of Exhibit B and Exhibit C hereto, have been filed at the Surface Transportation Board and the Registrar General of Canada, respectively, to record such new reporting marks with respect to such Units; (ii) UCC Financing Statement Amendments, substantially in the form of Exhibit D hereto, have been filed at the applicable UCC filing offices and (iii) we hereby furnish to you the requisite opinions of counsel with respect to the foregoing, which are attached as Exhibit E hereto.

Please advise if you should have any questions with respect to the foregoing.

[Statement of New Railcar Reporting Marks (EDC-1)]

Sincerely,

**NATIONAL RAILROAD PASSENGER
CORPORATION**

By: _____
Name:  Michael P. McGee
Title:    Treasurer

[Statement of New Railcar Reporting Marks (EDC-1)]

## EXHIBIT A

## RAILCAR REPORTING MARKS

| Old Reporting Mark / Car Operating Number | New Reporting Mark / Car Operating Number |
|---|---|
| AMTK 651 | AMTK 681 |
| AMTK 652 | AMTK 682 |
| AMTK 654 | AMTK 684 |
| AMTK 655 | AMTK 685 |
| AMTK 656 | AMTK 686 |
| AMTK 660 | AMTK 690 |
| AMTK 662 | AMTK 692 |
| AMTK 664 | AMTK 694 |

[Statement of New Railcar Reporting Marks (EDC-1)]

## **EXHIBIT B**

## **STB NOTICE**

[see attached]

National Railroad Passenger Corporation
60 Massachusetts Ave., NE
Washington, DC 20002


August 2₈ 2015


Chief
Section of Administration
Office of Proceedings
Surface Transportation Board
395 E Street, S.W.
Washington, D.C. 20423

Re:     **Change in Railcar Reporting Marks under Recordation Number 23229 (Amtrak Trust HS-EDC-1)**

Dear Section Chief:

     Notice is hereby given of changes to the reporting marks and road numbers identified in the attached schedule(s).

                                      Very truly yours,

By: _____
Name:  Michael P. McGee
Title:   Treasurer


[Amtrak Trust HS-EDC-1]

DISTRICT OF COLUMBIA

I, _____Aeterna A. Peters x_____, a Notary Public of the County and State aforesaid, certify that Michael P. McGee personally appeared before me this day and acknowledged his due execution of the foregoing notice.

WITNESS my hand and official stamp or seal, this 20 day of Aug, 2015.

_____
Notary Public

Commission Expires:

**My Commission Expires**
September 30, 2018

_____

(Seal)



[Amtrak Trust HS-EDC-1]

## SCHEDULE

### Rec. No. 23229

| Old Reporting Mark and Road Number | New Reporting Mark and Road Number |
|---|---|
| AMTK 651 | AMTK 681 |
| AMTK 652 | AMTK 682 |
| AMTK 654 | AMTK 684 |
| AMTK 655 | AMTK 685 |
| AMTK 656 | AMTK 686 |
| AMTK 660 | AMTK 690 |
| AMTK 662 | AMTK 692 |
| AMTK 664 | AMTK 694 |

[Amtrak Trust HS-EDC-1]

[Statement of New Railcar Reporting Marks (EDC-1)]

## **EXHIBIT C**

## **RGC NOTICE**

[see attached]

National Railroad Passenger Corporation
60 Massachusetts Ave., NE
Washington, DC 20002

August 26, 2015

Diane Bélanger
Official Documents Registrar
Industry Canada
Corporations Canada
Office of the Registrar General of Canada
365 Laurier Avenue West, Ottawa ON K1A 0C8
Canada

Re:     **Change in Railcar Reporting Marks**
        **(Debtor: National Railroad Passenger Corporation)**
        **(Debtor: Amtrak Trust HS-EDC-1)**

Dear Ms. Bélanger:

    Notice is hereby given of changes to the reporting marks and road numbers identified in the attached Schedule A and with respect to the documents listed in Schedule B.

                        Very truly yours,

        By:     _____
        Name:   Michael P. McGee
        Title:  Treasurer

[Amtrak Trust HS-EDC-1]

SCHEDULE A

| Old Reporting Mark and Road Number | New Reporting Mark and Road Number |
|---|---|
| AMTK 651 | AMTK 681 |
| AMTK 652 | AMTK 682 |
| AMTK 654 | AMTK 684 |
| AMTK 655 | AMTK 685 |
| AMTK 656 | AMTK 686 |
| AMTK 660 | AMTK 690 |
| AMTK 662 | AMTK 692 |
| AMTK 664 | AMTK 694 |

[Amtrak Trust HS-EDC-1]

SCHEDULE B

| Document Key | Document Title | Document Date | Deposit Date | Document Parties |
|---|---|---|---|---|
| 13039 | Memorandum of Lease of Railroad Equipment | 2000-11-15 | 2000-11-15 | National Railroad Passenger Corporation; Amtrak Trust HS-EDC-1 |
| 13040 | Memorandum of Indenture and Security Agreement | 2000-11-15 | 2000-11-15 | Manufacturers and Traders Trust Company (successor in interest to Allfirst Bank); Amtrak Trust HS-EDC-1 |
| 13330 | Memorandum of Lease Supplement of Railroad Equipment | 2001-05-23 | 2001-05-23 | National Railroad Passenger Corporation; Amtrak Trust HS-EDC-1 |
| 13331 | Memorandum of Indenture and Security Agreement Supplement | 2001-05-23 | 2001-05-23 | Manufacturers and Traders Trust Company (successor in interest to Allfirst Bank); Amtrak Trust HS-EDC-1 |
| 13827 | Memorandum of Lease Supplement of Railroad Equipment | 2001-12-19 | 2001-12-18 | National Railroad Passenger Corporation; Amtrak Trust HS-EDC-1 |
| 13828 | Memorandum of Indenture and Security Agreement Supplement | 2001-12-19 | 2001-12-18 | Manufacturers and Traders Trust Company (successor in interest to Allfirst Bank); Amtrak Trust HS-EDC-1 |

[Amtrak Trust HS-EDC-1]

[Statement of New Railcar Reporting Marks (EDC-1)]

## **EXHIBIT D**

## **UCC FINANCING STATEMENT AMENDMENT**

[see attached]

## UCC FINANCING STATEMENT AMENDMENT
FOLLOW INSTRUCTIONS

| A. NAME & PHONE OF CONTACT AT FILER (optional) |
| B. E-MAIL CONTACT AT FILER (optional) |
| C. SEND ACKNOWLEDGMENT TO:  (Name and Address) |

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE NUMBER | 1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13 |
| **0077284 filed as of 11/15/2000** | |

2. ☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

3. ☐ ASSIGNMENT (full or partial): Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

4. ☐ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. ☐ PARTY INFORMATION CHANGE:

Check one of these two boxes:    AND   Check one of these three boxes to:

This Change affects ☐ Debtor or ☐ Secured Party of record    ☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c    ☐ ADD name: Complete item 7a or 7b, and item 7c    ☐ DELETE name: Give record name to be deleted in item 6a or 6b

6. CURRENT RECORD INFORMATION:  Complete for Party Information Change - provide only one name (6a or 6b)

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

7. CHANGED OR ADDED INFORMATION:  Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 7a. ORGANIZATION'S NAME | | |
|---|---|---|
| OR 7b. INDIVIDUAL'S SURNAME | | |
| INDIVIDUAL'S FIRST PERSONAL NAME | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

8. ☑ COLLATERAL CHANGE:  Also check one of these four boxes: ☐ ADD collateral   ☐ DELETE collateral   ☑ RESTATE covered collateral   ☐ ASSIGN collateral

Indicate collateral:

**Exhibit A attached to the initial Financing Statement is hereby replaced with Exhibit A attached hereto.**

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:  Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR **Manufacturers and Traders Trust Company** | | | |
| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

10. OPTIONAL FILER REFERENCE DATA:
**To be filed with the Delaware Secretary of State**     **Debtor: Amtrak Trust HS-EDC-1**     **(EDC-1)**

International Association of Commercial Administrators (IACA)

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)

## EXHIBIT A TO FINANCING STATEMENT

Debtor:  **AMTRAK TRUST HS-EDC-1,**
a Delaware business trust

Address:   Wilmington Trust Company
Rodney Square North
1100 North Market Street
Wilmington, Delaware 19890-0001
Attention: Corporate Trust Administration

Secured Party:  **MANUFACTURERS AND TRADERS TRUST COMPANY,**
as Indenture Trustee under a Trust Indenture and Security Agreement (Amtrak Trust HS-EDC-1) dated as of November 6, 2000

Address:   25 South Charles Street
Mail Code 101-591
Baltimore, MD 21201
Attention: Corporate Trust Administration

### Description of Collateral

This Financing Statement covers all estate, right, title and interest of the Debtor in, to and under the following described property, rights, interests and privileges, whether now or hereafter acquired, other than Excepted Payments (such property, rights and privileges as are conveyed pursuant to the Granting Clause of the Trust Indenture and Security Agreement (as defined below) but in any event and always excluding Excepted Payments and subject to Excepted Rights, being referred to as the "Collateral") (unless otherwise defined herein, the capitalized terms herein being used as defined in or by reference in that certain Trust Indenture and Security Agreement (Amtrak Trust HS-EDC-1), dated as of November 6, 2000 (the "Indenture"), between Debtor and the Secured Party, as Indenture Trustee:

(1)      the Equipment and all replacements thereof and substitutions therefor in which Owner Trustee shall from time to time acquire an interest as provided in the Indenture and in the Lease, all as more particularly described in the Indenture Supplements executed and delivered with respect to the Equipment or any such replacements or substitutions therefor, as provided in the Indenture (including without limitation those Units described in Schedule I attached hereto), and the interest of Owner Trustee in all records, logs and other documents at any time maintained by Lessee with respect to the foregoing property;

(2)      the French Leasehold Interests, each French Lease, each Assignment (Cession), each Consent to Assignment (Cession), each Lessor Security Agreement, each Escrow Agreement, each Amtrak Delegation and each Amtrak Bill of Sale, including, without limitation, all rights of Owner Trustee to exercise any election or option (including the election to give notice pursuant to Sections 4.1, 4.2.1 and 4.3 of each French Lease) or to make any decision or

determination or to give or receive any notice, consent, waiver or approval or to take any other action under or in respect of any such document or to accept, surrender or redelivery of the Equipment or any part thereof, as well as all the rights, powers and remedies on the part of Owner Trustee, whether acting under any such document or by statute or at law or in equity or otherwise, arising out of any Lease Event of Default or otherwise;

(3)     the Lease and all Rent thereunder, including, without limitation, all amounts of Base Rent, Supplemental Rent, and payments of any kind thereunder or in respect thereof, the Purchase Agreement (to the extent assigned by each Assignment of Warranties), each Assignment of Warranties, and each Consent, including without limitation, in the case of each such Operative Document (other than with respect to all Excepted Payments and Excepted Rights), (x) all amounts or other payments of any kind paid or payable by the obligor(s) thereunder or in respect thereof to Owner Trustee whether in its capacity as Lessor or otherwise as well as all rights of Owner Trustee to enforce payment of any such amounts or payments, (y) all rights of Owner Trustee to exercise any election or option or to make any decision or determination or to give or receive any notice, consent, waiver or approval or to take any other action under or in respect of any such document or to accept surrender or redelivery of the Equipment or any part thereof, as well as all the rights, powers and remedies on the part of Owner Trustee, whether acting under any such document or by statute or at law or in equity, or otherwise, arising out of any Lease Event of Default or otherwise, and (z) any right to restitution from Lessee in respect of any determination of invalidity of any such document;

(4)     all rents, issues, profits, revenues and other income of the property subjected or required to be subjected to the Lien of the Indenture;

(5)     all insurance and requisition proceeds with respect to the Equipment or any part thereof including but not limited to the insurance required under Section 8 of the Lease;

(6)     all moneys and securities now or hereafter paid or deposited or required to be paid or deposited to or with Indenture Trustee by or for the account of Owner Trustee pursuant to any term of any Operative Document and held or required to be held by Indenture Trustee hereunder; and

(7)     all proceeds of the foregoing;

BUT EXCLUDING from the foregoing and from the Trust Indenture Estate all Excepted Payments and Excepted Rights, and the rights to enforce, collect, settle or compromise the same, and SUBJECT TO the rights of Owner Trustee and Owner Participant under Section 6.10 of the Indenture.

Concurrently with the delivery hereof, Owner Trustee is delivering to Indenture Trustee the executed counterpart of the Lease (including each Lease Supplement delivered on the first Closing Date) identified for Uniform Commercial Code purposes as the sole chattel paper original of the Lease (to which a chattel paper receipt is attached), together with executed copies of the Indenture Documents. On each subsequent Closing Date, Owner Trustee shall deliver to Indenture Trustee the executed counterpart of the Lease Supplement with respect to the Units delivered on such Closing Date identified for Uniform Commercial Code purposes as the sole

2

chattel paper original of the Lease Supplement (to which a chattel paper receipt shall be attached).

## SCHEDULE I

## DESCRIPTION OF UNITS-LOCOMOTIVES AND TRAINSETS

### (AMTRAK TRUST HS-EDC-1)

| Equipment Type | Amtrak Equipment Numbers |
|---|---|
| Three (3) Dual Cab, High Horsepower Electric Locomotives: | |
| Locomotive | AMTK 684 |
| Locomotive | AMTK 685 |
| Locomotive | AMTK 686 |
| One (1) High Speed Trainset consisting of: | |
| Two (2) Power Cars | AMTK 2030 |
| | AMTK 2031 |
| One (1) End Club Car | AMTK 3215 |
| One (1) Bistro Car | AMTK 3302 |
| One (1) End Coach Car | AMTK 3417 |
| Three (3) Coach Cars | AMTK 3549 |
| | AMTK 3554 |
| | AMTK 3555 |
| Three (3) Dual-Cab, High Horsepower Electric Locomotives manufactured by Bombardier Corporation and Alstom Transportation Inc. | AMTK 694 |
| | AMTK 690 |
| | AMTK 692 |

4

| **Equipment Type** | **Amtrak Equipment Numbers** |
|---|---|
| One (1) High-Speed Trainset Number 10 manufactured by Bombardier Corporation and Alstom Transportation Inc., consisting of | |
| Two (2) Power Cars | AMTK 2038 |
| | AMTK 2016 |
| One (1) First Class Car | AMTK 3214 |
| Three (3) Coach Cars | AMTK 3534 |
| | AMTK 3540 |
| | AMTK 3533 |
| One (1) Bistro Car | AMTK 3306 |
| One (1) End Coach Car | AMTK 3413 |
| | |
| High-Speed Trainset Number 12 manufactured by Bombardier Corporation and Alstom Transportation Inc., consisting of: | |
| Two (2) Power Cars | AMTK 2037 |
| | AMTK 2006 |
| One (1) First Class Car | AMTK 3209 |
| Three (3) Coach Cars | AMTK 3516 |
| | AMTK 3528 |
| | AMTK 3538 |
| One (1) Bistro Car | AMTK 3319 |
| One (1) End Coach Car | AMTK 3410 |

NEWYORK/#386041.2

| Equipment Type | Amtrak Equipment Numbers |
|---|---|
| **High-Speed Trainset Number 13 manufactured by Bombardier Corporation and Alstom Transportation Inc., consisting of:** | |
| Two (2) Power Cars | AMTK 2033 |
| | AMTK 2027 |
| One (1) First Class Car | AMTK 3213 |
| Three (3) Coach Cars | AMTK 3529 |
| | AMTK 3537 |
| | AMTK 3552 |
| One (1) Bistro Car | AMTK 3318 |
| One (1) End Coach Car | AMTK 3408 |
| **High-Speed Trainset Number 14 manufactured by Bombardier Corporation and Alstom Transportation Inc., consisting of:** | |
| Two (2) Power Cars | AMTK 2015 |
| | AMTK 2010 |
| One (1) First Class Car | AMTK 3208 |
| Three (3) Coach Cars | AMTK 3525 |
| | AMTK 3536 |
| | AMTK 3527 |
| One (1) Bistro Car | AMTK 3317 |

6

| **Equipment Type** | **Amtrak Equipment Numbers** |
|---|---|
| One (1) End Coach Car | AMTK 3418 |
| Two (2) Dual Cab, High Horsepower Electric Locomotives manufactured by Bombardier Corporation and Alstom Transportation Inc. | AMTK 681 AMTK 682 |
| High-Speed Trainset Number 1 manufactured by Bombardier Corporation and Alstom Transportation Inc., consisting of: | |
| Two (2) Power Cars | AMTK 2018 AMTK 2004 |
| One (1) First Class Car | AMTK 3217 |
| Three (3) Coach Cars | AMTK 3505 AMTK 3500 AMTK 3511 |
| One (1) Bistro Car | AMTK 3304 |
| One (1) End Coach Car | AMTK 3405 |

Except as amended hereby, the UCC-1 shall continue in full force and effect as originally filed.

7

███████████
███████████
███████████
███████████

## UCC FINANCING STATEMENT AMENDMENT
FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)

B. E-MAIL CONTACT AT FILER (optional)

C. SEND ACKNOWLEDGMENT TO:   (Name and Address)

⌐                                        ⌐

∟                                        ∟

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

| 1a. INITIAL FINANCING STATEMENT FILE NUMBER | 1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS Filer: *attach* Amendment Addendum (Form UCC3Ad) *and* provide Debtor's name in item 13 |
|---|---|
| **2000105426 filed as of 11/15/2000** | |

2. ☐ **TERMINATION:** Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

3. ☐ **ASSIGNMENT (full or partial):** Provide name of Assignee in item 7a or 7b, *and* address of Assignee in item 7c *and* name of Assignor in item 9
For partial assignment, complete items 7 and 9 *and* also indicate affected collateral in item 8

4. ☐ **CONTINUATION:** Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. ☐ **PARTY INFORMATION CHANGE:**

Check *one* of these two boxes:         *AND*   Check *one* of these three boxes to:

This Change affects ☐ Debtor *or* ☐ Secured Party of record
☐ CHANGE name and/or address: Complete item 6a or 6b; *and* item 7a or 7b *and* item 7c
☐ ADD name: Complete item 7a or 7b, *and* item 7c
☐ DELETE name: Give record name to be deleted in item 6a or 6b

6. CURRENT RECORD INFORMATION:  Complete for Party Information Change - provide only *one* name (6a or 6b)

| 6a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR  6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

7. CHANGED OR ADDED INFORMATION:  Complete for Assignment or Party Information Change - provide only *one* name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

| 7a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR  7b. INDIVIDUAL'S SURNAME | | | |
| INDIVIDUAL'S FIRST PERSONAL NAME | | | |
| INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | | | SUFFIX |

| 7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY |
|---|---|---|---|---|

8. ☑ **COLLATERAL CHANGE:**  Also check *one* of these four boxes:   ☐ ADD collateral   ☐ DELETE collateral   ☑ RESTATE covered collateral   ☐ ASSIGN collateral

Indicate collateral:

**Exhibit A attached to the initial Financing Statement is hereby replaced with Exhibit A attached hereto.**

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT:  Provide only *one* name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor

| 9a. ORGANIZATION'S NAME | | | |
|---|---|---|---|
| OR  **Manufacturers and Traders Trust Company** | | | |
| 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX |

10. OPTIONAL FILER REFERENCE DATA:
**DC Recorder of Deeds     Debtor: National Railroad Passenger Corporation                    (EDC-1)**

International Association of Commercial Administrators (IACA)
FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)

**EXHIBIT A TO FINANCING STATEMENT**

| | |
|---|---|
| Lessee/Debtor: | **NATIONAL RAILROAD PASSENGER CORPORATION (Amtrak)** |
| | Address:   60 Massachusetts Ave., NE<br>Washington, DC 20002<br>Attention:  Treasurer |
| Lessor/Assignor and Secured Party: | **AMTRAK TRUST HS-EDC-1,**<br>a Delaware business trust |
| | Address:   Wilmington Trust Company<br>Rodney Square North<br>1100 North Market Street<br>Wilmington, Delaware 19890-0001<br>Attention:  Corporate Trust Administration |
| Assignee: | **MANUFACTURERS AND TRADERS TRUST COMPANY,**<br>as Indenture Trustee under a Trust Indenture and Security Agreement (Amtrak Trust HS-EDC-1) dated as of November 6, 2000 |
| | Address:   25 South Charles Street<br>Mall Code 101-591<br>Baltimore, Maryland 21201 |
| | Attention:  Corporate Trust Administration |

**Description of Collateral**

This Financing Statement covers all right, title and interest of Lessee in and to the properties, rights, interests and privileges described below (collectively, the "Collateral") (unless otherwise defined herein, the capitalized terms herein being used as defined in Annex A to that certain Lease of Railroad Equipment (Amtrak Trust HS-EDC-1) (the "Lease"), dated as of November 6, 2000, between Secured Party, as Lessor, and Debtor, as Lessee):

1.   All of Debtor's right, title and interest in the railcars from time to time made subject to the Lease by the execution and delivery by Debtor and Secured Party of a Lease Supplement, including, without limitation, Lease Supplements No. 1 through No. 6, inclusive, in accordance with the terms of the Lease, as the same are now and will hereafter be constituted, together with related appliances, parts, accessories, appurtenances, additions, improvements and other equipment or components of any nature installed thereon, including any Replacement Units substituted for Units in accordance with Section 7.2 of the Lease (collectively, the "Units"), including, without limitation, those Units described in Schedule I attached hereto; and

2.   All proceeds of the foregoing.

1

NOTE:     The filing of this financing statement is precautionary and the Lease is a true lease and is not intended by the parties thereto to create a security interest in the property described herein in favor of Lessor.

Executed counterpart copies of the documents referred to in the foregoing description of property are on file at the offices of the Assignee set forth above and information concerning the interests covered by this statement may be obtained from such office.

2

## SCHEDULE I

### DESCRIPTION OF UNITS-LOCOMOTIVES AND TRAINSETS

### (AMTRAK TRUST HS-EDC-1)

| Equipment Type | Amtrak Equipment Numbers |
|---|---|
| Three (3) Dual Cab, High Horsepower Electric Locomotives: | |
| Locomotive | AMTK 684 |
| Locomotive | AMTK 685 |
| Locomotive | AMTK 686 |
| | |
| One (1) High Speed Trainset consisting of: | |
| Two (2) Power Cars | AMTK 2030 |
| | AMTK 2031 |
| One (1) End Club Car | AMTK 3215 |
| One (1) Bistro Car | AMTK 3302 |
| One (1) End Coach Car | AMTK 3417 |
| Three (3) Coach Cars | AMTK 3549 |
| | AMTK 3554 |
| | AMTK 3555 |
| | |
| Three (3) Dual-Cab, High Horsepower Electric Locomotives manufactured by Bombardier Corporation and Alstom Transportation Inc. | AMTK 694 |
| | AMTK 690 |
| | AMTK 692 |

3

| **Equipment Type** | **Amtrak Equipment Numbers** |
|---|---|
| One (1) High-Speed Trainset Number 10 manufactured by Bombardier Corporation and Alstom Transportation Inc., consisting of | |
| Two (2) Power Cars | AMTK 2038 |
| | AMTK 2016 |
| One (1) First Class Car | AMTK 3214 |
| Three (3) Coach Cars | AMTK 3534 |
| | AMTK 3540 |
| | AMTK 3533 |
| One (1) Bistro Car | AMTK 3306 |
| One (1) End Coach Car | AMTK 3413 |
| | |
| High-Speed Trainset Number 12 manufactured by Bombardier Corporation and Alstom Transportation Inc., consisting of: | |
| Two (2) Power Cars | AMTK 2037 |
| | AMTK 2006 |
| One (1) First Class Car | AMTK 3209 |
| Three (3) Coach Cars | AMTK 3516 |
| | AMTK 3528 |
| | AMTK 3538 |
| One (1) Bistro Car | AMTK 3319 |
| One (1) End Coach Car | AMTK 3410 |

4

| Equipment Type | Amtrak Equipment Numbers |
|---|---|
| High-Speed Trainset Number 13 manufactured by Bombardier Corporation and Alstom Transportation Inc., consisting of: | |
| Two (2) Power Cars | AMTK 2033 |
| | AMTK 2027 |
| One (1) First Class Car | AMTK 3213 |
| Three (3) Coach Cars | AMTK 3529 |
| | AMTK 3537 |
| | AMTK 3552 |
| One (1) Bistro Car | AMTK 3318 |
| One (1) End Coach Car | AMTK 3408 |
| High-Speed Trainset Number 14 manufactured by Bombardier Corporation and Alstom Transportation Inc., consisting of: | |
| Two (2) Power Cars | AMTK 2015 |
| | AMTK 2010 |
| One (1) First Class Car | AMTK 3208 |
| Three (3) Coach Cars | AMTK 3525 |
| | AMTK 3536 |
| | AMTK 3527 |
| One (1) Bistro Car | AMTK 3317 |

5

| **Equipment Type** | **Amtrak Equipment Numbers** |
|---|---|
| One (1) End Coach Car | AMTK 3418 |
| Two (2) Dual Cab, High Horsepower Electric Locomotives manufactured by Bombardier Corporation and Alstom Transportation Inc. | AMTK 681<br><br>AMTK 682 |
| High-Speed Trainset Number 1 manufactured by Bombardier Corporation and Alstom Transportation Inc., consisting of: | |
| Two (2) Power Cars | AMTK 2018 |
| | AMTK 2004 |
| One (1) First Class Car | AMTK 3217 |
| Three (3) Coach Cars | AMTK 3505 |
| | AMTK 3500 |
| | AMTK 3511 |
| One (1) Bistro Car | AMTK 3304 |
| One (1) End Coach Car | AMTK 3405 |

Except as amended hereby, the UCC-1 shall continue in full force and effect as originally filed.

6

[Statement of New Railcar Reporting Marks (EDC-1)]

**<u>EXHIBIT E</u>**

**<u>OPINIONS OF COUNSEL</u>**

[see attached]

ALVORD AND ALVORD PLLC
ATTORNEYS AT LAW
1050 SEVENTEENTH STREET, N.W.
SUITE 301
WASHINGTON, D.C.
20036
——
PHONE: (202) 393-2266
FAX: 1-855-600-2836
E-MAIL: alvord@alvordlaw.com
WEBSITE: www.alvordlaw.com

ELIAS C. ALVORD (1942)
ELLSWORTH C. ALVORD (1964)
ROBERT W. ALVORD (2011)

August 28, 2015

To Each of the Addressees Listed
    On Appendix I Attached Hereto

Re:    Amtrak Trust HS-EDC-1

Ladies and Gentlemen:

Reference is made to: (i) the Change in Railcar Reporting Marks under Recordation Number 23229 (Amtrak Trust HS-EDC-1) (the "Change in Railcar Reporting Marks"), dated as of August 26, 2015, by National Railroad Passenger Corporation, Lessee; and (ii) the documents identified in Schedule 1 attached hereto (the "Additional Recorded Documents"), all of which documents appear in the recordation files and records maintained by the Surface Transportation Board (the "Board"), pursuant to the provisions of 49 U.S.C. Section 11301(b) and the regulations thereunder (the "Recordation Files").

Pursuant to your request, we examined the Recordation Files with respect to the eight (8) locomotives bearing AMTK reporting marks and road numbers as set forth on Exhibit A attached hereto (the "Railroad Equipment"). Such examination consisted of a review of railroad rolling stock covered by primary and secondary documents (as defined in 49 C.F.R. Section 1177.1) indexed in the Board's Recordation Register under the names of National Railroad Passenger Corporation, Amtrak Trust HS-EDC-1, Gie Finliner Autan, Gie Finliner Tramontane, Gie Finliner Simoun, Wilmington Trust Company, Manufacturers and Traders Trust Company, Allfirst Bank, Export Development Canada, Export Development Corporation, Bombardier Corporation, Alstom Transportation, Inc. and such recorded documents as we deemed necessary and appropriate in connection with this opinion.

Based upon our examination and review of the Recordation Files, which were completed today at 1:45 p.m., it is our opinion that:

1.    The Change in Railcar Reporting Marks was duly filed and recorded with the Board pursuant to, and in compliance with, the provisions of 49

To Each of the Addressees Listed
   On Appendix I Attached Hereto
August 28, 2015


U.S.C. Section 11301(a) and the regulations thereunder (the "Recordation Provisions") on August 28, 2015 at 1:40 p.m. and was assigned Recordation Number 23229-L.

2.    The Additional Recorded Documents were duly filed and recorded with the Board pursuant to, and in compliance with the Recordation Provisions, on the dates and times set forth in Schedule 1 and were assigned the Recordation Numbers shown therein.

3.    Other than the Change in Railcar Reporting Marks and the Additional Recorded Documents, no document evidencing a lien and encumbrance on, or security interest in, or constituting notice to any person with respect to, the Railroad Equipment appears in the Recordation Files.   All previously recorded documents covering the Railroad Equipment, or any units thereof, have been released of record by the filing and recordation of releases, assignments, terminations or amendments pursuant to, and in compliance with, the Recordation Provisions.

4.    Under the provisions of 49 U.S.C. Section 11301(a), the filing and recordation of the Change in Railcar Reporting Marks and the Additional Recorded Documents, as set forth in paragraphs 1 and 2, constitute notice to, and said documents are enforceable against, all persons and the security interests created therein are deemed perfected in all jurisdictions of the United States; and no other filing, depositing, registering or recording under any law of the United States, a State (or its political subdivisions) or territory or possession of the United States, is necessary to protect the interests of the parties to the foregoing documents in the Railroad Equipment and Leases; and no re-recording, re-filing or re-registering of any of the foregoing documents with the Board is necessary to continue such notice and enforceability under present law and regulations.


Alvord and Alvord PLLC

ALVORD AND ALVORD PLLC

Appendix I


NATIONAL RAILROAD PASSENGER CORPORATION,
*as Lessee*


PHILIP MORRIS CAPITAL CORPORATION
*as Owner Participant*


EXPORT DEVELOPMENT CANADA
(f/k/a EXPORT DEVELOPMENT CORPORATION),
*as Loan Participant*
*and as Equity Guarantor*


MANUFACTURERS AND TRADERS TRUST COMPANY
(as successor in interest to Allfirst Bank),
*as Indenture Trustee*


WILMINGTON TRUST COMPANY,
*not in its individual capacity,*
*except as otherwise expressly set forth herein,*
*but solely as Owner Trustee*

SCHEDULE 1

1.      Memorandum of Lease of Railroad Equipment (Amtrak Trust HS-EDC-1), dated as of November 15, 2000, between Wilmington Trust Company, not in its individual capacity but solely as Owner Trustee, Lessor, and National Railroad Passenger Corporation, filed with the Board on November 15, 2000 at 11:16 a.m. under Recordation Number 23229 (referring to the locomotives listed in Group 1).

2.      Memorandum of Indenture and Security Agreement (Amtrak Trust HS-EDC-1), dated as of November 15, 2000, between Wilmington Trust Company, Owner Trustee, and Allfirst, Indenture Trustee, filed with the Board on November 15, 2000 at 11:17 a.m. under Recordation Number 23229–A (referring to the locomotives listed in Group 1).

3.      Memorandum of Lease Supplement of Railroad Equipment (Amtrak Trust HS-EDC-1), dated as of May 23, 2001, between Wilmington Trust Company, not in its individual capacity but solely as Owner Trustee, Lessor, and National Railroad Passenger Corporation, filed with the Board on May 23, 2001 at 1:09 p.m. under Recordation Number 23229-D (referring to the locomotives listed in Group 2).

4.      Memorandum of Indenture and Security Agreement Supplement (Amtrak Trust HS-EDC-1), dated as of May 23, 2001, between Wilmington Trust Company, Owner Trustee, and Allfirst Bank, Indenture Trustee, filed with the Board on May 23, 2001 at 1:13 p.m. under Recordation Number 23229–E (referring to the locomotives listed in Group 2).

5.      Memorandum of Lease Supplement of Railroad Equipment (Amtrak Trust HS-EDC-1), dated as of December 19, 2001, between Wilmington Trust Company, not in its individual capacity but solely as Owner Trustee, Lessor, and National Railroad Passenger Corporation, filed with the Board on December 18, 2001 at 3:16 p.m. under Recordation Number 23229-H (referring to the locomotives listed in Group 3).

6.      Memorandum of Indenture and Security Agreement Supplement (Amtrak Trust HS-EDC-1), dated as of December 19, 2001, between Wilmington Trust Company, Owner Trustee, and Allfirst Bank, Indenture Trustee, filed with the Board on December 18, 2001 at 3:24 p.m. under Recordation Number 23229–I (referring to the locomotives listed in Group 3).

EXHIBIT A

Group 1 Locomotives

AMTK 684 (previously marked AMTK 654)
AMTK 685 (previously marked AMTK 655)
AMTK 686 (previously marked AMTK 656)

Group 2 Locomotives

AMTK 690 (previously marked AMTK 660)
AMTK 692 (previously marked AMTK 662)
AMTK 694 (previously marked AMTK 664)

Group 3 Locomotives

AMTK 681 (previously marked AMTK 651)
AMTK 682 (previously marked AMTK 652)

**Fasken Martineau DuMoulin LLP**
Barristers and Solicitors
Patent and Trade-mark Agents

www.fasken.com

Suite 1300
55 Metcalfe Street
Ottawa, Ontario, Canada  K1P 6L5

613 236 3882 Telephone
613 230 6423 Facsimile



**Anna Tosto**
Direct 613 696 6887
atosto@fasken.com

August 28, 2015
File No.:  281489.00001

To Each of the Addressees Listed on
Appendix A Attached Hereto

Ladies and Gentlemen:

**Re:    Amtrak Trust HS-EDC-1**

We have acted as special Canadian counsel in connection with the remarking of the railroad equipment described in Schedule A attached hereto ("**Equipment**").  We have examined the following documents ("**Agreements**"):

    (a)      The documents described in Schedule "B"; and

    (b)      Notice ("**Notice**") dated as of August 26, 2015 of National Railroad Passenger Corporation.

In giving the following opinions we are assuming that the Agreements have been duly authorized, executed and delivered and constitute valid and binding obligations of each of the parties thereto enforceable in accordance with their terms under the laws of any jurisdiction which by the terms of the Agreements or at law governs the Agreements.

In giving the opinion set out in paragraph 3 below, we have relied upon the information provided to us by you with respect to the age and history of the Equipment and the search parameters set out in paragraph 3 have been based entirely on such information and without any independent investigation by Fasken Martineau DuMoulin LLP. We have not conducted any searches in the Database (defined below) against any words other than those referred to in paragraph 3.

The database (the "**Database**") maintained by the Office of the Registrar General of Canada (the "**Registrar**") pursuant to Section 105 of the Canada Transportation Act (the "**Act**") is accessed by word search. In giving the opinion set out in paragraph 3 below we have searched the words set out therein. Based on the capability of the Database, our search disclosed all deposits which include such words anywhere in their text.

Based upon the foregoing, we are of the opinion that:

281489.00001/91559103.1

Vancouver     Calgary     Toronto     Ottawa     Montréal     Québec City     London     Paris     Johannesburg



Page 2

1.    The Notice was duly deposited with the Registrar General of Canada pursuant to and in compliance with Section 105 of the Act on the date hereof.  In addition, the Agreements are valid against all persons;

2.    such deposit will protect Manufacturers and Traders Trust Company (as successor in interest to Allfirst Bank) ("**MT**")  in and to the Equipment located in Canada and no other filing, recording or deposit (or giving of notice) or re-filing, re-recording or re-deposit with any federal, provincial or local government or agency thereof will be necessary in order to protect and preserve such rights of MT in Canada or any province or territory thereof;

3.    as of 4:24 p.m. on the date hereof, no document, copy or summary of a document evidencing a currently outstanding lease, mortgage, hypothec, bailment, leasing, deposit or security interest or any amendment or assignment thereof with respect to the Equipment was located in the Database. The foregoing search was limited to a review of deposits bearing (i) an effective date back to January 1, 2000 and (ii) including the words "Amtrak" or "National Railroad Passenger Corporation";

4.    the execution and delivery by the parties of, the performance by the parties of their obligations under, and the consummation by the parties of the transactions contemplated by the Agreements do not require any authorization or approval from, consent of, notice to or filing, registration or qualification with or taking of any other action with respect to any body of the Government of Canada; and

5.    in any proceeding in a court of competent jurisdiction in the Province of Ontario for the enforcement of the Agreements, such court would apply the laws of the State of New York, in accordance with the parties' choice of the laws of the State of New York in the Agreements, to all issues that under the laws of the Province of Ontario are to be determined in accordance with the chosen law of the contract, provided that:

(a)    the parties' choice of the laws of the State of New York is bona fide and legal and there is no reason for avoiding the choice on the grounds of public policy, as such criteria would be applied by the courts in the Province of Ontario; and

(b)    in any such proceeding, and notwithstanding the parties' choice of law, such court:



(I)    will not take judicial notice of the provisions of the laws of the State of New York but will only apply such provisions if they are pleaded and proven by expert testimony;

(II)   will apply the laws of the Province of Ontario and the laws of Canada applicable therein that, under such laws, would be characterized as procedural and will not apply any law of the State of New York that, under the laws of the Province of Ontario and the laws of Canada applicable therein, would be characterized as procedural;

(III)  will apply provisions of the laws of the Province of Ontario and the laws of Canada applicable therein that have overriding effect;

(IV)   will not apply any law of the State of New York if its application would be contrary to public policy, as such term is interpreted under the laws of the Province of Ontario and the laws of Canada applicable therein;

(V)    will not apply any law of the State New York if such application would be characterized under the laws of the Province of Ontario and the laws of Canada applicable therein as the direct or indirect enforcement of a foreign revenue, expropriatory, penal or other public law; and

(VI)   will not enforce the performance of any obligation that is illegal under the laws of any jurisdiction in which the obligation is to be performed.

The foregoing opinions are subject to the following qualifications:

1.    the opinion set out in paragraph 3 above is subject always to such errors as may be occasioned by the Registrar and the Database. Neither the Registrar nor the Database provides error and omissions insurance and each user therefore, including the addressees hereof, relies on the search results at their own risk. Fasken Martineau DuMoulin LLP does not warrant the accuracy or reliability of the said deposit system and in relying on the foregoing opinion, all parties shall acknowledge that Fasken Martineau DuMoulin LLP will not be responsible for errors in such system;



2.    no opinion is expressed in paragraph 3 above with respect to those companies which merged or amalgamated with or otherwise sold all or substantially all of their assets to any of the parties against whom searches were conducted as described in paragraph 3. Similarly, no opinion is expressed in paragraph 3 above with respect to any prior names of such parties;

3.    no opinion is expressed as to the rank or priority of perfection of any interest of any party constituted by the Agreements;

4.    no opinion is expressed as to the title of the Equipment;

5.    the opinions expressed above are limited to the laws of the Province of Ontario and the laws of Canada applicable therein in force on the date hereof; and

6.    documents filed outside the "search period" noted herein will not have been detected by the search reported in paragraph 3 above. For example, because of the configuration of the Database, general security agreements and other documentation including both fixed and floating charge language may have been filed in a party's name outside the "search period".

This opinion is furnished solely for the benefit of the addressees and may not be relied upon by any other person (other than successors and assigns) or used for any other purpose without our prior written consent; provided, however, you may without our consent provide copies to any governmental, regulatory or self regulation authority having or claiming to have jurisdiction over you.  Furthermore, this opinion may be disclosed to prospective Lenders and may be relied upon by parties that become a Lender pursuant to the terms of the Loan Documents (as defined in the Mortgage).

Yours very truly,

**FASKEN MARTINEAU DuMOULIN LLP**

SCHEDULE "A"

DESCRIPTION OF UNITS

| Old Reporting Mark and Road Number | New Reporting Mark and Road Number |
|---|---|
| AMTK 651 | AMTK 681 |
| AMTK 652 | AMTK 682 |
| AMTK 654 | AMTK 684 |
| AMTK 655 | AMTK 685 |
| AMTK 656 | AMTK 686 |
| AMTK 660 | AMTK 690 |
| AMTK 662 | AMTK 692 |
| AMTK 664 | AMTK 694 |



SCHEDULE "B"

| Document Key | Document Title | Document Date | Deposit Date | Document Parties |
|---|---|---|---|---|
| 13039 | Memorandum of Lease of Railroad Equipment | 2000-11-15 | 2000-11-15 | National Railroad Passenger Corporation; Amtrak Trust HS-EDC-1 |
| 13040 | Memorandum of Indenture and Security Agreement | 2000-11-15 | 2000-11-15 | Manufacturers and Traders Trust Company (as successor in interest to Allfirst Bank); Amtrak Trust HS-EDC-1 |
| 13330 | Memorandum of Lease Supplement of Railroad Equipment | 2001-05-23 | 2001-05-23 | National Railroad Passenger Corporation; Amtrak Trust HS-EDC-1 |
| 13331 | Memorandum of Indenture and Security Agreement Supplement | 2001-05-23 | 2001-05-23 | Manufacturers and Traders Trust Company (as successor in interest to Allfirst Bank); Amtrak Trust HS-EDC-1 |
| 13827 | Memorandum of Lease Supplement of Railroad Equipment | 2001-12-19 | 2001-12-18 | National Railroad Passenger Corporation; Amtrak Trust HS-EDC-1 |
| 13828 | Memorandum of Indenture and Security Agreement Supplement | 2001-12-19 | 2001-12-18 | Manufacturers and Traders Trust Company (as successor in interest to Allfirst Bank); Amtrak Trust HS-EDC-1 |

## APPENDIX I

NATIONAL RAILROAD PASSENGER CORPORATION
*as Lessee*

PHILIP MORRIS CAPITAL CORPORATION
*as Owner Participant*

EXPORT DEVELOPMENT CANADA
(f/k/a EXPORT DEVELOPMENT CORPORATION),
*as Loan Participant*
*and as Equity Guarantor*

MANUFACTURERS AND TRADERS TRUST COMPANY
(as successor in interest to Allfirst Bank),
*as Indenture Trustee*

WILMINGTON TRUST COMPANY,
*not in its individual capacity,*
*except as otherwise expressly set forth herein,*
*but solely as Owner Trustee*

# VEDDER PRICE®

1633 BROADWAY
47TH FLOOR
NEW YORK, NEW YORK 10019
T: +1 (212) 407-7700
F: +1 (212) 407-7799

CHICAGO ▪ NEW YORK ▪ WASHINGTON, DC
LONDON ▪ SAN FRANCISCO ▪ LOS ANGELES

August 28, 2015

To the Addressees Listed on Schedule I Attached Hereto

Re:   Amtrak Trust HS-EDC-1 / Change to Identification Numbers of Certain Units

Ladies and Gentlemen:

We have acted as special counsel to National Railroad Passenger Corporation, a corporation organized under the Rail Passenger Services Act (formerly 45 U.S.C. § 501 et seq., now recodified at 49 U.S.C. §§ 24101 et seq. pursuant to Public Law No. 103-272, July 5, 1994 and amended pursuant to Public Law No. 105-134 and Division B of Public Law No. 110-434) (the "Act") and the laws of the District of Columbia, also known as Amtrak ("Lessee") in connection with (a) that certain Participation Agreement (Amtrak Trust HS-EDC-1) dated as of November 6, 2000 (as amended, supplemented and/or otherwise modified from time to time, the "Participation Agreement"), among Lessee, the Owner Participant named therein, Export Development Canada (f/k/a Export Development Corporation), as Loan Participant ("Loan Participant"), Manufacturers and Traders Trust Company (as successor in interest to Allfirst Bank), as Indenture Trustee ("Indenture Trustee"), Wilmington Trust Company, ("Owner Trustee") and Amtrak Trust HS-EDC-1 (the "Trust" or the "Lessor") and (b) that certain Lease of Railroad Equipment (Amtrak Trust HS-EDC-1) dated as of November 6, 2000 (as amended, supplemented and/or otherwise modified from time to time, the "Lease") between the Lessor, as lessor, and the Lessee, as lessee. This opinion is furnished to you at the request of Lessee pursuant to Section 6 of the Lease. Unless otherwise defined herein, capitalized terms used herein shall have the meanings assigned to them in the Participation Agreement or, if not defined therein and such terms are defined in the applicable Uniform Commercial Code (the "UCC"), such terms shall have the meanings set forth in Article 8 or Article 9, as applicable, of the applicable UCC.

In rendering this opinion, we have examined and relied on originals or copies of the following as in effect on the date hereof:

(a)   the Participation Agreement;

(b)   the Lease;

(c)   the Indenture;

VEDDER PRICE.

August 28, 2015
Page 2

(d)     a Notice of Change in Railcar Reporting Marks dated the date hereof (the "Notice") from the Lessee to the Surface Transportation Board;

(e)     a UCC-1 financing statement filed November 15, 2000 against the Lessor in the Office of the Secretary of State of Delaware, as subsequently amended prior to the date hereof (the "Initial Lessor Financing Statement");

(f)     a UCC-3 financing statement amendment to the Initial Lessor Financing Statement, restating the collateral description, to be filed in the Office of the Secretary of State of Delaware (the "Lessor Financing Statement Amendment," and together with the Initial Lessor Financing Statement, collectively, the "Lessor Financing Statement");

(g)     a UCC-1 financing statement filed November 15, 2000 against Lessee in the Office of the Recorder of Deeds of the District of Columbia, as subsequently amended prior to the date hereof (the "Initial Lessee Financing Statement");

(h)     a UCC-3 financing statement amendment to the Initial Lessee Financing Statement, restating the collateral description, to be filed in the Office of the Recorder of Deeds of the District of Columbia (the "Lessee Financing Statement Amendment," and together with the Initial Lessee Financing Statement, collectively, the "Lessee Financing Statement"; the Lessee Financing Statement Amendment together with the Lessor Financing Statement Amendment being collectively referred to herein as the "Financing Statement Amendments"; and the Lessee Financing Statement together with the Lessor Financing Statement being collectively referred to herein as the "Financing Statements"); and

(i)     such other documents, corporate records, certificates and other statements of governmental officials and corporate officers and other representatives of the Lessee as we, in our professional judgment, have deemed necessary or appropriate as a basis for the opinions set forth below (items (a)-(c) above are referred to herein collectively as the "Transaction Documents").

In examining the documents referred to above, we have assumed the genuineness of all signatures, the legal capacity of all natural persons, the authenticity of documents purporting to be originals and the conformity to originals of all documents submitted to us as copies.  As to questions of fact material to our opinion, we have relied (without investigation or independent confirmation) upon the representations contained in the Transaction Documents and on certificates and other communications from public officials, officers and transfer agents of Lessee.  We have also assumed the due authorization, execution and delivery of the Transaction Documents by each of the parties thereto, the due authentication of the Secured Notes by the Indenture Trustee, that each of such parties has the power and authority to execute, deliver and

VEDDER PRICE.

August 28, 2015
Page 3

perform each such Transaction Document and has obtained or made all necessary consents, approvals, filings and registrations in connection therewith, that such execution, delivery and performance does not violate its charter, by-laws or similar instrument, that each Transaction Document constitutes the legal, valid and binding obligation of each party thereto enforceable against such Person in accordance with its terms, that value has been given by the Loan Participant to the Lessor under the Indenture, that each of the parties to the Transaction Documents is duly organized, validly existing and in good standing in its jurisdiction of organization and qualified to transact business in each other jurisdiction where such qualification is required.

We have also assumed that the Trust Agreement duly creates the trust it purports to create, that the Trust for purposes of Section 9-307 of the UCC of the State of New York is located in the State of Delaware and that, under applicable law, the Lessor would be deemed to be the owner of the Trust Estate and the Trust Indenture Estate and that the Trust Company has the legal ability to exercise its trust powers with respect to the Trust Estate in the State of New York.

To the extent that our opinions expressed herein involve conclusions as to the matters set forth in the opinions dated the date hereof of Alvord and Alvord, special Surface Transportation Board counsel, and Fasken Martineau Du Moulin LLP, special Canadian law counsel, being delivered to you on the date hereof, we have assumed, without independent investigation, the correctness of the matters set forth in such opinions.

We express no opinion as to the laws of any jurisdiction other than the laws of the State of New York, the statutory laws and regulations of the State of New York, and the statutory laws and regulations of the United States of America and, solely for purposes of our opinion in paragraph 1(b) below, the Delaware UCC (as hereinafter defined). For purposes of the opinions set forth herein (other than paragraph 3 below), we have assumed that the laws of the District of Columbia, if applicable, are identical in all relevant respects to the laws of the State of New York, as to which assumption we express no opinion.

For purposes of this opinion, the following terms shall have the following meanings: "Applicable Laws" shall mean the statutory laws and regulations of the State of New York and the statutory laws and regulations of the United States of America which, in our experience, are normally applicable to transactions of the type contemplated by the Transaction Documents, without our having made any special investigation as to the applicability of any specific law. "Governmental Approval" means any consent, approval, license or authorization of, or filing, recording or registration with, any governmental authority required by the Applicable Laws. "New York UCC" means the Uniform Commercial Code as in effect on the date hereof in the State of New York. "Delaware UCC" means the Uniform Commercial Code solely as reported

VEDDER PRICE.

August 28, 2015
Page 4

by the Commerce Clearing House, Inc. Secured Transactions Guide, as supplemented through July 28, 2015, to be in effect in the State of Delaware and does not include, without limitation, any regulations issued or cases decided thereunder.  "UCC" means the New York UCC or Delaware UCC, as applicable.

Based on the foregoing, and subject to the qualifications, assumptions and limitations set forth herein, we are of the opinion that:

1.   (a)   The Indenture creates a valid security interest in favor of the Indenture Trustee for the benefit of the Loan Participant in all of the right, title and interest of the Lessor in the collateral purportedly covered by the Indenture in which a security interest may be created under Article 9 of the New York UCC pursuant to Section 9-109 thereof (the "Collateral").

(b)   Assuming that the Lessor is "located" in Delaware for purposes of 9-307 of the New York UCC, the Lessee is "located" in the District of Columbia for purposes of 9-307 of the New York UCC and the Lease is located in Maryland for purposes of the New York UCC, except for (i) the filing and the recordation with the Surface Transportation Board of the Notice, (ii) the filing of the Lessor Financing Statement Amendment and the Lessee Financing Statement Amendment in the office of the Secretary of State of Delaware and the Recorder of Deeds of the District of Columbia, respectively, and the filing of periodic continuation statements with respect thereto and (iii) the Indenture Trustee's taking possession in the State of Maryland of the chattel paper original copy of the Lease and each Lease Supplement thereto, no further registration, filing or recording of any document is required to perfect a security interest in favor of the Indenture Trustee pursuant to the Indenture in the Lessor's right, title and interest in the Collateral to the extent such security interest can be perfected by the filing of a financing statement under the Delaware UCC.

The foregoing opinions are subject to the following additional qualifications, assumptions and limitations:

(a)   The enforceability of any obligation of the Lessee or the Lessor may be limited by bankruptcy, insolvency, fraudulent conveyance or similar laws, reorganization, rehabilitation, moratorium, marshalling or other laws affecting the enforcement generally of creditors' or lessors' rights and remedies.

(b)   The enforceability of any obligation of the Lessee or the Lessor is subject to principles of equity (regardless of whether considered and applied in a proceeding in equity or at law), public policy, applicable law relating to fiduciary duties, judicial imposition of an implied covenant of good faith and fair dealing and principles regarding

# VEDDER PRICE.

August 28, 2015
Page 5

successor liability, equitable subordination, substantive consolidation of entities and the adequacy of consideration for a Person's guarantee of its affiliate's obligations.

(c)     No opinion is given herein as to the availability of specific performance or equitable relief of any kind.

(d)     We have assumed, without independent verification, (i) that the Loan Participant has given value (as defined in Section 1-201(44) of the UCC) for the security interest in the Collateral, (ii) that Lessor has full right, title and interest in and to, and is the owner of, the Collateral, (iii) that the name of the Indenture Trustee set forth as the "Secured Party" in the Financing Statements is the full and exact legal name of such party and that the address and all other information set forth for such party in the Financing Statements is correct, and (iv) that the Indenture Trustee has been duly and validly appointed by Loan Participant as a "representative" of the Loan Participant within the meaning of Section 9-511 of the UCC, and has accepted such appointment.

(e)     We express no opinion as to any right, title or interest in or to any of the Collateral, the Indenture Estate, the Trust Estate or any interest therein, the perfection of any such security interests under the laws of any state other than the New York UCC and Delaware UCC or the priority of such security interest under the laws of any jurisdiction or as to the circumstances under which the perfection or priority of such security interest may thereafter be lost.  Our opinions as to the creation or perfection of any lien or security interest do not constitute opinions as to the enforceability of any Transaction Document.

(f)     The opinions expressed above pertain only to items of collateral consisting of personal property in which a consensual security interest under Article 9 of New York UCC can be granted and which constitute items or types of property in which a security interest may be perfected by the filing of a financing statement in the filing office(s) specified in paragraph 1 under the Delaware UCC.  In this regard, we note that, without being exhaustive, the opinions expressed in paragraph 1 do not pertain to the following items or types of collateral:  money, deposit accounts, letter-of-credit rights, fixtures, motor vehicles, watercraft, manufactured homes, consumer goods, equipment used in farming operations, farm products, accounts or general intangibles arising from or relating to the sale of farm products by a farmer, timber, minerals to be extracted (including oil and gas) or accounts resulting from the sale thereof, beneficial interests in a trust or decedent's estate, items that are subject to a certificate of title statute of any state or jurisdiction, items that are subject to any statute, regulation or a treaty of the United States that provides for a state, national or international registration or state, national or international certificate of title for the perfection of a security interest therein or that

VEDDER PRICE.

August 28, 2015
Page 6

specifies a place of filing different from that specified in the Delaware UCC for filing to perfect such security interest or whose requirements for a security interest's obtaining priority over the rights of a lien creditor with respect to such item preempt Delaware UCC Section 9-310(a).  Without limiting the generality of the foregoing, the opinions in paragraph 6 do not pertain to patents, trademarks, tradenames, copyrights or other intellectual property to the extent governed by federal laws of the United States or any other laws (other than the Delaware UCC) that provide for registration or that specify a place of filing different from that specified in the Delaware UCC or whose requirements for a security interest's obtaining priority over the rights of a lien creditor with respect to such property preempt Delaware UCC Section 9-310(a).

(g)      We call to your attention that your security interest in certain Collateral described in the Transaction Documents may not be able to be perfected by the filing of financing statements under the Delaware UCC and that under certain circumstances set forth in the Delaware UCC, the filings referred to in paragraph 1 become ineffective as a result of changes occurring after the date hereof and will terminate in most cases after five years after the original filing date unless appropriate continuation statements are duly filed.  We express no opinion with respect to the perfection by filing of any security interests with respect to Collateral as to which the Financing Statements have not been authorized by the Lessor or Lessee, as applicable, either in an authenticated record or pursuant to the Delaware UCC.

(h)      We call to your attention that pursuant to Section 9-108(c) of the New York UCC, a description of collateral such as "all assets" or "all personal property" or words of similar import are not adequate descriptions of property for purposes of Section 9-203 of the New York UCC and, accordingly, we express no opinion as to the sufficiency of any such description in the Transaction Documents or either Financing Statement for purposes of creating or perfecting a security interest in property so described.

(i)      We express no opinion as to the accuracy of the description of any Collateral in any Transaction Document.

(j)      We express no opinion with respect to security interests in any commercial tort claims.

(k)      We have assumed that there are no agreements between the Lessor and any account debtor prohibiting, restricting or conditioning the assignment of any portion of the Collateral except for the Collateral constituting either accounts or general intangibles for money due, as to which we make no assumption.  In the case of chattel

# VEDDER PRICE.

August 28, 2015
Page 7

paper, accounts or general intangibles, we call to your attention that the security interest of the Indenture Trustee for the benefit of the Loan Participant may be subject to the rights of account debtors, claims and defenses of account debtors and the terms of agreements with account debtors. We express no opinion regarding the enforceability of any provision of the Transaction Documents that purports to prohibit the alienability of rights or property, or the creation or enforcement of security interests, or imposes any other restriction, to the extent any such provision is ineffective under Section 9-406, 9-407, 9-408 or 9-409 of the UCC.

(l)     We express no opinion with respect to the enforceability of any right to direct payment on any accounts, chattel paper, documents, instruments or general intangibles with respect to which the account debtor or obligor is the United States of America, any state, county, city, municipality or other governmental body, or any department, agency or instrumentality thereof.

(m)     In the case of goods, we express no opinion regarding any security interest in any goods that are (i) an accession to, or commingled or processed with other goods to the extent that such security interest is limited by Section 9-335 or 9-336 of the UCC or (ii) subject to a certificate of title or a document of title.

(n)     Our opinion with respect to proceeds is subject to the limitations set forth in Sections 9-203, 9-315 and 9-322 of the UCC and, in addition, we call to your attention that in the case of certain types of proceeds, other parties such as holders in due course, protected purchasers and buyers in the ordinary course of business may acquire a superior interest or may take their interest free of the security interest of the Indenture Trustee for the benefit of the Loan Participant. Moreover, we point out that security interests in after-acquired property may be limited by Section 9-204 of the UCC.

(o)     In the case of property that becomes Collateral after the date hereof, Section 552 of Title 11 of the United States Code (the "Bankruptcy Code") limits the extent to which property acquired by a debtor after the commencement of a case under the Bankruptcy Code may be subject to a security interest arising from a security agreement entered into by the debtor before the commencement of such case. We further call to your attention that, under Section 364(d) of the Bankruptcy Code, a bankruptcy court may authorize a debtor in a bankruptcy proceeding to obtain post-petition credit secured by liens on property of the debtor including, in certain circumstances, liens that are senior or equal to any pre-petition liens.

(p)     We express no opinion as to the validity, binding effect or enforceability of (i) purported waivers of any statutory or other rights, court rules or defenses to

VEDDER PRICE.

August 28, 2015
Page 8

obligations or consents to any actions where such waivers or consents (A) are against public policy or (B) constitute waivers of rights or consents to actions that by law (including, without limitation, UCC Section 9-602), regulation or judicial decision may not otherwise be waived or given, (ii) provisions indemnifying any person against, or relieving any person of liability for, its own negligent or wrongful acts or in any other circumstances in which enforcement of such provisions would be against public policy or limited or prohibited by applicable law, (iii) any provisions that purport to authorize or permit any person to act in a manner that is determined not to be in good faith or commercially reasonable or any provisions that purport to waive any rights in respect of such acts, (iv) any provisions that purport to authorize or permit any person to exercise any right or remedy upon any nonmaterial breach or default, (v) any forum selection, any provision relating to the subject matter jurisdiction of any federal court, exclusive jurisdiction provision or any provision purporting to waive the right of trial by jury, the objection of improper venue or any unknown rights and defenses, (vi) any powers of attorney to the extent that they purport to grant rights and powers that may not be granted under applicable law or any provision making such powers of attorney irrevocable, whether or not coupled with an interest, (vii) any provisions that purport to permit the exercise of "self-help" remedies, including, without limitation, the exercise of rights of setoff or purported rights to enter onto the property of any person or take physical possession of any property, (viii) any right or obligation to the extent that the same may be varied by course of dealing or performance, (ix) any provision that may provide for the compounding of interest or the payment or accrual of interest on interest or for interest after judgment or after the filing of a voluntary or involuntary proceeding for bankruptcy, insolvency or reorganization or as to the effect of such laws, if applicable, (x) any provision purporting to establish evidentiary standards, (xi) any provision permitting the Indenture Trustee or the Loan Participant to pursue enforcement actions without notice, (xii) any provision that is subject to any mutual mistake of fact or misunderstanding, fraud, duress or undue influence, (xiii) any provision prohibiting the non-written modification of any document, (xiv) any provision purporting to determine damages or impose penalties, or requiring payment of attorneys' fees and expenses, in an amount in excess of reasonable attorneys' fees and expenses actually incurred, (xv) any provision providing for late payment charges or an increase in interest rate upon delinquency in payment or the occurrence of a default or other specified event, but only to the extent such provision is deemed to constitute a penalty or liquidated damages provision, (xvi) any provision purporting to shorten any statute of limitations, or waiving in advance any defense with respect to statutes of limitations or (xvii) the severability of any provision of any document.  In addition, certain remedial and procedural provisions of the Transaction Documents are or may be unenforceable in whole or in part, but the inclusion of such provisions does not affect the validity of those agreements and does not, in our opinion, make the remedies provided in those agreements, or otherwise available

# VEDDER PRICE.

August 28, 2015
Page 9

under applicable law, inadequate for the practical realization of the substantive benefits purported to be provided thereby, except for the economic consequences resulting from any delay imposed by, or any procedure required by, applicable laws, rules, regulations and by constitutional requirements, provided that the beneficiary thereof acts in good faith and in a commercially reasonable manner.

     (q)    We express no opinion (A) with respect to (i) the laws, regulations or ordinances of any county, town or municipality or governmental subdivision or agency thereof, (ii) state securities or blue sky laws or federal securities laws, including the Securities Act of 1933, as amended, and the Investment Company Act of 1940, as amended, (iii) any federal or state tax, antitrust or fraudulent transfer or conveyance laws, (iv) the Employee Retirement Income Security Act of 1974, as amended, or (v) Title 45 and Subtitles III, IV and V of Title 49 of the United States Code, or any other laws, rules or regulations governing, regulating or relating to the acquisition, ownership, registration, use or sale of rolling stock or accessories to rolling stock or to the particular nature of the equipment to be acquired by the Owner Trustee, (B) as to the application or requirements of federal or state, criminal, anti-money-laundering, patent, trademark, copyright, antitrust and unfair competition, pension or employee benefit, labor, environmental, health and safety, export or import control or foreign investment laws in respect of the transactions contemplated by or referred to in the Transaction Documents or (C) as to (i) any provision in any Transaction Document that is contrary to Section 2A-303, Section 9-401, or Part VI of Article 9 of the UCC, or (ii) whether or not the Lease constitutes a "security interest" within the meaning of Section 1-201(37) of the UCC. We express no opinion as to whether or not the Lease constitutes a "Finance lease" within the meaning of Section 2A-103(g) of the UCC and we express no opinion as to the enforceability of any provision of any Transaction Document which purports to categorize the Lease as such.

     (r)    We express no opinion with respect to Transaction Documents being governed by New York Law to the extent inconsistent with Section 1-105(2) of the UCC.

     (s)    The opinions expressed herein are matters of professional judgment and are not a guarantee of result.

     (t)    This opinion is solely for the information of the addressees hereto and their respective successors and permitted assigns and is not to be quoted in whole or in part or otherwise referred to, nor is it to be filed with any government agency or any other person, without our prior written consent, and no one other than the addressees hereto and their respective successors and permitted assigns are entitled to rely on this opinion. This opinion is given to you as of the date hereof, and we assume no obligation to advise you

**VEDDER PRICE.**

August 28, 2015
Page 10

of any change that may hereafter be brought to our attention.   No attorney-client relationship exists or has existed by reason of our preparation, execution and delivery of this opinion letter to the addressee hereof or other person or entity except for the Lessee. In permitting reliance hereon by any person or entity other than the Lessee, we are not acting as counsel for such other person or entity and have not assumed and are not assuming any responsibility to advise such other person or entity with respect to the adequacy of this opinion letter for its purposes.

Very truly yours,

VEDDER PRICE P.C.

*Vedder Price P.C.*

JDG/DSG

VEDDER PRICE.

August 28, 2015
Page 11

### SCHEDULE I

### ADDRESSEES

National Railroad Passenger Corporation

Philip Morris Capital Corporation

Wilmington Trust Company

Export Development Canada

Manufacturers and Traders Trust Company