# EXHIBIT 52



**Wilmington Trust Company**
Rodney Square North
1100 North Market Street
Wilmington, DE 19890-0001

<u>VIA Washington Express Same-Day Courier and UPS overnight courier</u>

November 7, 2019

National Railroad Passenger Corporation
1 Massachusetts Avenue, NW
Washington, DC 20001
Attn: Swati Sharma, Vice President and Treasurer
    Finance Department

Re: <u>Notice of Default</u>

Ladies and Gentlemen:

Reference is made to (i) the Lease of Railroad Equipment, dated as of November 6, 2000 (as amended and supplemented, the "Lease") between Amtrak Trust HS-EDC-1 ("Lessor") and National Railroad Passenger Corporation ("Amtrak") relating to the lease of Dual Cab, High-Horsepower Electric Locomotives (the "Locomotives") and High-Speed Trainsets, and (ii) the letter from Lessor to Amtrak, dated December 15, 2017, providing notice of Lease Events of Default under the Lease (the "Notice of Lease Event of Default"), a copy of which is attached hereto. All capitalized terms used but not defined herein shall have the respective meanings ascribed thereto in the Lease.

A Lease Event of Default has occurred and is continuing under Section 13.1 of the Lease as a result of, among other events and circumstances: (1) the failure of Amtrak to pay Casualty Value within 5 Business Days of the respective Casualty Value Determination Dates for each of the Locomotives that it has retired from service; and (2) the failure of Amtrak to cure the Lease Defaults identified in the Notice of Lease Default within 30 days of Amtrak's receipt of such notice, as outlined in the Notice of Lease Event of Default. For over two years, Amtrak led Owner Participant to believe the parties could resolve these issues, when in fact Amtrak was simply stonewalling in an effort to delay Owner Participant from acting on these Lease Defaults. As a result, pursuant to Section 13.2 of the Lease, Lessor hereby declares the Lease to be in default.

The statements in this letter shall not be construed to limit, in any way, any claims that may be made by Lessor or Owner Participant with respect to the Lease Events of Default under the Lease nor shall this letter in any way constitute a waiver of any other right, power or remedy available to Lessor or Owner Participant under the Lease, or any other Operative Document, including, without limitation, the Guarantee Agreement or Applicable Law.

AMTRAK TRUST HS-EDC-1

By: Wilmington Trust Company
    not in its individual capacity, but solely as
    Owner Trustee, Lessor

By: _____
Name:
Title:     Jacqueline Solone
           **Vice President**

cc:  HNB Investment Corp., as Owner Participant
c/o Philip Morris Capital Corporation
225 High Ridge Road
Suite 300 West
Stamford, CT 06905
Attention: Alex Russo, Vice President

National Railroad Passenger Corporation, as Lessee
1 Massachusetts Avenue, NW
Washington, DC 20001
Attn:   Tracie Winbigler, Chief Financial Officer
        Nathan Maciver, Assistant Treasurer
        Jaret Ings, Senior Debt Portfolio Manager

National Railroad Passenger Corporation, as Lessee
60 Massachusetts Avenue, NE
Washington, DC 20002
Attn:   Jill M. Himmer, Associate General Counsel

Manufacturers and Traders Trust Company, as Indenture Trustee
c/o Wilmington Trust Company (formerly Allfirst Bank)
Rodney Square North
100 North Market Street
Wilmington, DE 19890-0001
Attn:   Corporate Trust Administration
        Lynette Hilgar, Relationship Manager

Export Development Canada, as Note Holder and Equity Guarantor
151 O'Connor Street
Ottawa, Canada K1A 1K3
Attn:   Loan Operations
        Sean Borutskie, Loan Services Officer
        Danyelle Plunkett, Loan Services Officer



**Wilmington Trust Company**
Rodney Square North
1100 North Market Street
Wilmington, DE 19890-0001

VIA UPS

December 15, 2017

National Railroad Passenger Corporation
1 Massachusetts Avenue, NW
Washington, DC 20001
Attn: Swati Sharma, Vice President and Treasurer
    Finance Department

Re: Notice of Lease Event of Default

Ladies and Gentlemen:

Reference is made to (i) the Lease of Railroad Equipment, dated as of November 6, 2000 (as amended and supplemented, the "Lease") between Amtrak Trust HS-EDC-1 ("Lessor") and National Railroad Passenger Corporation ("Amtrak") relating to the lease of Dual Cab, High-Horsepower Electric Locomotives (the "Locomotives") and High-Speed Trainsets, (ii) the letter from Lessor to Amtrak, dated September 7, 2017, providing notice of Lease Defaults under the Lease (the "Notice of Lease Default"); (iii) the inspection of the Locomotives by Biggs Appraisal on October 11 – 13, 2017 (the "Biggs Inspection") and (iv) the letter from Amtrak to the Owner Trustee, dated October 13, 2017 ("Amtrak's Letter"), responding to the letter from the Owner Trustee to Amtrak, dated October 6, 2017. All capitalized terms used but not defined herein shall have the respective meanings ascribed thereto in the Lease.

Owner Participant has been trying for over a year to work with Amtrak to resolve the issues resulting from Amtrak's decision to retire the Locomotives. In a letter dated November 21, 2016, Owner Participant notified Amtrak that Amtrak's retirement of the Locomotives due to reliability problems constituted a Casualty Occurrence and raised concerns that the Locomotives were not being maintained in accordance with the Lease. Representatives from Amtrak came to Stamford, CT, on December 1, 2016 to meet with the Owner Participant. In that meeting, Amtrak acknowledged the issues presented by the retirement of the Locomotives, represented that they would submit a proposal by the end of December 2016 to buy out the Owner Participant's interest and they said they hoped for a resolution within 60 days. Owner Participant patiently awaited the proposal but when none was forthcoming it arranged for an inspection of the Locomotives in June, 2017. The results of that inspection confirmed that the Locomotives were not being maintained in accordance with the maintenance obligations set forth in Section 12 of the Lease. As a result, Lessor sent its Notice of Lease Default on September 7, 2017. Even

though Amtrak had been notified of the Owner Participant's concern regarding maintenance defaults as far back as November 21, 2016, such defaults were not cured at the time of Lessor's second inspection in October, 2017. Since Amtrak has proved unable or unwilling to cure these defaults or otherwise work with Owner Participant to resolve the issues resulting from the retirement of the Locomotives, Owner Participant has directed Lessor to send this Event of Default Notice and is delivering a corresponding demand for payment on the Guarantor under the Guarantee Agreement.

Lessor hereby notifies Amtrak that a Lease Event of Default has occurred and is continuing under clauses (i) and (v) of Section 13.1 of the Lease due to (1) the failure of Amtrak to pay Casualty Value within 5 Business Days of the respective Casualty Value Determination Dates for each of the Locomotives that it has retired from service[1] and (2) the failure of Amtrak to cure the Lease Defaults identified in the Notice of Lease Default within 30 days of Amtrak's receipt of such notice.

Owner Trustee disagrees with certain of the assertions detailed in paragraphs 1 through 6 of Amtrak's Letter. The basis for such disagreement is set forth below:

1. In paragraph number 1 of Amtrak's Letter, Amtrak rejects that a "Default" has occurred and is continuing under the Lease and that a cure period had commenced. Schedule 1 attached hereto identifies the specific Lease provisions under which a Lease Event of Default has occurred and is continuing and a notation of certain evidence that supports such finding.

2. In paragraph number 2 of Amtrak's Letter, Amtrak asserts that "[n]othing in the Lease limits Amtrak's right to make operational decisions with respect to scheduling and utilization of the locomotives." This assertion is clearly contradicted by the terms of Section 12 of the Lease which is entitled "USE AND MAINTENANCE". Section 12.1(ii) limits Amtrak's rights with respect to scheduling of the Locomotives by requiring that the Locomotives not be scheduled for maintenance on a basis less frequent than the maintenance scheduling basis employed by Amtrak for other rolling stock similar to the Locomotives owned by or operated for or by Amtrak. All of the provisions of Section 12.1 place restrictions on the use of the Locomotives by requiring that each Locomotive is used in a manner consistent with its design and intended use, in compliance with the insurance provisions of the Lease and in a manner that permits all of the maintenance and service required by the Lease.

Amtrak asserts that as a result of its statutory duty to provide common carrier intercity rail service to the public it removed the Locomotives due to their unacceptable reliability issues. Once the Locomotives are rendered unfit for commercial use from any cause whatsoever during the Lease Term such event is considered a Casualty Occurrence under Section 7 of the Lease. Amtrak's failure to pay Casualty Value and all other amounts due under Section 7 of the Lease within 5 Business Days after the same became due is a Lease Event of Default under Section 13.1(i) of the Lease. A summary of the provisions of Section 7 of the Lease as they apply to this Casualty Occurrence are set forth on Schedule 1.

---

[1] A summary of the provisions of Section 7 of the Lease as they apply to this Casualty Occurrence are set forth on Schedule 1

3. In paragraph 3 of Amtrak's Letter, Amtrak asserts that the Lessor has suffered no harm because the Locomotives are being maintained consistent with Amtrak's obligations under the Lease. The reality is the Lessor has suffered harm because (i) the Locomotives are not being maintained in accordance with the Lease as detailed in Schedule 1 hereto and (ii) Amtrak has failed to meet its obligation under the Lease to pay Casualty Value for the Casualty Occurrence with respect to all of the Locomotives.

4. Lessor has no comment with respect to the statement in paragraph 4 of Amtrak's Letter.

5. Lessor does not dispute the language from the Lease quoted in paragraph 5 of Amtrak's Letter but fails to see the relevance as the 30 day period to cure the Lease Defaults in the Notice of Lease Default expired prior to Amtrak notifying Lessor that such Lease Defaults were curable but not capable of being cured within such 30-day period. To date, Amtrak has not sent any notice indicating that an extended period of time is necessary to cure any Lease Default.

6. Lessor agrees with the statement in paragraph 6 of Amtrak's Letter that the Owner Participant bears all the residual risk with respect to all of the Locomotives, however, Lessor disagrees with Amtrak's assertion that there has been an attempt to shift that risk to Amtrak. During the term of the Lease, Amtrak as Lessee assumes responsibility for all costs and expenses associated with the use and maintenance of the Locomotives including the obligation to pay Casualty Value and all other amounts due under Section 7.3 of the Lease should there be a Casualty Occurrence with respect to the Locomotives. Amtrak has failed to maintain the Locomotives in accordance with Section 12 of the Lease, and in making the determination that the Locomotives are unfit for commercial use without complying with its obligation to pay Casualty Value has failed to comply with its obligations under Section 7 of the Lease. Lessor and Owner Participant are not attempting to shift any risk or obligation to the Lessee that it has not already assumed when it agreed to comply with the provisions of the Lease.

The statements in this letter shall not be construed to limit, in any way, the claims that may be made by Lessor or Owner Participant with respect to the Lease Events of Default under the Lease nor shall this letter in any way constitute a waiver of any other right, power or remedy available to Lessor or Owner Participant under the Lease, or any other Operative Document, including, without limitation, the Guarantee Agreement or Applicable Law.

AMTRAK TRUST HS-EDC-1

By: Wilmington Trust Company
not in its individual capacity, but solely as Owner Trustee, Lessor

By: _____
Name: Jacqueline Solone
Title: Vice President

cc: HNB Investment Corp., as Owner Participant
c/o Philip Morris Capital Corporation
225 High Ridge Road
Suite 300 West
Stamford, CT 06905
Attention: Alex Russo, Vice President

National Railroad Passenger Corporation, as Lessee
1 Massachusetts Avenue, NW
Washington, DC 20001
Attn:   William N. Feidt, Chief Financial Officer
        Reuben M. Vabner, Senior Director, Corporate Finance

National Railroad Passenger Corporation, as Lessee
60 Massachusetts Avenue, NE
Washington, DC 20002
Attn:   Jill M. Himmer, Associate General Counsel

Manufacturers and Traders Trust Company, as Indenture Trustee
c/o Wilmington Trust Company (formerly Allfirst Bank)
Rodney Square North
100 North Market Street
Wilmington, DE 19890-0001
Attn:   Corporate Trust Administration
        Lynette Hilgar, Relationship Manager

Export Development Corporation, as Note Holder and Equity Guarantor
151 O'Connor Street
Ottawa, Canada K1A 1K3
Attn:   Loan Operations
        Sean Borutskie, Loan Services Officer
        Danyelle Plunkett, Loan Services Officer

SCHEDULE 1

**I.     A Lease Event of Default currently exists and is continuing under Section 7 of the Lease.**

Amtrak has confirmed in the Amtrak Letter that it removed the Locomotives from service because the unacceptable reliability issues with the Locomotives rendered them unfit to provide the intercity rail service Amtrak is statutorily obligated to provide to the public. Once the Locomotives are rendered unfit for commercial use from any cause whatsoever during the Lease Term such event is considered a Casualty Occurrence under Section 7 of the Lease. Upon retiring the Locomotives due to the determination that the reliability problems rendered them unfit to provide intercity rail service, Amtrak was required to notify Owner Participant within 30 days whether it intended to substitute Replacement Units for the retired Locomotives or pay Casualty Value and the other amounts due under Section 7.3 of the Lease. Section 7.1 of the Lease provides that Amtrak's failure to provide such notice constitutes an election to proceed in accordance with Section 7.3 to pay the Casualty Value and the other amounts due thereunder on the applicable Casualty Value Determination Dates. Since the last of the Locomotives were removed from service by the end of 2014 all amounts due under Section 7.3 of the Lease, including Casualty Value, should have been paid not later than early in 2015.

**II. Lease Events of Default currently exist and are continuing under the following provisions of Section 12 of the Lease:**

1. Section 12.1(i) of the Lease requires Amtrak to "use the Equipment in any manner consistent with the design and intended use of the Equipment . . ."

All 8 of the Locomotives were retired from service during the 2013 to 2015 time period and none of them have been put back in service as of the date hereof. Each Locomotive is in storage and is not being used in any manner consistent with its intended use.

2. Section 12.1(i)(a)(w) of the Lease requires Amtrak to "maintain and service each Unit . . . (w) so that each Unit is in as good condition as when delivered (ordinary wear and tear excepted) . . .

At the time of the Biggs Inspection the Locomotive bearing the unit number AMTK 682 (previously AMTK 652) was in a total disassembled state. The 10 year maintenance records for this Locomotive show that on 11/13/2013 this Locomotive had burnt cables. This was reported as completed on 12/13/2016 but the cable repairs were not completed as of 10/12/2017 when the Locomotive was inspected. The records also indicate that this Locomotive was cannibalized for parts on 3/3/2014 with parts reported as replaced on 12/13/2016.

3. Section 12.1(i)(a)(y) of the Lease requires Amtrak to "maintain and service each Unit . . . (y) . . . in accordance with the Amtrak maintenance plan for the Locomotives"

The maintenance records reviewed at the Biggs Inspection did not show that the Locomotive bearing the unit number AMTK 682 (previously AMTK 652) has been maintained in accordance with the Amtrak maintenance plan for Locomotives.

4. Section 12.1(i)(a)(z) of the Lease requires Amtrak to "maintain and service each Unit . . . (z) in a manner that will permits the Units to be capable of operation (A) . . .(2) in the case of Locomotives, a maximum continuous speed of up to 125 miles per hour in revenue service and a maximum continuous test speed of up to 140 miles per hour . . ."

At the time of the Biggs Inspection the Locomotives bearing the unit numbers AMTK 685 (previously AMTK 665) and AMTK 694 (previously AMTK 664) were in the shop for power module removal testing and repairs and the air brake valves were removed for testing by supplier vendor. Due to the condition of these Locomotives only a static inspection was performed at the Biggs Inspection and therefore Amtrak failed to demonstrate that these Locomotives were in compliance with Section 12.1(i)(a)(z).

As stated in paragraph 2 above the Locomotive bearing unit number AMTK 682 (previously AMTK 652) was in a total disassembled state on the dates of the Biggs Inspection. Due to the condition of this Locomotive only a static inspection was performed at the Biggs Inspection and therefore Amtrak failed to demonstrate that this Locomotive was in compliance with Section 12.1(i)(a)(z).

5. The first sentence of Section 12.1(ii) of the Lease prohibits Amtrak from maintaining the Locomotives "with less care or schedul[ing] the [Locomotives] for maintenance on a basis less frequent than either the maintenance or maintenance scheduling basis employed by [Amtrak] for other rolling stock similar to the [Locomotives] owned by or operated for or by [Amtrak].

The maintenance records reviewed as part of the Biggs Inspection show that all 8 of the Locomotives have been maintained with less care and scheduled for maintenance on a basis less frequent than other rolling stock similar to the Locomotives operated by Amtrak. The locomotives that Amtrak has in service that are similar to the Locomotives are inspected daily and have periodic FRA inspections on a 92 day basis. All 8 of the Locomotives have been decommissioned and the maintenance records reviewed at the Biggs Inspection show that the Locomotives have received very few inspections.

6. The second sentence of Section 12.1(ii) of the Lease permits Amtrak to "take a [Locomotive] out of service while awaiting repair" [subject to the first sentence of Section 12.1(ii) regarding maintenance] so long as [Amtrak] takes reasonable care to prevent deterioration of the condition of such [Locomotive] beyond that attributable to the circumstances necessitating such repair . . ."

All 8 Locomotives were decommissioned at the time they were removed from service and therefore they were not taken out of service for repair.