# EXHIBIT 54

# FASKEN

Fasken Martineau DuMoulin LLP
Barristers and Solicitors
Patent and Trade-mark Agents

55 Metcalfe Street, Suite 1300
Ottawa, Ontario K1P 6L5
Canada

T +1 613 236 3882
 +1 877 609 5685
F +1 613 230 6423

fasken.com

December 19, 2019

**Peter N. Mantas**

Direct +1 613 696 6886
pmantas@fasken.com

Of the Bars of Ontario and New York

**By Email** (mkirsch@gibsondunn.com)

Mark Kirsch
Patrick Hayden
Elizabeth Papez
Gibson, Dunn & Crutcher
200 Park Avenue
New York, NY 10166

Dear Mr. Kirsch, Mr. Hayden and Ms. Papez:

**Re:** **Export Development Canada v. HNB Investment Corp. and National Railroad Passenger Corporation (a.k.a. Amtrak), Court File No. 18-75823 (Ontario Court of Justice - Demand to (a) Amend Recently Filed Complaint to Comply with Ontario Court Order and Standstill Agreement and (b) Comply with Terms of Indenture**

As you know, we act as legal counsel to Export Development Canada ("EDC"), as lender and guarantor, and special counsel to M&T Bank, as indenture trustee, in respect to the above-referenced matters.

Your Complaint, dated November 7, 2019, filed before the United States District Court for the Southern District of New York ("New York Court"), was recently brought to our attention.

We were surprised to read that your clients, Phillip Morris Capital Corporation ("PMCC") and HNB Investment Corp. ("HNB"), had repeatedly raised issues relating to the Guarantee Agreement (as further described below) in their Complaint.

As set forth in more detail below, the Complaint, as presently filed before the NY Court is in violation of an Order of the Ontario Superior Court of Justice ("Ontario Court") dated May 9, 2019 ("Order"). Furthermore, it is in breach of the Standstill Agreement between our respective clients and National Railroad Passenger Corporation ("Amtrak") dated January 31, 2019.

The purpose of this letter is to request that your clients immediately amend their Complaint so that they are in compliance with the Ontario Court Order and the Standstill Agreement.

FASKEN

In addition, as also set forth below, we request that you immediately retract and withdraw your defective default notices, which are in violation of the express terms of the Indenture, as further described below.

Further details in support of our requests are set forth below.

Reference is hereby made to each of the following:

(a)     that certain Guarantee Agreement, dated as of November 6, 2000 (the "Guarantee"), between HNB, as beneficiary, and EDC (formerly known as Export Development Corporation, as guarantor, pursuant to which EDC guaranteed under a Canadian law Guarantee upon certain conditions the payment of residual equity value;

(b)     that certain Trust Indenture and Security Agreement (Amtrak Trust HS-EDC-1), dated as of November 6, 2000 (the "Indenture"), between Amtrak Trust HS-EDC-1, as owner trust, as borrower (the "Owner Trust"), by and through its Owner Trustee (as defined below), and M&T Bank (as successor in interest to Allfirst Bank), as indenture trustee (the "Indenture Trustee"), under which loans were made to the Owner Trustee secured by certain locomotives, trainsets and related collateral;

(c)     that certain the Trust Agreement of the Owner Trust, dated as of November 6, 2000 (the "Trust Agreement"), between HNB, as owner participant, and Wilmington Trust Company, as owner trustee of the Owner Trust (the "Owner Trustee"), which agreement established the Owner Trust;

(d)     that certain Lease of Railroad Equipment, dated as of December 6, 2000 (the "Lease"), between Owner Trust, as lessor, and National Railroad Passenger Corporation (a/k/a Amtrak), as lessee ("Amtrak"), under which certain locomotives and trainsets were leased by the Owner Trustee to the Lessee;

(e)     that certain Notice of Lease Default, dated September 7, 2017 (the "Defective Default Notice"), from Owner Trustee to Lessee under which the Owner Trustee, as lessor, issued (improperly under the terms of the Indenture and related operative documents) a notice of alleged defaults under the Lease;

(f)     that certain Notice of Lease Event of Default, dated December 15, 2017 (the "Defective Event of Default Notice"), from Owner Trustee to Lessee under which the Owner Trustee, as lessor, issued (improperly under the terms of the Indenture and related operative documents) a notice of the alleged occurrence of events of default under the Lease; and

(g)     that certain Demand for payment under the Guarantee, dated December 15, 2017 (the "Payment Demand"), issued by HNB upon EDC, under which HNB alleged a right to demand payment of amounts under the Guarantee.

EDC, as the loan participant, and the Indenture Trustee are collectively, referred to herein as the "Lender Parties." The Owner Trustee and the Owner Participants are collectively referred

herein as the "Obligors." Reference is also made to that certain Complaint, dated November 7, 2019 (the "Complaint"), that HNB and its affiliate, PMCC, and along with HNB, the "Owner Participants"), filed to commence a lawsuit captioned Phillip Morris Capital Corporation and HNB Investment Corp. vs. National Railroad Passenger Corporation, No. 19-cv-10378 (such action, the "Amtrak Case"), that is pending in the United States District Court for the Southern District of New York.

### A. THE CANADIAN STAY REGARDING ALL MATTERS RELATING TO THE PARTIES RIGHTS UNDER THE GUARANTEE

After HNB issued its Payment Demand under which it alleged a present right to payment under the Guarantee, EDC contested whether the underlying conditions under the Lease were in existence so as to satisfy the payment conditions required under the Guarantee. Accordingly, in March 2018, EDC brought an application ("Ontario Application" or "Canadian Litigation") before the Ontario Superior Court of Justice in Canada, Court File No. 18-7583 ("Canadian Case") to determine the respective rights and liabilities of EDC and HNB under the Guarantee.

Rather than litigate whether the factual predicates under the Lease had occurred, which would satisfy any so-called Triggering Event requirement under the Guarantee, each of EDC, HNB, and Amtrak entered into a Standstill Agreement, dated January 31, 2019 ("Standstill Agreement"), under which each agreed that the application to adjudicate the rights and obligations of HNB and EDC under the Guarantee are stayed:

> . . . until such time as the dispute among HNB and Amtrak and their affiliates concerning Amtrak's compliance with the Lease and related documents, including but not limited to the existence of any Lease Event of Default ("Underlying Dispute") is resolved.
>
> See Standstill Agreement, § 1 (emphasis added) (such stay of the Canadian Litigation as provided under the Standstill Agreement, which stay was approved and authorized by the Ontario Court, the "Canadian Stay").

The parties agreed that resolution of whether a Lease Event of Default existed would be by a final, non-appealable order or by settlement. See Standstill Agreement, § 2. Furthermore, each of HNB, Amtrak, and EDC expressly agreed that

> [HNB, Amtrak and EDC] shall not seek to adjudicate the subject matter of the [Canadian] Application [i.e., the substantive rights and obligations of the EDC and HNB under the Guarantee] in any other jurisdiction during the Standstill Period; provided, however, that nothing in this [Standstill] Agreement is intended to or shall limit or otherwise prejudice [HNB's or Amtrak's] rights or positions concerning the Underlying Dispute, and for the avoidance of doubt shall not limit or otherwise constrain the jurisdiction, venue, adjudication or other pursuit of proceedings concerning the Underlying Dispute.
>
> See Standstill Agreement, § 3 (emphasis added).

**FASKEN**

In sum, even though EDC had brought suit to immediately adjudicate the rights and obligations of the parties under its Guarantee, each of HNB, Amtrak, and EDC agreed that such adjudications under the Guarantee should be stayed and held in abeyance while a determination was made as to whether Amtrak was in breach of its obligations under the Lease. Accordingly, as set forth in the Standstill Agreement and the Canadian Stay, the parties agreed that: (a) all matters relating to the Guarantee, including the rights and obligations of EDC and HNB under such Guarantee, would be stayed pending resolution of whether Amtrak complied with its obligations under Lease and related documents, and (b) no parties would seek to adjudicate the rights and obligations of HNB and EDC under the Guarantee during such Standstill Period in the Ontario Court or any other Court.

Furthermore, each of the parties to the Standstill Agreement recognized that irreparable harm would occur if any parties violated the Canadian Stay and the other terms of the Standstill Agreement and that specific performance and other injunctive relief would be appropriate to enforce the terms of the Standstill Agreement. See Standstill Agreement, § 10.

As agreed by the parties, EDC requested that the Ontario Court approve the terms of the Standstill Agreement and the Canadian Stay provided therein. On May 9, 2019, the Ontario Court approved the terms of the Standstill Agreement and the Canadian Stay.

**B.     DEMAND FOR HNB AND PMCC TO IMMEDIATELY FILE AMENDED COMPLAINT TO COMPLY WITH THE STANDSTILL AGREEMENT, THE CANADIAN STAY AND THE RELATED ORDER OF THE ONTARIO COURT WITH RESPECT TO MATTERS RELATING TO GUARANTEE**

Notwithstanding the express agreement of HNB that: (a) the adjudication of all rights and obligations under the Guarantee would be stayed during the Standstill Period (i.e. until Amtrak's compliance with the terms of the Lease and related documents could be finally adjudicated or settled), and (b) that it would not bring any action before any court to adjudicate the respective rights of the parties and their respective obligations under the Lease (which covers whether such parties are in compliance with the terms of such Guarantee); which in the Complaint, HNB and its affiliate are seeking to adjudicate the respective rights and obligations of EDC under the Guarantee.

Specifically, and most egregiously, HNB and its affiliate, PMCC, have brought claims and causes of action that directly violate the Canadian Stay and Standstill Agreement. For example, the Owner Participants brought a cause of action under the Complaint for tortious interference with contract based upon Amtrak's alleged interference with HNB's rights under the Guarantee with EDC. By necessity, such a claim adjudicates contractual rights and obligations of EDC under the Guarantee. See Complaint, paras 144 – 150 (Fourth Cause of Action). Under New York law, the elements of tortious interference with contract are:

(1)     the existence of a valid contract between a plaintiff and a third party (here, the Guarantee with EDC);

(2)     the defendant's knowledge of the contract;



(3)   the defendant's intentional procurement of a third party's breach of the contract;

(4)   actual breach of the contract; and

(5)   damages resulting therefrom.

*Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401-02 (2d Cir. 2006); *Hoag v. Chancellor, Inc.*, 677 N.Y.S.2d 531, 533 (1998).

As one of the elements of such cause of action is that EDC is in breach of its obligations under the Guarantee, such cause of action directly seeks an adjudication of EDC's compliance with its obligations under the Guarantee – which is a matter subject to the Canadian Stay and Standstill Agreement. and therefore HNB is barred from bringing such cause of action in any court pending the resolution of the Underlying Dispute.

Likewise, damages arising from alleged breaches by EDC of its obligations under the Guarantee constitute elements of seven of the eight causes of action raised by HNB and PMCC in the Complaint. See paras: 135 (Second Cause of Action); 138 & 143 (Third Cause of Action); 144-150 (Fourth Cause of Action), 155 (Fifth Cause of Action); 160 (Sixth Cause of Action); 168 (Seventh Cause of Action); 174 (Eighth Cause of Action).

Further, even though nothing related to the Guarantee and the obligations and rights of EDC and HNB under the Guarantee are needed to address the Underlying Dispute between the Owner Participants and Amtrak, the Owner Participants included factual averments relating to the Guarantee and EDC's obligations thereunder throughout the Complaint. Indeed, matters relating to the Guarantee form a substantial portion of the Complaint. See the Complaint, at paras: 1, 2, 3, 5, 6, 10. 11, 13, 26(c), 29, 30, 31, 32, 33, 34, 35, 53, 74, 99, 100, 103, 104, 105, 114, 122, 123, 130, 135, 138, 143, 144, 145, 146, 147, 148, 149, 150, 155, 160, 168, and 174. In other words, approximately a quarter of the Complaint is devoted to matters relating to the Guarantee – which are the subject to the Canadian Stay and Standstill Agreement and have no bearing upon the Underlying Dispute regarding "Amtrak's compliance with the Lease and related documents."

Finally, matters with respect to the Guarantee are currently pending before the Ontario Court and are subject to the Standstill Agreement and Canadian Stay. The Owner Participants' efforts to raise such matters before another court (and in a suit in which EDC is not a party) amounts to blatant and improper forum shopping, in addition to breach of the Standstill Agreement and an Order of the Ontario Court. As all matters relating the Guarantee are pending in the currently pending Canadian Case, raising such matters in the Amtrak Case is improper.

In sum, HNB is in gross violation of its obligations under the Standstill Agreement and the Canadian Stay – each of which were agreed upon by HNB (on behalf of itself and its affiliates) and were approved by the Ontario Court.

Accordingly, EDC hereby demands that HNB immediately amend its Complaint to remove all matters that are in violation of the Canadian Stay and the Standstill Agreement. Specifically, EDC hereby demands that each of the matters highlighted in yellow in the attached marked

Complaint be voluntarily stricken and removed from the Complaint and for an amended Complaint, as so revised, to be filed as soon as practicable with the New York Court in the Amtrak Case. Additionally, we have marked in green all of the areas relating to the Guarantee that are improper, given the scope of the Standstill Agreement and the Canadian Stay. These should also be removed or, at a minimum, substantially revised to ensure compliance with the Ontario Court Order and Standstill Agreement.

We hereby further demand that you confirm in writing within five (5) business days of the date hereof as to whether the Owner Participants will so amend their Complaint and provide us with such revised form of Complaint so that we may be able to verify compliance with the Canadian Stay, the Standstill Agreement and the related order of the Ontario Court.

### C.     DEMAND FOR VIOLATIVE DEFAULT NOTICES BE RESCINDED

As the Owner Participants noted in their Complaint, the Indenture specifies the allocation and division of numerous rights between (a) the Lender Parties, on the one hand, and (b) Obligors, on the other. See, e.g., Complaint, at footnotes 20 – 21. Importantly, so long as any indebtedness under the Indenture remains outstanding, then the Indenture Trustee has the exclusive right to issue notices of default or notices of events of default under the Lease. In this regard, Section 6.03(d) the Indenture, in applicable part, provides:

> Notwithstanding the foregoing, but subject always to the provisions of Section 10.05 hereof, Indenture Trustee shall at all times have the right, to the exclusion of Owner Trustee and Owner Participant., to (A) declare the Lease to be in default under Section 13.2 thereof except to the extent necessary to enforce the exercise of rights with respect to Excepted Payments and (B) subject only to the provisions of Sections 4.03 and 4.04(a) hereof, exercise the remedies set forth in such Section 13.2 (other than in connection with Excepted Payments) and in Article IV hereof.

See Indenture, § 6.03(d).

In other words, so long as any debt under the Indenture remains outstanding, the Indenture Trustee is the sole entity that has the right (and, as set forth above, "to the exclusion of the Owner Trustee and the Owner Participant") to "declare the Lease to be in default" or "exercise remedies" under Section 13.2 of the Lease. Yet, in direct contravention of such prohibition, the Owner Trustee issued both the Notice of Default and the Notice of Event of Default (such notices, collectively, the ("Defective Default Notices")), which alleged, respectively, that defaults and events of default had occurred under the Lease.

Based upon the express provisions of Section 6.03 of the Indenture, the Owner Trustee's issuance of each of the Defective Default Notices was improper and in violation of the express terms of the Indenture and of the exclusive rights bestowed upon the Indenture Trustee over such matters while the debt is outstanding. If the Owner Trustee and the Owner Participant wanted to control the remedies under the Lease, they should have either paid off the outstanding Secured Notes or, at the very least, given the exclusive rights and protections granted to the Indenture Trustee under the Indenture to control remedies while loans are outstanding, obtained the consent

**FASKEN**

of the Indenture Trustee prior to issuing such notices. Rather than effect either such repayment or obtain such consent, the Obligors issued the Defective Default Notices without even consulting with EDC or the Indenture Trustee prior to issuing such notices. The failure to undertake such repayment or obtain consent before issuing such defective notices continues a pattern by the Obligors of failing to abide by the terms and provisions of the operative documents and to seek to impose, unilaterally, terms that are in direct contravention of the provisions agreed upon by the parties.

Accordingly, the Indenture Trustee hereby demands that the improper Defective Default Notices be immediately retracted and withdrawn as being in violation of the express terms of the Indenture. Additionally, please confirm within five (5) business days whether you will be so withdrawing such Defective Default Notices.

Please note that the issuance or non-issuance of default notices will not affect the rights or ability of the Owner Participants and/or Owner Trustee to seek a declaratory action and related relief regarding properly tailored Underlying Disputes – which suit should not raise matters relating to the Guarantee. Again, matters with respect to the Guarantee are currently pending before the Ontario Court and are subject to the Standstill Agreement and Canadian Stay – and are not properly raised in the Amtrak Case.

Please note that this letter is being sent to you without prejudice to any rights or remedies that the Indenture Trustee and/or EDC may have under the Indenture, the Guarantee, the other operative documents, and/or applicable law, all of which rights and remedies are hereby reserved and preserved in full. Furthermore, each of the Indenture Trustee and/or EDC hereby fully reserve and preserve all of their rights arising under the Canadian Stay, the Standstill Agreement, and/or with respect to the Canadian Case. No failure or delay in exercising any or all of the foregoing rights shall result in the waiver, forfeiture, or limitation and any such rights.

We look forward to your response.

Yours truly,

**FASKEN MARTINEAU DuMOULIN LLP**

Peter N. Mantas

Encl.:   Highlighted Complaint
Cc:     Michael Edelman, Vedder Price
        Mark Landman, Landman Corsi Ballaine & Ford P.C.

# FASKEN

Fasken Martineau DuMoulin LLP
Barristers and Solicitors
Patent and Trade-mark Agents

55 Metcalfe Street, Suite 1300
Ottawa, Ontario K1P 6L5
Canada

T +1 613 236 3882
+1 877 609 5685
F +1 613 230 6423

fasken.com

December 20, 2019

**Peter N. Mantas**

Direct +1 613 696 6886
pmantas@fasken.com

Of the Bars of Ontario and New York

**By Email** (mkirsch@gibsondunn.com)

Mark Kirsch
Patrick Hayden
Elizabeth Papez
Gibson, Dunn & Crutcher
200 Park Avenue
New York, NY 10166

Dear Mr. Kirsch, Mr. Hayden and Ms. Papez:

**Re:     Export Development Canada v. HNB Investment Corp. and National Railroad Passenger Corporation (a.k.a. Amtrak)**

Further to our letter dated yesterday, we just noticed an inadvertent clerical error in one of the referenced section numbers. The references to Indenture § 6.03 and § 6.03(d) on page 6 of such letter should have been to Indenture § 6.10 and § 6.10(d).

Please let us know if you have any questions regarding this correction.

Yours truly,

**FASKEN MARTINEAU DuMOULIN LLP**

Peter N. Mantas

Cc:    Michael Edelman, *Vedder Price*
       Mark Landman, *Landman Corsi Ballaine & Ford P.C.*