UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
PHILIP MORRIS CAPITAL CORPORATION and
HNB INVESTMENT CORP.,

                                 Plaintiffs,

          *-against-*

NATIONAL RAILROAD PASSENGER
CORPORATION,

                                 Defendant.
-----------------------------------------------------------------X

**ORAL ARGUMENT
REQUESTED**

Index No.: 19-CV-10378(JMF)

---

**DEFENDANT AMTRAK'S REPLY MEMORANDUM OF LAW IN
FURTHER SUPPORT OF MOTION TO DISMISS AND TO
STRIKE AMENDED COMPLAINT PURSUANT TO
FED. R. CIV. P. 12(b)(6) AND 12(f)**

---

                        LANDMAN CORSI BALLAINE & FORD P.C.
                        *Attorneys for Defendant*
                        *National Railroad Passenger Corp.*
                        120 Broadway, 13th Floor
                        New York, New York 10271
                        (212) 238-4800
                        mlandman@lcbf.com
                        wballaine@lcbf.com

Of Counsel:

Mark S. Landman, Esq.
William G. Ballaine, Esq.
Rachel Hong, Esq.

## <u>TABLE OF CONTENTS</u>

Page

TABLE OF AUTHORITIES ............................................................................................... ii

PRELIMINARY STATEMENT ......................................................................................... 1

ARGUMENT ..................................................................................................................... 1

POINT I:       Determine that Based on the Pleadings the New York
               Statute of Limitations Bars Plaintiffs' Breach of
               Contract Claims ............................................................................. 1

POINT II:      Limit First, Second and Eighth Causes of Action to
               Necessary Declaratory Relief for Breach of Contract ........................ 6

POINT III:     Dismiss Third Cause of Action for Breach of
               Good Faith as Redundant ................................................................ 9

POINT IV:      Dismiss Sixth and Seventh Causes of Action for Quantum
               Meruit and Unjust Enrichment because the Lease and
               Other Operative Contracts are Before the Court .................................. 10

POINT V:       Dismiss Fourth and Fifth Causes of Action for Equitable
               Estoppel and Fraudulent Concealment for Failing to State a
               Plausible Claim ............................................................................. 11

POINT VI:      Strike Allegations Regarding Proposed Buyout
               Based on Rule 408, Fed. R. Evid. .................................................... 14

CONCLUSION ................................................................................................................... 15

4819-4147-8588v.1

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*ACA Financial Guar. Corp. v. Goldman, Sachs & Co.*,
   25 N.Y.3d 1043 (2015) ..............................................................................12

*ACE Securities Corp. v. DB Structured Prods., Inc.*,
   25 N.Y.3d 581 (2015) ..................................................................................3

*Attias v. CareFirst Inc.*,
   365 F. Supp.3d 1 (D.D.C. 2019) ..............................................................11

*Big O Tire Dealers, Inc. v. The Goodyear Tire & Rubber Co.*,
   561 F.2d 1365 (10th Cir. 1977) ...............................................................15

*Capital Justice, LLC v. Wachovia Corp.*,
   No. 07-cv-2095-RCL, 2008 WL 11388566 (D.D.C. June 11, 2008) ...............11, 13

*Dayan Enterprises Corp. v. Nautica Apparel, Inc.*,
   No. 03-cv-5706-LLS, 2003 WL 22832706 (S.D.N.Y. Nov. 26, 2003) ..................10

*Deutsche Bank Nat. Trust Co. v. Quicken Loans Inc.*,
   No. 13-cv-6482-PAC, 2014 WL 3819356 (S.D.N.Y. Aug. 4, 2014) ....................10

*EFG Bank AG, Cayman Branch v. AXA Equitable Life Insurance Company*,
   309 F. Supp. 3d 89 (S.D.N.Y. 2018) (Furman, J.) ..................................10

*Ellipso, Inc. v. Mann*,
   460 F. Supp.2d 99 (D.D.C. 2006) .............................................................11

*Firestone v. Firestone*,
   76 F.3d 1205 (D.C. Cir. 1996) ..................................................................12

*Griffith v. EduCap Inc.*,
   No. 16-cv-1541-DLF, 2018 WL 4308572 (D.D.C. Sept. 10, 2018).................12

*Guilbert v. Gardner*,
   480 F.3d 140 (2d Cir. 2007)........................................................................2

*Harrington v. Trotman*,
   983 A.2d 342 (D.C. 2009) .........................................................................11

*Jacobson v. Oliver*,
   201 F. Supp. 2d 93 (D.D.C. 2002) ..............................................................9

4819-4147-8588v.1

*Lans v. Adduci Mastriani & Schaumberg LLP*,
  786 F. Supp.2d 240 (D.D.C. 2011) ........................................................................9

*McBeth v. Porges*,
  171 F. Supp.3d 216 (S.D.N.Y. 2016) (Furman, J.) .............................................13

*Napoli v. 243 Glen Cove Ave.*,
  397 F.Supp.3d 249 (E.D.N.Y. 2019) ...................................................................15

*Perini/O&G v. Usiminas Mecanica S.A.*,
  No. 12-cv-1931-VB, 2015 WL 271404 (S.D.N.Y. Jan. 20, 2015) ...................12, 14

*Pierce v. Tripler*,
  955 F.2d 820 (2d Cir. 1992)..................................................................................15

*Plesha v. Ferguson*,
  725 F. Supp. 2d 106 (D.D.C. 2010).................................................................10, 11

*Portfolio Recovery Assoc., LLC, v. King*,
  14 N.Y.3d 410 (2010) .............................................................................................2

*Randolph Equities, LLC v. Carbon Capital, Inc.*,
  648 F.Supp.2d 507 (S.D.N.Y.2009).......................................................................12

*Stillman v. Townsend*,
  No. 05-cv-6612-WHP, 2006 WL 2067035 (D.D.C. July 26, 2006) .......................11

*Stuart v. American Cyanamid Co.*,
  158 F.3d 622 (2d Cir. 1998)....................................................................................2

*Terra Sec. ASA Konkursbo v. Citigroup, Inc.*,
  820 F. Supp.2d 541 (S.D.N.Y. 2011)....................................................................12

*Union Pac. R. Co. v. Beckham*,
  138 F.3d 325 (8th Cir. 1998) ..................................................................................2

*Washington Metro. Area Transit Auth. v. Quik Serve Foods, Inc.*,
  Nos. 04-cv-838-RCL & 04-cv-687-RCL, 2006 WL 1147933 (D.D.C. Apr. 28,
  2006) ........................................................................................................................9

*Xereas v. Heiss*,
  933 F. Supp.2d 1 (D.D.C. 2013) .............................................................................9

**Statutes**

49 U.S.C. § 24101..........................................................................................................5

D.C. Code § 28:2A-506 .................................................................................................2

N.Y. U.C.C. § 2-A-506 ................................................................................................2, 4

Uniform Commercial Code §§ 2-A-103, *et seq.* ..............................................................1

**Other Authorities**

Fed. R. Civ. P. Rule 12(b)(6) and 12(f) ...................................................................1, 15

Fed. R. Evid. Rule 408...........................................................................................14, 15

## PRELIMINARY STATEMENT

Defendant National Railroad Passenger Corporation respectfully submits this Reply Memorandum of Law in further support of its motion to dismiss Plaintiffs' Corrected First Amended Complaint and to strike redundant, immaterial, impertinent or scandalous matter, pursuant to Rules 12(b)(6) and (f), Fed. R. Civ. P.[1]

Plaintiffs' Amended Complaint should be dismissed without leave to replead. First, the record is sufficient for the Court to dismiss all of Plaintiffs' contract claims as time-barred under the applicable four-year limitations period for finance leases. For years, despite ample publicly-available information, Plaintiffs did nothing to investigate and protect HNB's alleged rights under the Operative Contracts. If dismissal of all contract claims is not granted based on the pleadings, the Court should allow limited discovery to fill out the record on this limitations issue.

Assuming they are not dismissed, Plaintiffs' contract claims should be limited to declaratory relief. That is all that is necessary for Plaintiffs to determine HNB's rights, if any, under the Guarantee Agreement. Also, three claims should be dismissed because there are valid and binding Operative Contracts covering the parties' rights and obligations. Finally, two claims should be dismissed because the alleged facts do not provide plausible support for those claims.

## ARGUMENT

**POINT I:      Determine that Based on the Pleadings the New York Statute of Limitations Bars Plaintiffs' Breach of Contract Claims**

The parties have agreed that the Lease at issue is a "finance lease" under the Uniform Commercial Code §§ 2-A-103, *et seq. See* Exh. 8, Lease § 25.  Accordingly, as Plaintiffs correctly note, the applicable period of limitations in this case is four years whether applying New York law

---

[1] Unless otherwise indicated, this Reply Memo will use the same definitions that appear in Amtrak's Memorandum in Support of its Motion to Dismiss or to Strike (ECF 38).

or District of Columbia law. *See* N.Y. U.C.C. § 2-A-506; D.C. Code § 28:2A-506.[2] Assuming the application of the statute of limitations set forth in N.Y. U.C.C. § 2-A-506, Plaintiffs own allegations and Exhibits demonstrate that Plaintiffs' contract claims (the first, second, third, and eighth causes of action) are all time-barred.[3]

There are two prongs to New York's statute: "a cause of action for default accrues when the act or omission on which the default or breach of warranty is based is or should have been discovered by the aggrieved party, or when the default occurs, whichever is later." N.Y. U.C.C. § 2-A-506(a) and (b). Thus, Plaintiffs' four-year period started to run at the later of either: (i) when Plaintiffs did or should have discovered that Amtrak was taking the leased Locomotives out of service without notifying HNB of a Casualty Occurrence and then making payments to HNB equal to the Casualty Value; or (ii) when Amtrak allegedly committed a default by deciding to take the leased Locomotives out of service without notifying Plaintiffs of a Casualty Occurrence and then making the required Casualty Value payments. Contrary to Plaintiffs' argument, New York's four-year statute of limitations for finance leases does not help Plaintiffs avoid a time bar.

As for when Amtrak's alleged default occurred, Plaintiffs allege that Amtrak "made the determination as early as 2012 to retire" the leased Locomotives "due to reliability problems" and "high per capita maintenance costs" and "[t]hat determination constitutes a Casualty Occurrence

---

[2] Because New York treats the statute of limitations as a procedural issue, the parties' choice of law clause in Lease § 25 (which applies D.C. law) does not govern this dispute. *See Portfolio Recovery Assoc., LLC, v. King*, 14 N.Y.3d 410, 416 (2010).

[3] In a diversity jurisdiction case, New York's four-year limitations period should be applied unless New York's borrowing statute calls for application of a shorter period based on the jurisdiction where the contract claim for economic injury accrued. *See Stuart v. American Cyanamid Co.*, 158 F.3d 622, 626-27 (2d Cir. 1998). Here, however, the Court also has federal law jurisdiction. Amended Complaint ¶ 21. Applying principles of federal law, New York's four-year limitations period should be adopted but the period should start to run based solely on "discovery" principles. *See Guilbert v. Gardner*, 480 F.3d 140, 148-49 (2d Cir. 2007); *Union Pac. R. Co. v. Beckham*, 138 F.3d 325, 330 (8th Cir. 1998). Amtrak does not believe the outcome in this case is any different if New York law or federal law applies but Amtrak respectfully reserves its right to argue that federal law should apply if it changes the outcome.

2

under Section 7 of the Lease." Exh. 20 at 1; Amended Complaint ¶¶ 45, 87. They further contend

that based on Amtrak's own records, Defendant was obligated to pay a Casualty Value on the

"retired" Locomotives, pursuant to Lease § 7.3, "not later than early in 2015." Exh. 20 at 1.

Plaintiffs contend that under Lease § 13.1(i), Amtrak's failure to make any payment of Casualty

Value within five business days constituted a Lease Event of Default (provided, of course, that any

payment was required). Thus, Amtrak's alleged default occurred, according to Plaintiffs, "no later

than early 2015." Exh. 20. That was well over four years before they commenced this action on

November 7, 2019.

There is no merit to Plaintiffs' argument that the statute did not start to run in this case until

Amtrak rejected payment. Opposing Memo at 10-11. The relevant date is the date of default, which

occurred when the alleged casualty loss occurred and Amtrak failed to make the payment when

due under the Operative Contracts. Plaintiffs' argument fails because it ignores the New York

Court of Appeals' teaching that there is a difference between a demand that is a condition of

performance and a demand seeking a remedy for a pre-existing wrong: the latter demand does not

affect the running of a limitations period. *See ACE Securities Corp. v. DB Structured Prods., Inc*.,

25 N.Y.3d 581, 594-95 (2015) (breach of contract starts to run when a party has the legal right to

demand payment; the statute of limitations starts when the breach occurred, regardless of whether

plaintiff knew of the breach). Here a demand for payment by Plaintiffs is not a condition precedent

to Amtrak's performance. *See* Exh. 8, Lease § 7.1 (lessee "shall notify"), § 7.3 (lessee "shall pay").

The result is the same with respect to Plaintiffs' alleged maintenance and use defaults under

§ 12 of the Lease. Plaintiffs' own demand letters make clear that these alleged defaults occurred,

when Amtrak determined to take the leased Locomotives out of service, which, as noted above,

was "as early as 2012." *See* Exh. 28 at 1-2 (notice of default); Exh. 38, including Schedule 1 (notice of lease event of default); Exh. 20 at 1.

Plaintiffs fare no better with the "discovery notice" prong of New York's statute of limitations. That prong starts to run when the "the act or omission on which Amtrak's [alleged] default . . . is based was or should have been discovered by the aggrieved party." N.Y. U.C.C. § 2-A-506(a) and (b). There is ample evidence that Plaintiffs' contract claims are untimely under this prong of the New York statute of limitations.

As discussed in Amtrak's Opening Memo at 19-21,[4] a wealth of public records provides evidence that between 2010 and 2013, Amtrak determined to replace all of Plaintiffs' leased Locomotives with an entire fleet of new locomotives, which would operate more efficiently. *See* Amended Complaint ¶¶ 45, 47, 49, 51, 64, 67, 70, 87, Exhs. 13, 14, 16. Yet Plaintiffs' 71-page pleading gives no hint that Plaintiffs did anything at all before mid-2016 to investigate or protect their interests with regard to any of HNB's leased Locomotives. *See* Amended Complaint ¶¶ 14, 15, 53, 86, 87.

Exhibit 13 to Plaintiffs' Amended Complaint, the Amtrak Inspector General's May 28, 2013 memorandum, is particularly revealing. It identified numerous public resources available to Plaintiffs concerning Amtrak's March 2012 plan to spend $13 billion to replace and augment its current fleet of locomotives. *See* Exh.13, Amtrak OIG Memorandum at 1. This public document further informed Plaintiffs that Amtrak was required to incorporate information from its fleet plan into five-year financial plans that Congress required Amtrak to prepare beginning in 2008, when Congress enacted the Passenger Rail Investment and Improvement Act of 2008 (PRIIA), codified

---

[4] "Opposing Memo" refers to Plaintiffs' opposing memo of law (ECF 50) and "Opening Memo" refers to Defendant's supporting memo of law (ECF 38). Unless otherwise indicated, references to "Exh." are to Exhibits to Plaintiffs' Amended Complaint.

as 49 U.S.C. § 24101. Plaintiffs' Amended Complaint references Amtrak's five-year plan for FY 2016/2020 (Amended Complaint ¶ 51 and Exh. 16), but make no mention of Amtrak's earlier five-year plans, which addressed Amtrak's fleet plans going back to 2010, if not earlier. The Amended Complaint fails to suggest that Plaintiffs did anything before mid-2016 to make them aware of and investigate Amtrak's publicized plans to replace HNB's leased Locomotives.

In addition, if Plaintiffs had concerns over whether the leased Locomotives were still in service and being properly maintained, Plaintiffs had every right to inspect their Locomotives at any time, on reasonable notice, in order to determine their operating status. *See* Lease § 9(i). Yet Plaintiffs failed to ask for and conduct any inspections until June and October 2017. Amended Complaint ¶¶ 15, 16, 51, 69-71.

In sum, Plaintiffs' pleadings and Exhibits are notably silent as to what, if anything, Plaintiffs did between 2010 and November 2015 to determine whether the leased Locomotives were being taken out of service in the wake of public reports that the Locomotives were destined to be replaced wholesale by a new fleet of locomotives beginning in early 2014. There is not even a suggestion that they contacted Amtrak before mid-2016 to ask basic questions about the status of the leased Locomotives.  The pleadings thus reveal that Plaintiffs failed to exercise any due diligence to protect their interests under the Lease. If they had, the record shows they would have known long before November 7, 2015 that the leased Locomotives were being withdrawn from active service, and replaced by new locomotives, triggering (according to Plaintiffs) HNB's right to be paid more than $90 million due to an alleged Casualty Occurrence.

Finally, if this Court determines that the record from the pleading is insufficient to bar Plaintiffs' contract claims as a matter of law on statute of limitations grounds, Amtrak respectfully submits the Court should direct the parties to conduct limited discovery on the statute of limitations

5

issue. Focused discovery would allow the Court to determine, on a full evidentiary record, that Plaintiffs' contract claims are time-barred due to Plaintiffs' prolonged failure to exercise due diligence regarding its alleged rights under the Operative Contracts.

**POINT II:     Limit First, Second and Eighth Causes of Action to<br>Necessary Declaratory Relief for Breach of Contract**

Assuming the contract claims are not dismissed, Plaintiffs have no present right under the Operative Contracts to pursue damage claims against Amtrak. *See* Opposing Memo at 20-27. So long as the Loan Participant's secured notes remain outstanding, § 6.10(d) of the Trust Indenture Agreement gives the Indenture Trustee the *exclusive* rights to declare a default under the Lease and pursue damages or other remedial relief. This exclusive right, which protects the first priority security interests of secured note holders, covers all remedies specified in Lease § 13.2(i)-(x), including "any other right, power or remedy which may then be available under any of the Operative [Contracts] or . . . under Applicable law.  *See* Exh. 8, Lease §§ 13.2(viii) and 15.1(i). Amended Complaint ¶¶ 149, 158, 170, 175, 183, 189 and Prayer for Relief.  Thus, Plaintiffs have no contractual right to seek any of the monetary damages requested in their Amended Complaint.

Plaintiffs cannot rely on the limited exception in § 6.10(d) Trust Indenture Agreement relating to "Excepted Payments." Opposing Memo at 22-25. That exception only allows HNB to take action "necessary to enforce the exercise of rights" relating to those "Excepted Payments." Exh. 10, Trust Indenture Agreement § 6.10(d). This limited exception may support HNB's right to seek declaratory relief against Amtrak in this Court on the ground that this specific relief is *necessary* for HNB to pursue its rights under the Guarantee Agreement against EDC in the Canadian court. The narrow exception does not, however, justify Plaintiffs' parade of damage claims asserted against Amtrak in this Court. *See* Amended Complaint ¶¶ 142-189 and Prayer for

Relief (a)-(h). Plaintiffs' far-ranging damage claims are simply not "necessary" to their pursuit of a monetary recovery from EDC under the Guarantee Agreement.

The Standstill Agreement executed by and among HNB, EDC and Amtrak further buttresses Amtrak's contention. It defines the parties' "Underlying Dispute" as one "concerning Amtrak's *compliance* with the Lease and related documents." Exh. 6, Standstill Agreement at 1-2 (emphasis added). Thus, by agreement of the parties, the issue in this action is limited to whether Amtrak has *complied* with the Lease and other Operative Contracts. It does not embrace broader issues of Amtrak's purported liability for damages. Plaintiffs have no present right to pursue these far-flung monetary claims because of Trust Indenture Agreement § 6.10(d), which protects the priority of secured noteholders and shields Amtrak from Plaintiffs' damage claims.

Plaintiffs argue that Amtrak has no right to rely on rights in § 6.10(d) of the Trust Indenture Agreement on the theory that those rights belong to the Lender Participant, not to Amtrak. *See* Opposing Memo at 22.[5] Their contention ignores the integrated nature of the Operative Contracts, all of which are bound together by the Participation Agreement executed by all participants, including Amtrak and HNB. In addition, in § 15.1 of the Lease, Amtrak specifically consents to the first priority security interest held by the Indenture Trustee, acting for the benefit of secured note holders, which are held "pursuant to the terms of, and to the extent set forth in" the Trust Indenture Agreement. Exh. 8, Lease § 15.1 (i). Amtrak also agrees in Lease § 15.1(i) to make specified payments due under the Lease to the Indenture Trustee (including rents and any casualty value payable) and not to HNB, as Owner Participant, for so long as any secured notes are outstanding. *Id*. Accordingly, Amtrak's rights and obligations under the Lease are bound into the

---

[5] Exh. 54 to Plaintiffs' Amended Complaint contains letters to Plaintiffs dated December 19 and 20, 2019, sent on behalf of EDC (as Loan Participant and Guarantor), as well as the Indenture Trustee,; they demand that Plaintiffs withdraw their notices of default and event of default based on the Indenture Trustee's exclusive rights under Trust Indenture Agreement § 6.10 (d), to issue default notices so as long as any secured debt to EDC remains outstanding.

4819-4147-8588v.1

Indenture Trustee's exclusive rights under § 6.10(d) of the Trust Indenture Agreement to decide whether or not to declare Amtrak in default and exercise remedies under Lease § 13.2.

Amtrak has a direct interest in the proper application of § 6.10(d), as this dispute demonstrates. Although HNB, as Owner Participant, alleges that Amtrak has defaulted under the Lease, EDC, as Loan Participant, has advised HNB that because Amtrak disputes HNB's allegations, EDC does not have any obligation to make payments to HNB under the Guarantee Agreement. *See* Exh 41. Section 6.10(d), thus, resolves the competing positions of HNB and EDC, by providing that so long as secured notes are outstanding, EDC's Loan Participant's rights and interests trump those of the Owner Participant. The provision thus provides contractual protection to Amtrak against any default remedies the Owner Participant might otherwise claim the right to pursue against it. Indeed, that is why the Operative Contracts include a Guarantee Agreement to provide special protection for the Owner Participant's interests. If Plaintiffs wish to pursue damage remedies against Amtrak in addition to whatever remedy might be available against EDC under the Guarantee Agreement, they should pay off all outstanding sums secured by the notes.

Plaintiffs claim that they currently have broad remedies against Amtrak, notwithstanding § 6.10(d), is fanciful. EDC is a 76.95 % participant in the Transaction. Exh. 7, Schedule V. It makes no sense to read the Operative Contracts to give HNB, a 23.05% participant, the authority to pursue its remedy under the Guarantee Agreement and override EDC's first priority security interest by pursuing multiple remedies against Amtrak. HNB's only remedy is under the Guarantee Agreement. That is what it bargained for under the Operative Contracts.

Further, there is no merit to the claim that Amtrak waived or is estopped from asserting the Indenture Trustee's exclusive rights under § 6.10(d). See Opposing Memo at 21-22. Each time Amtrak responded to Plaintiffs' unilateral claims of default, it denied any default and/or

8

specifically reserved its rights with regard to Plaintiffs' allegations. *See* Exhs. 4, 30, 37, 53. The letters do not show an intentional relinquishment of a known right or support a claim that Plaintiffs reasonably relied on Amtrak's earlier failure to cite the Indenture Trustee's exclusive rights under § 6.10(d).

Finally, any argument that it is "premature" for this Court to consider dismissing all damage claims is meritless. *See* Opposing Memo at 4, 5, and 20. Plaintiffs' cited cases indicate, at best, that it may be premature to dismiss damage claims before the court decides whether there is a binding written contract. Here, there is no dispute there are binding Operative Contracts that govern the dispute, including provisions that provide the grounds for dismissing all of Plaintiffs' damage claims. There is no reason for the Court to withhold a determination that HNB has no contractual right to pursue any damage remedies based on Amtrak's purported default.

**POINT III:   Dismiss Third Cause of Action for
<u>Breach of Good Faith as Redundant</u>**

Plaintiffs contend they have a viable good faith cause of action because Amtrak evaded the spirit of the Operative Contracts and allegedly misled Plaintiffs with false promises. Opposing Memo at 27-29; Amended Complaint ¶¶ 150-158. They ignore the case law and their pleadings.

"[B]reach of the implied covenant . . . is not an independent cause of action when the allegations are identical to other claims for relief under an established cause of action." *Xereas v. Heiss*, 933 F. Supp.2d 1, 8 (D.D.C. 2013). The implied covenant "may not override the express provisions of the contract." *Washington Metro. Area Transit Auth. v. Quik Serve Foods, Inc.*, Nos. 04-cv-838-RCL & 04-cv-687-RCL, 2006 WL 1147933, *5 (D.D.C. Apr. 28, 2006); *Jacobson v. Oliver*, 201 F. Supp. 2d 93, 98 n. 2 (D.D.C. 2002) (brackets and quotations omitted); *Xereas*, 933 F. Supp.2d at 8 (citing *Jacobson v. Oliver*); *Lans v. Adduci Mastriani & Schaumberg LLP*, 786 F. Supp.2d 240, 319 (D.D.C. 2011). New York law is, in relevant respects, the same. *See EFG Bank*

9

*AG, Cayman Branch v. AXA Equitable Life Insurance Company*, 309 F. Supp. 3d 89, 93-95 (S.D.N.Y. 2018) (Furman, J.);  *Deutsche Bank Nat. Trust Co. v. Quicken Loans Inc.*, No. 13-cv-6482-PAC, 2014 WL 3819356, at *5 (S.D.N.Y. Aug. 4, 2014); *Dayan Enterprises Corp. v. Nautica Apparel, Inc.*, No. 03-cv-5706-LLS, 2003 WL 22832706, at *2 (S.D.N.Y. Nov. 26, 2003).

Plaintiffs' good faith claims are founded on the premise that Amtrak has violated Plaintiffs' contractual rights under the Lease and other Operative Contracts. Indeed, Plaintiffs make this clear in their pleadings, alleging that Amtrak's alleged bad faith deprived Plaintiffs of their "right to receive the benefit of the [contractual] bargain." Amended Complaint ¶¶ 151, 158. Thus, Plaintiffs cannot establish a bad faith claim unless they prove that Amtrak breached its duties under the Lease and Operative Contracts (which they cannot). Thus, the third cause of action should be dismissed as duplicative of those contract claims.

> **POINT IV:**   **Dismiss Sixth and Seventh Causes of Action for Quantum Meruit and Unjust Enrichment because the Lease and <u>Other Operative Contracts are Before the Court</u>**

Plaintiffs contend their quantum meruit and unjust enrichment causes of action should be permitted because a party is entitled to argue in the alternative. Opposing Memo at 29-30. Again, they ignore the case law and their pleadings.

Plaintiffs do not -- and cannot -- dispute applicable D.C. law, which teaches that: "[c]laims for quantum meruit are . . .  unavailable when there is an actual contract between the parties because there is no need to consider whether the parties' conduct implies a contractual relationship." *Plesha v. Ferguson*, 725 F. Supp. 2d 106, 111-112 (D.D.C. 2010).  Consequently, when [d]efendants do not dispute the existence of a contract … the Court shall dismiss [the plaintiff's claim for] … quantum meruit." *Id*.  Defendant does not dispute the existence of the Operative Contracts, so Plaintiffs' attempt to pad their pleadings with a quantum meruit claim should be dismissed.

4819-4147-8588v.1

Similarly, unjust enrichment is not available when the transaction is covered by an express agreement. *Capital Justice, LLC v. Wachovia Corp.*, No. 07-cv-2095-RCL, 2008 WL 11388566, *7 (D.D.C. June 11, 2008); *Ellipso, Inc. v. Mann*, 460 F. Supp.2d 99, 104 (D.D.C. 2006); *Harrington v. Trotman*, 983 A.2d 342, 346 (D.C. 2009); *Plesha*, 725 F. Supp.2d at 112; *Attias v. CareFirst Inc.*, 365 F. Supp.3d 1, 25 (D.D.C. 2019); *Stillman v. Townsend*, No. 05-cv-6612-WHP, 2006 WL 2067035, at *1, 6 (D.D.C. July 26, 2006). Cases where unjust enrichment claims have been permitted despite the existence of an express contract are distinguishable. They include allegations that the express contract was invalid or unenforceable. *See Attias*, 365 F.Supp.3d at 25. Despite having received a one-time permission to amend its pleading (ECF 25), Plaintiffs' Amended Complaint does not allege anywhere that the Lease and Operative Contracts are invalid or unenforceable. Quite the contrary, Plaintiffs' allegations and causes of action are, without exception, premised upon the existence and enforceability of the Lease and Operative Contracts and Amtrak's alleged breach thereof.[6] Thus, the causes of action for quantum meruit and unjust enrichment should be dismissed because of the existence of valid Operative Contracts.

**POINT V:**   **Dismiss Fourth and Fifth Causes of Action for Equitable Estoppel and Fraudulent Concealment for Failing to State a Plausible Claim[7]**

Plaintiffs fail to assert well-pleaded facts that provide plausible support for their claims of equitable estoppel and fraudulent concealment claims. Their claims are premised on (i) Amtrak's purported efforts to conceal information concerning its removal of the leased Locomotives from active service and (ii) Amtrak's alleged false "promise" to convey a prompt buyout proposal to

---

[6] Every cause of action in the Amended Complaint incorporates by reference every other allegation in the entire pleadings. *See* Amended Complaint ¶¶ 142, 146, 150, 159, 165, 171, 176, 181.

[7] Plaintiffs' Amended Complaint characterizes their fourth cause of action as one for "Equitable and Judicial Estoppel." Amended Complaint p. 64 (heading). As Amtrak's Opening Memo explained, the doctrine of judicial estoppel is not remotely applicable to Plaintiffs' claims in this case. *Id.*, at 22-23. Plaintiffs' Memo is utterly silent on this issue, a tacit admission that judicial estoppel has no relevance to their claims.

4819-4147-8588v.1

HNB regarding these Locomotives, a proposal Amtrak never delivered. Opposing Memo at 15-17 and n.13, citing Amended Complaint ¶¶ 14, 16, 53, 59, 63-68, 86-87, 91-99, 103.

A plaintiff asserting equitable estoppel must show, at a minimum, plaintiff's lack of knowledge and means of knowledge of the true facts; reliance upon the conduct of the party to be estopped; and prejudicial changes in its position. *Randolph Equities, LLC v. Carbon Capital, Inc.*, 648 F.Supp.2d 507, 524 (S.D.N.Y.2009). Moreover, the defendant's misconduct must have been an "egregious wrongdoing," such as "misrepresenting the length of the limitations period" or representing that "compensation would be paid without need for lawsuit." *Perini/O&G v. Usiminas Mecanica S.A*., No. 12-cv-1931-VB, 2015 WL 271404, at *4 (S.D.N.Y. Jan. 20, 2015). *See also* cases cited in Opening Memo at 24. The pursuit of settlement negotiations is "insufficient as a matter of law to establish equitable estoppel." *Perini/O&G*, 2015 WL 271404, at *4.

To establish fraudulent concealment, Plaintiffs must show, in part, that they were not on actual or constructive notice of that evidence despite their exercise of diligence. *See Griffith v. EduCap Inc*., No. 16-cv-1541-DLF, 2018 WL 4308572, at *2 (D.D.C. Sept. 10, 2018); *Firestone v. Firestone,* 76 F.3d 1205, 1210 (D.C. Cir. 1996). Fraudulent concealment requires justifiable reliance and if plaintiff can know the truth or real quality of the subject of a representation by the exercise of ordinary intelligence, plaintiff cannot establish fraudulent concealment. *See ACA Financial Guar. Corp. v. Goldman, Sachs & Co.*, 25 N.Y.3d 1043, 1044 (2015).

In examining whether Plaintiffs have satisfied these standards, this Court should take into consideration that Plaintiffs are, indisputably, sophisticated business investors. *See Terra Sec. ASA Konkursbo v. Citigroup, Inc.*, 820 F. Supp.2d 541, 546 (S.D.N.Y. 2011) (rejecting misrepresentation allegations made by sophisticated investor*); see also McBeth v. Porges*, 171 F. Supp.3d 216, 221 (S.D.N.Y. 2016) (Furman, J.).

Plaintiffs' Amended Complaint and Exhibits reveal that, at a minimum, there was ample public information available during the period 2010-2013 regarding Amtrak, which plainly disclosed that Amtrak would be replacing HNB's leased Locomotives with a fleet of new locomotives that would be more efficient to operate and maintain. *See* Opening Memo at 19-21; Amended Complaint ¶¶ 45-50; Exhs. 12 and 13. Yet the record indicates Plaintiffs did not communicate with Amtrak for years, until mid-2016, in an effort to determine the operative status of these Locomotives. Moreover, they waited another year, until mid-2017, before they exercised HNB's rights under the Lease to inspect the leased Locomotives and review maintenance records. As a matter of law, Plaintiffs' lack of due diligence for this prolonged period defeats their attempt to blame Amtrak for purportedly concealing information from them. They knew or should have known well before November 6, 2015, that the leased Locomotives were destined to be replaced by some 70 newly acquired locomotives. Plaintiffs' lack of diligence undermines their equitable estoppel as well as their fraudulent concealment claims.

Similarly, given the pleadings, Plaintiffs did not reasonably rely upon any alleged "promise" of a buyout proposal to excuse their lengthy delay in pursing their legal rights. To begin with, "representations of intentions are by their nature uncertain and likely to change" and thus cannot be reasonably relied upon by a plaintiff. *Capital Justice*, *Inc*., 2008 WL 11388566, at *5 (rejecting claim of equitable estoppel).  Here, the lack of reasonable reliance is particularly pronounced in light of the vagueness of the alleged promise. There is no allegation that Amtrak made any representation as to the contents of any proposal, much less made a specific offer that was attractive to Plaintiffs. As a sophisticated investor, Plaintiffs cannot seriously claim that a vague purported "promise" would have justifiably lulled Plaintiffs into sitting on their rights, as they did, for a prolonged period. There was nothing to stop Plaintiffs from aggressively pursuing

their alleged rights - rights they claim are worth over $90 million - by demanding that Amtrak convey a firm buyout offer by a date certain. Nor can Plaintiffs seriously argue that Amtrak's offer of a buyout proposal, standing alone, rises to the level of an "egregious" misrepresentation sufficient to support a claim of equitable estoppel. *See Perini/O&G,* 2015 WL 271404, at *4

Plaintiffs try to explain away their failure to conduct an investigation in 2012 or 2013. According to them, Amtrak's fraud was not that it concealed its purchase of a new fleet of locomotives to replace the leased Locomotives; rather, Amtrak concealed its decision to "permanently" retire the Locomotives. *See* Opposing Memo at 13. However, as discussed in Point I, *supra*, their own letters demonstrate set forth their position that the Casualty Occurrence came into existence when Amtrak determined to remove the leased Locomotives from service in favor of new, more efficient, locomotives. *See* Exhs. 20 and 39; *see also* Amended Complaint ¶ 45. Plaintiffs' pleadings reveal no hint that Plaintiffs did anything before mid-2016 to inquire about the status of the leased Locomotives and whether were being taken out of service in favor of a fleet of new locomotives that could be maintained more efficiently. Plaintiffs' Amended Complaint fails as a matter of law to support their equitable estoppel and fraudulent concealment claims.

**POINT VI:    Strike Allegations Regarding Proposed
<u>Buyout Based on Rule 408, Fed. R. Evid.</u>**

Plaintiffs contend that the buyout proposal communications should be deemed "business communications" that are outside the scope of settlement negotiations protected under Rule 408, Fed. R. Evid.[8] *See* Opposing Memo at 18-19. They are wrong. The alleged early buyout communications merit protection under Rule 408 as the offer promptly followed HNB's letter threatening litigation and disclosing "administrative" steps being taken to pursue all available legal

---

[8] The early buyout communications that should be stricken are found at ¶¶ 2, 6, 14-16, 84-86, 88-105, 112-113, 120, 128-29, 132, 144, 157 of the Amended Complaint.

remedies. *See Pierce v. Tripler*, 955 F.2d 820, 826-27 (2d Cir. 1992); *see also Big O Tire Dealers, Inc. v. The Goodyear Tire & Rubber Co.*, 561 F.2d 1365, 1372 (10th Cir. 1977); *Napoli v. 243 Glen Cove Ave.,* 397 F.Supp.3d 249, 261-62 (E.D.N.Y. 2019).

Amtrak's alleged "promise" to make a buyout proposal was allegedly made on November 29, 2016, which was just days after HNB's November 21, 2016 letter to Amtrak *See* Amended Complaint ¶ 88; Exh. 20. The letter plainly threatened to send a notice of Lessee Event of Default and exercise its "remedies under the Lease, the Equity Guarantee Agreement and Applicable Law" unless Amtrak responded by December 2, 2016 to discuss an "acceptable resolution" including an early buyout of HNB under the Lease. *See* Exh. 20; *see also* Lease § 16.1 (EBO purchase option). Plainly, this alleged Amtrak response was not a mere "business" communication. It was responsive to HNB's clear threat of litigation unless Amtrak was prepared to discuss a "mutually acceptable resolution" of their dispute -- *i.e.*, an amicable settlement.

## CONCLUSION

By reason of the foregoing, Defendant's motion to dismiss or to strike should be granted, pursuant to Rule 12(b)(6) and 12(f), Fed. R. Civ. P., and Defendant should be awarded such additional relief as is just and proper.

Dated:  May 13, 2020

LANDMAN CORSI BALLAINE & FORD P.C.

By**:**            **/s/**
Mark S. Landman
*Attorneys for Defendant*
*National Railroad Passenger Corporation*
120 Broadway, 13th Floor
New York, New York 10271
(212) 238-4800
mlandman@lcbf.com
wballaine@lcbf.com

**Of Counsel**: Rachel Hong, Esq.

15